1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ROSA MARIA CABRERA THOMPSON,

Plaintiff,

v.

SEATTLE PUBLIC SCHOOLS, a public
school district in the State of Washington,

Defendant.

CASE NO. 2:25-cv-00468-TL

ORDER ON MOTION TO QUASH
SUBPOENA

This matter is before the Court on non-party Mukilteo School District's ("MSD") motion
to quash a subpoena duces tecum served on it by Plaintiff Rosa Maria Cabrera Thompson (Dkt.
No. 55) and Plaintiff's motion to compel MSD's compliance with the same subpoena (Dkt. No.
48). MSD has stylized its motion to quash as an emergency ex parte motion. *Id.* Having reviewed
MSD's motion, Plaintiff's response (Dkt. No. 59), MSD's reply (Dkt. No. 60), and the relevant
record, the Court GRANTS IN PART and DENIES IN PART MSD's motion.

1

# I.    BACKGROUND[1]

2 **A.    Factual Background**

3       This is an employment-discrimination case. Plaintiff Rosa Maria Cabrera Thompson is a

4 school administrator who alleges that she was denied employment on the bases of race and

5 reprisal for having engaged in protected equal employment opportunity ("EEO") activity—in her

6 case, filing, then settling, an anti-discrimination complaint against Mukilteo School District

7 ("MSD"), her former employer. *See* Dkt. No. 21 (Amended Complaint) at 1. Plaintiff does not

8 identify her race in her amended complaint. *See generally id.* She asserts that she "engaged in

9 protected activity by filing [a complaint with the Equal Employment Opportunity Commission

10 ("EEOC")] against the Mukilteo School District." *Id.* at 17.

11       Defendant is Seattle Public Schools ("SPS"), the school district whom Plaintiff alleges

12 denied her employment. *Id.* Relevant to this Order, non-party MSD is a former employer of

13 Plaintiff.[2] *Id.* ¶ I.2.

14       On or about October 19, 2023, Plaintiff applied for at least two jobs with Defendant. *Id.*

15 ¶¶ IV.1–2. Plaintiff alleges that she was "an excellent candidate." *Id.* ¶ IV.1. In applying for the

16 positions, Plaintiff submitted to Defendant at least four "positive electronic reference[s]." *Id.*

17 ¶¶ IV.3–6. On November 13, 2023, Dr. Tarance Hart, Principal of Garfield High School—a unit

18 of Defendant—invited Plaintiff to interview for "an immediate interim assistant principal

19 opening." *Id.* ¶ IV.8. Plaintiff accepted the interview and, on November 16, 2023, sat for an in-

20

21 [1] The Court offers only an abbreviated factual and procedural background. The Court bases its narrative here on the allegations in Plaintiff's amended complaint. Dkt. No. 21.

22 [2] In a separate case in this District, Plaintiff has sued MSD for breach of contract, retaliation in violation of Title VII of the Civil Rights Act of 1964, violation of equal protection under 42 U.S.C. § 1983, tortious interference with a business expectancy, defamation, negligence, intentional infliction of emotional distress, violation of the Washington Law Against Discrimination, and violation of the Washington Public Records Act. *See* Amended Complaint, *Thompson v. Mukilteo Sch. Dist. No. 6*, No. C25-529 (W.D. Wash. Apr. 20, 2025), Dkt. No. 46.

23

24

person interview "with Dr. Hart and his administrative team (two assistant principals) at Garfield High School." *Id.* ¶¶ IV.8, 14. Plaintiff represents that the interview went well, and that at the conclusion of the interview, Hart gave Plaintiff two options: She could "start as an interim assistant principal . . . or begin as a substitute assistant principal while simultaneously being considered for the interim role." *Id.* ¶ IV.14. Plaintiff chose to take the substitute assistant principal position. *Id.*

On November 20, 2023, Hart emailed Plaintiff to offer her the role of substitute assistant principal at Garfield High School for the period between November 27, 2023, and December 15, 2023. *Id.* ¶ IV.21. That same day, Plaintiff accepted the offer and confirmed her availability for that time period. *Id.* ¶ IV.22. But Plaintiff did not start work on November 27, 2023.

On November 22, 2023, Hart emailed Plaintiff to advise that additional paperwork and a second application submission were required, along with fingerprinting, before a start date could be determined. *Id.* ¶ IV.25. That same day, SPS human resources informed Hart that references from Plaintiff's most recent supervisor should be checked. Dkt. No. 21-8 (Am. Compl. Ex. 23) at 5. On November 29, 2023, Hart emailed Plaintiff and advised that Defendant needed to perform a "reference check from [her] most recent supervisor." Dkt. No. 21 ¶ IV.29. Over the next week, Defendant conducted a reference check for Plaintiff with MSD, Plaintiff's most recent employer. *See id.* ¶¶ IV.30–34.

On December 7, 2023, Hart emailed Plaintiff and advised that, "After reaching out for a reference check with your previous district, . . . [w]e have decided not to move forward with your application for this role." *Id.* ¶ IV.36. Hart stated that Defendant "ha[d] decided to go another route with filling the role." *Id.* That same day, Plaintiff responded to Hart and offered additional documentation to support her candidacy, but Hart did not respond. *Id.* ¶¶ IV.37–38.

On January 5, 2024, Plaintiff submitted a public records request to Defendant. *Id.* ¶ IV.42. On January 19, 2024, Plaintiff filed a formal complaint of discrimination against Defendant with the U.S. Department of Education, Office for Civil Rights, citing "retaliation based on race." *Id.* ¶ IV.43. Plaintiff also filed a similar complaint with the EEOC. *Id.* ¶ IV.44. Over the next four months, Plaintiff applied for numerous positions with Defendant but was not selected to interview for any of them. *Id.* ¶¶ IV.53–61, 63–67.

Meanwhile, Plaintiff's records request to Defendant was delayed. *Id.* ¶ IV.52. On April 5, 2024, Defendant "sent Installment 1 of 2 of records but delayed the remaining until September 5, 2024." *Id.* ¶ IV.62. It appears, however, that Defendant never provided Plaintiff with the second installment. *See id.* ¶¶ IV.68, 69, 75. On March 4, 2025, Defendant advised Plaintiff that it was closing Plaintiff's records request because there were "no additional responsive items to provide . . . ." *Id.* ¶ IV.76.

**B.    Relevant Procedural Background**

On March 11, 2025, Plaintiff filed the instant civil action against Defendant. Dkt. No. 1. On April 9, 2025, Plaintiff amended her complaint and pleaded six causes of action: (1) state-law employment discrimination under the Washington Law Against Discrimination ("WLAD") (Dkt. No. 21 at 15–17); (2) federal-law employment discrimination under Title VII of the Civil Rights Act of 1964 (*id.* at 17–19); (3) state-law breach of contract (*id.* at 19–21); (4) violation of the Washington Public Records Act (*id.* at 21–23); (5) violation of due process under 42 U.S.C. § 1983 (*id.* at 23); and (6) violation of equal protection under 42 U.S.C. § 1983 (*id.* at 23–24). Plaintiff seeks statutory damages, economic and legal costs, injunctive relief, back pay and lost wages, punitive damages, and attorney fees.

On June 3, 2025, Plaintiff served a subpoena on non-party MSD. Dkt. No. 55 at 1; *see* Dkt. No. 45-1 (subpoena). The subpoena requested five categories of documents, including:

(1) "Communications with Seattle Public Schools or Their Agents"; (2) "Reference Checks and Hiring Documentation"; (3) Legal Hold and Records Preservation; (4) "Comparator Evidence"; and (5) "Internal Investigations or Complaints." Dkt. No. 45-1 at 2–3. The subpoena demanded that MSD comply by 9:00 a.m. on June 15, 2025. Dkt. No. 45-2 at 1.

On June 13, 2025, MSD served Plaintiff with objections to the subpoena. Dkt. No. 57 (Molina Decl.) ¶ 5; Dkt. No. 57-2 (Molina Decl. Ex. B). On June 14, 2025, one day before MSD was due to produce the subpoenaed records, Plaintiff filed a motion to compel compliance with the subpoena. Dkt. No. 48. Two days later, on June 16, 2025, MSD filed the instant motion to quash the subpoena. Dkt. No. 55. On June 16, 2025, Plaintiff responded to MSD's motion by filing two briefings. First, Plaintiff submitted a briefing that, while captioned as a "Reply" to "Emergency Motion to Quash Subpoena Served by Plaintiff to Non-Party Mukilteo School District," also identified itself as a "Reply in support of her Motion to Compel . . . ." Dkt. No. 58 at 1. Second, that same day, Plaintiff filed a motion to strike MSD's motion to quash. Dkt. No. 59. On June 17, 2025, MSD filed a reply in support of its motion to quash. Dkt. No. 60.

## II.    LEGAL STANDARD

"Pursuant to Rule 45(a)(1)(D), a party may serve a subpoena commanding a nonparty to produce materials." *Balfour Beatty Infrastructure, Inc. v. PB & A, Inc.*, 319 F.R.D. 277, 281 (N.D. Cal. 2017). But "[a] party or attorney who issues such a subpoena 'must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena.'" *HarVest Bank of Md. v. Countrywide Home Loans, Inc.*, No. C10-714, 2010 WL 11527320, at *1 (W.D. Wash. June 16, 2010) (quoting Fed. R. Civ. P. 45(c)(1)). "If the person subject to the subpoena shows that the subpoena imposes an undue burden on him or her, the court must quash or modify the subpoena." *Id.* (citing Fed. R. Civ. P. 45(c)(3)(iv)). "An undue burden exists where the burden or expense of discovery 'outweighs its likely benefit, considering the needs of the case,

the amount in controversy, the parties' resources, the importance of the issues at stake in the

action, and the importance of the discovery in resolving the issues.'" *Id.* (quoting Fed. R. Civ. P.

26(b)(2)); *see Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2006) (describing

factors to be considered when determining whether a subpoena imposes an undue burden on a

non-party).

## III.    DISCUSSION

### A.    Timeliness of MSD's Motion to Quash

Before addressing the merits of MSD's motion, the Court first addresses Plaintiff's

contention that MSD's objections to the subpoena and motion to quash were untimely. *See* Dkt.

No. 58 at 2; Dkt. No. 59 at 2. Neither the objections nor the motion were untimely.

Under Federal Rule of Civil Procedure 45(d)(2)(B), objections to a subpoena duces

tecum "must be served before the earlier of the time specified for compliance or 14 days after the

subpoena is served." Here, the time for compliance was June 15, 2025, at 9:00 a.m.[3] Dkt. No.

45-2 at 1. On June 13, 2025, two days before the "time specified for compliance," MSD served

Plaintiff with objections to the subpoena by email. Dkt. No. 57-2 at 1. Thus, MSD's objections

were timely.

As to the timeliness of the motion to quash, "Courts generally agree that a motion to

quash under Rule 45 is timely if made before the date specified for compliance with the

subpoena." *In re DMCA § 512(h) Subpoena to Twitter, Inc.*, 608 F. Supp. 3d 868, 875 n.2 (N.D.

Cal. 2022) (quoting *Handloser v. HCL Am., Inc.*, No. C19-1242, 2020 WL 4700989, at *4 (N.D.

Cal. Aug. 13, 2020)). However, "where (as here) a subpoena recipient moves to quash after

---

[3] Plaintiff does not contest MSD's representation that it was served with the subpoena on June 3, 2025. *See* Dkt. No. 55 at 1. Fourteen days after service was June 17, 2025, thus making June 15—i.e., "the earlier of the time specified for compliance or 14 days after . . . serv[ice]"—the due date for objections under Rule 45(d)(2)(B).

1  lodging a written objection to the subpoena, the motion to quash is timely so long as it is filed

2  within a reasonable time after the conclusion of informal efforts to resolve the objections." *Id.*

3  Here, the date of compliance with the subpoena—June 15, 2025—was a Sunday, thus pushing

4  MSD's deadline to respond to Monday, June 16, 2025, "the following day that [was] not a

5  Saturday, Sunday, or legal holiday." LCR 7(d)(6). Under this District's procedure for electronic

6  filing, "deadlines shall be 11:59 PM Pacific Time on the day the document(s) are required to be

7  filed." W.D. Wash., Electronic Filing Procedures for Civil & Criminal Cases, § 1.B. MSD filed

8  its motion to quash at 5:53 p.m. PDT on June 16, 2025. Dkt. No. 55. Therefore, the motion is

9  timely. Moreover, MSD filed its motion to quash on the next business day following its service

10  of objections to Plaintiff. *See* Dkt. No. 57-2 at 1. This is within a reasonable time after the

11  conclusion of informal efforts to resolve the objections.

12  **B.    Bases for Quashing Plaintiff's Subpoena**

13      MSD makes three substantive arguments for quashing Plaintiff's subpoena. First, MSD

14  asserts that compliance with the subpoena would be overly burdensome—but only with respect

15  to certain categories of records sought by the subpoena. *See* Dkt. No. 55 at 2. Second, MSD

16  asserts that the subpoena seeks materials shielded from production by attorney-client privilege

17  and/or the attorney work-product doctrine. *See id.* at 4. Third, MSD asserts that Plaintiff

18  demanded MSD's compliance with the subpoena within an unreasonably short amount of time.

19  *See id.* at 5.

20      For her part, Plaintiff does not cogently counter MSD's substantive assertions. Plaintiff's

21  "Motion to Strike" MSD's motion to quash, which the Court construes as Plaintiff's opposition

22  to MSD's motion, does not address MSD's substantive arguments at all. Dkt. No. 59. Instead,

23  Plaintiff makes four procedural arguments: (1) that "the motion is untimely and procedurally

24  defective"; (2) that the emergency designation is improper and unsupported; (3) that the motion

is prejudicial and dilatory; and (4) that the motion lacks required supporting documentation. *Id.* at 2–3. As these procedural arguments apply to the motion in general, and thus to all of MSD's substantive arguments, the Court will address them first.

### 1.    Plaintiff's Procedural Arguments

#### a.    *Timeliness*

Plaintiff argues that MSD's motion is "defective on its face" because it was filed after the subpoena's date of compliance. Dkt. No. 59 at 2. As discussed above, *see supra* Section III.A, the motion is timely.

#### b.    *Emergency Designation*

Plaintiff asserts that MSD's motion does not "meet[] the standard for emergency relief," because "[i]t offers no affidavit or declaration establishing facts showing irreparable harm; imminent injury; [or] [t]hat ordinary motion practice would be insufficient." Dkt. No. 59 at 2–3. But Plaintiff offers no authority that substantiates her recitation of this standard, and the Court cannot locate any. Plaintiff states that MSD's failure to abide by her standard "violates Local Civil Rule 7(i), which requires a party requesting emergency relief to certify the nature of the emergency and why standard timelines are insufficient." *Id.* at 3. Local Civil Rule 7(i), however, concerns telephonic motions and has nothing to do with emergency motions. *See* LCR 7(i) ("Telephonic Motions"). The Court cannot deny a motion on the basis of a nonexistent standard; therefore, this argument fails.

#### c.    *Prejudicial and Dilatory*

Plaintiff asserts that:

> MSD has had multiple opportunities to object in a timely, procedurally proper manner and to engage in the meet-and-confer process in good faith. Instead, it waited until the final minutes of the return deadline to file a facially defective motion, burdening

Plaintiff with unnecessary delay and forcing her to respond under constrained conditions.

Dkt. No. 59 at 3. The record indicates that MSD did timely object to Plaintiff's subpoena. *See* Dkt. No. 57-2 at 1. Moreover, Plaintiff does not provide any authority for her implied position that a last-minute objection is somehow less valid than an objection filed earlier. A deadline is a deadline, and timely is timely. Indeed, Plaintiff raised the specter that she might have to respond to a motion to quash when she served the subpoena in the first place. Dkt. No. 46; *see* Fed. R. Civ. P. 45(d)(3). Further, Plaintiff provided MSD with a very short response window, thereby creating the time pressure under which MSD needed to respond and raise the issue with the Court. *See infra* Section III.B.2.c. And as to Plaintiff's assertion that MSD's motion is "facially defective," Plaintiff does not specifically explain how.

### d.    *Required Documentation*

Plaintiff asserts that MSD's motion "lacks a privilege log, lacks detailed burden declarations from IT or HR staff, and omits key context . . . ." Dkt. No. 59 at 3. While Plaintiff's assertion about the privilege log might be true, it is irrelevant here. Under Rule 45(d)(3)(A)(iii), "the court . . . must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies." This language is not discretionary—the Court *must* quash or modify a subpoena that seeks privileged or protected information. *See Woolfolk v. St. Vincent de Paul*, No. C20-21, 2021 WL 4338937, at *2 (D. Idaho Sept. 23, 2021).

On the question of waiver—which, under the Rule, obviates the Court's imperative to quash or modify— Plaintiff argues that, when MSD objected to the subpoena, it did not provide a privilege log and, consequently, waived privilege. *See* Dkt. No. 58 at 3. Plaintiff then argues that, under the authority of *In re Grand Jury Subpoena Dated Nov. 15, 1993*, 846 F. Supp. 11, 13 (S.D.N.Y. 1994), "Failure to provide a privilege log . . . is grounds for waiver." Dkt. No. 58 at 3.

1    This citation is problematic for four reasons. First, a decision from a district court in the Second

2    Circuit is not binding on this Court and is, at best, only moderately persuasive. Second, the

3    subject matter of *In re Grand Jury Subpoena* is a criminal subpoena, issued under Federal Rule

4    of Criminal Procedure 17, and is therefore irrelevant to the instant case. *See In re Grand Jury*

5    *Subpoena*, 846 F. Supp. at 12. Third, Plaintiff also cites "*McCallum v. Allstate Prop. & Cas. Ins.*

6    *Co.*, 2022 WL 1124744, at *2 (W.D. Wash. Apr. 14, 2022)" as endorsing this legal principle. To

7    the extent that this case exists, however, it appears to be a 2009 state-court case heard in the

8    Washington Court of Appeals; it has nothing to do with attorney-client privilege (or waiver

9    thereof); and it has not been catalogued by Westlaw at 2022 WL 1124744 (nor, for that matter,

10   has any case). *See McCallum v. Allstate Prop. & Cas. Ins. Co.*, 149 Wn. App. 412, 204 P.3d 944,

11   *review denied* 166 Wn.2d 1037, 217 P.3d 783 (2009). Fourth, the language that Plaintiff purports

12   to quote from *In re Grand Jury Subpoena* does not appear anywhere in Judge Mukasey's order.[4]

13   In any event, as will be discussed below, *see infra* Section III.B.2.b, Plaintiff's subpoena seeks

14   privileged information, and Rule 45 obligates the Court to intervene.

15         As to Plaintiff's argument that MSD's motion lacks detailed burden declarations from IT

16   or HR staff, Plaintiff appears to have ignored the Dowd Declaration (Dkt. No. 56), which is

17   precisely what Plaintiff alleges is missing. Dkt. No. 59 at 3. Patty Dowd is MSD's Assistant

18   Superintendent of Business, Human Resources, and Technology (Dkt. No. 56 ¶ 1), and Dowd

19   testifies to the "time and resources" that MSD must devote to responding to the as-served

20

21

22   ---
     [4] Along with Plaintiff's misrepresentation of Local Civil Rule 7(i), discussed above, this is the second time in this Order that the Court has rejected one of Plaintiff's statements of legal authority as being wholly without merit. Plaintiff is thus reminded that she "owe[s] a duty of candor to the [C]ourt. That duty requires [her] to correctly state the law." *Promedev, LLC v. Wilson*, No. C22-1063, 2024 WL 1606667, at *3 (W.D. Wash. Apr. 12, 2024); *see* Fed. R. Civ. P. 11(b)(2). "Should the court locate any other material misstatements of the law in [Plaintiff's] future filings, the court will not hesitate to issue [an] order to show cause as to why . . . sanctions should not be imposed." *Promedev*, 2024 WL 1606667, at *3.

23

24

1   subpoena (*id.* ¶¶ 5–7). Based on Dowd's job title, which specifically references her domains of

2   human resources and technology, and on Dowd's avowed competence to testify to the facts

3   discussed in her declaration (*see id.* ¶¶ 1–2), the Court is satisfied that Dowd has sufficient

4   credibility on the issue of the burden imposed by the subpoena.

5           **2.    MSD's Substantive Arguments**

6           The Court turns now to MSD's substantive arguments for quashing the subpoena. In

7   seeking to quash Plaintiff's subpoena as a whole, however, MSD's motion does not specifically

8   discuss every category of record that Plaintiff has demanded. The Court will therefore address

9   those categories of records that MSD has identified as problematic. But the Court will not

10  address those categories of records about which MSD's motion is silent and about which MSD

11  provides no grounds to quash.

12          **a.    *Overly Burdensome Requests***

13          Courts "give special weight to the burden on non-parties of producing documents to

14  parties involved in litigation." *Travelers Indem. Co. v. Metro. Life Ins. Co.*, 228 F.R.D. 111, 113

15  (D. Conn. 2005). Further,

16          Underlying the protections of Rule 45 is the recognition "that the
        word 'non-party' serves as a constant reminder of the reasons for
17      the limitations that characterize 'third-party' discovery." Thus, a
        court determining the propriety of a subpoena balances the
18      relevance of the discovery sought, the requesting party's need, and
        the potential hardship to the party subject to the subpoena.

19

20  *Del Campo v. Kennedy*, 236 F.R.D. 454, 458 (N.D. Cal. 2006) (quoting *Dart Indus. Co. v.*

21  *Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980)). Here, MSD argues that Plaintiff's

22  requests are "unreasonable, overly burdensome, and seem to be requested to harass Mukilteo

23  School District." Dkt. No. 55 at 3.

24

Specifically, MSD argues that Plaintiff should not have sought "[r]ecords or communications regarding reference checks or hiring outcomes for other candidates formerly employed by [Defendant Seattle Public Schools]" through a non-party subpoena of MSD, but rather "directly from Seattle Public Schools," the Defendant in this case. *Id.* MSD reasons that "Seattle Public Schools would have record of which reference checks were given to Mukilteo School District, which would likely be a far smaller burden than requiring Mukilteo School District to look through all employee files, past and present, to determine who previously worked for Seattle Public Schools." *Id.*

The Court disagrees with MSD's interpretation of the subpoena. MSD appears to refer to records sought in "Category 4 – Comparator Evidence" of the subpoena, which indeed seeks:

> Records or communications regarding reference checks or hiring outcomes for other candidates formerly employed by SPS, including:
> - Completed reference forms
> - Communications with SPS about those individuals
> - Any complaints or concerns about prior SPS employees applying to Mukilteo SD[.]

Dkt. No. 45-1 at 3. But this would not seem to require MSD to search through "employee files, past and present," as MSD argues. Dkt. No. 55 at 3. Rather, on its face, the request appears to target records related to anyone who: (1) was the subject of reference-related communication between MSD and another entity; and (2) was formerly employed by SPS. This would seem to cover individuals who relied on MSD *for* a reference check (i.e., former or current MSD employees seeking employment elsewhere); and individuals who sought employment with MSD and were therefore the subject of a reference check *by* MSD (i.e., prospective MSD employees).

Yet irrespective of MSD's objection(s) to Plaintiff's demand here, these "Category 4" requests are confusingly described, overly broad in scope, and irrelevant to the matter at hand. This case arises out of Defendant SPS's alleged rescission of a job offer and subsequent non-

hiring of Plaintiff. *See generally* Dkt. No. 21. Proper, similarly situated comparators, then, are individuals whom SPS considered hiring, not individuals about whom MSD "communicated" about reference checks. *See Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108, 1114 (9th Cir. 2011) (describing comparators as being "similar [to a plaintiff] in material respects"). The material issue here is what SPS might or might not have done within the context of hiring (or not hiring) prospective employees, not MSD's communications about references.[5] Moreover, Plaintiff does not identify herself as a former SPS employee, so it is unclear how records associated with this particular class of people are relevant to this case.

With this in mind, the Court is also mindful of both MSD's status as a non-party and the burden to which Dowd attests, as well as the fact that SPS should have records of references for applicants that were provided by MSD. *See* Dkt. No. 55 at 3. Plaintiff must therefore first attempt to obtain that information in discovery from the actual party—defendant in this case, SPS. *See Soto v. Castlerock Farming & Transp.*, 282 F.R.D. 492, 505 (E.D. Cal. 2012) ("[W]here plaintiffs have not shown they attempted to obtain documents from the defendant in an action prior to seeking the documents from a non-party, a subpoena duces tecum places an undue burden on a non-party."). Accordingly, the Court finds it proper to QUASH Plaintiff's subpoena with respect to "Category 4."

### b.    *Requests for Privileged Information*

MSD asserts that Plaintiff's subpoena requests information protected by attorney-client privilege and/or the attorney work-product doctrine. *See* Dkt. No. 55 at 4–5. Specifically, MSD objects to Plaintiff's requests for "'legal correspondence' and communications between Mukilteo

---

[5] MSD's communications about references would seem to be the subject matter of Plaintiff's other case in this District, *Thompson v. Mukilteo School District No. 6*, No. C25-529. *See generally* Amended Complaint, No. C25-529 (W.D. Wash. Apr. 20, 2025), Dkt. No. 46.

School District and 'any attorney at Keating Bucklin & McCormack, including Shannon

Ragonesi,' including 'all. . . (references to) conversations between Mukilteo HR and any SPS

official or [Attorney Shannon] Ragonesi. . . concerning Plaintiff. . . .'" *Id.* at 4 (quoting Dkt.

No. 45-1 at 3–4) (alterations and ellipses in original). MSD asserts that Shannon Ragonesi who,

incidentally, now represents Defendant SPS in the instant case, "previously represented Mukilteo

School District." *Id.*[6]

Plaintiff's subpoena includes several demands that appear to seek privileged information.

With respect to records within "Category 1 – Communications with Seattle Public Schools or

Their Agents," the request for "All communications between Mukilteo School District (including

HR, Superintendent, hiring committee members, union leadership and legal counsel)

and . . . [a]ny attorney at Keating Bucklin & McCormack, including Shannon Ragonesi" (Dkt.

No. 45-1 at 2) plainly encompasses records that would be protected by attorney-client privilege.

Correspondence between MSD and its attorneys is privileged. However, not all of the materials

sought in "Category 1" appear to be privileged—for example, communications from "union

leadership" (*id.*). But generally, records that memorialize communications or interactions

between MSD management and its attorneys are protected from disclosure.

With respect to records within "Category 3 – Legal Hold and Records Preservation," Line

Item No. 5 appears to seek privileged materials. Line Item No. 5 seeks "All documents showing

when and how Mukilteo implemented a litigation hold concerning: Plaintiff's litigation, EEOC

charge, or public records requests; [and] Communication preservation directives related to her

candidacy or reference checks." Dkt. No. 45-1 at 3. "[L]itigation hold notices, 'if prepared by

counsel and directed to the client, are protected by the attorney-client privilege.'" *Thomas v.*

---

[6] According to the Docket, Ragonesi is employed by the firm Keating, Bucklin & McCormack, Inc., P.S.

*Cricket Wireless, LLC*, No. C19-7270, 2020 WL 7344742, at *2 (N.D. Cal. Dec. 14, 2020) (quoting *Shenwick v. Twitter, Inc.*, No. C16-5314, 2018 WL 833085, at *4 (N.D. Cal. Feb. 7, 2018)). But issues of privilege vis-à-vis litigation hold notices are nuanced. "[T]he basic details surrounding the litigation hold are not" privileged. *Cohen v. Trump*, No. C13-2519, 2015 WL 3617124, at *7 (S.D. Cal. June 9, 2015). For example, "the names and titles of the employees who received hold notices and the dates that the notices were issued [are] not privileged." *In re Social Media Adolescent Addiction/Personal Injury Prods. Liab. Litig.*, No. MD22-3047, 2024 WL 1808607, at *2 (N.D. Cal. Apr. 25, 2024) (citing *Doe LS 340 v. Uber Tech., Inc.*, 710 F. Supp. 3d 794, 803 (N.D. Cal. 2024)). Further, communications among recipients of litigation-hold notices *about* the litigation holds—that is, communications that were not prepared by counsel and were circulated or disseminated within the organization without counsel's participation—are not privileged.

All that said, the Court questions the relevance of those records sought in Category 3. As discussed above, MSD's conduct is not at issue in this lawsuit, and MSD's response to Plaintiff's "litigation, EEOC charge, or public records requests" appears to have, at most, a limited bearing on SPS's rescission of its job offer to, and subsequent non-hiring of, Plaintiff. But aside from its objections to the short timeline provided by the subpoena, *see infra* Section III.B.2.c, MSD has not indicated that production of such records would be overly burdensome. Accordingly, the Court declines to examine the substance of the privilege issue beyond MSD's assertion thereof.

Therefore, to the extent that the subpoena seeks privileged information, it is QUASHED. MSD SHALL prepare a privilege log that, in accordance with Federal Rule of Civil Procedure 45(e)(2)(A)(ii), "describe[s] the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim."

1          c.    ***Time to Comply***

2          Plaintiff characterizes the materials that she seeks as "critical, time-sensitive evidence."

3   Dkt. No. 58 at 1. Notably, however, Plaintiff does not respond to MSD's argument that

4   Plaintiff's provision of 12 calendar days—and only nine business days—was an unreasonably

5   short amount of time to comply with the subpoena. *See* Dkt. No. 55 at 5. None of Plaintiff's

6   requests appears to be particularly time-sensitive, especially given that this case is in its very

7   early stages and, indeed, a case schedule had not even been set at the time the subpoena was

8   issued. "Time-sensitive" is a characterization generally reserved for forensic evidence such as "a

9   blood or breath alcohol test," *Hansen v. Scram of Cal., Inc.*, No. C17-1474, 2017 WL 11635416,

10  at *2 (C.D. Cal. June 29, 2017); or evidence that might be reliant upon witnesses' memories, *see*

11  *Bridges v. Geringer*, No. C13-1290, 2013 WL 3888328, at *5 (N.D. Cal. July 24, 2013), to name

12  two. There is nothing sought by the subpoena that, on its face, appears to be something so fragile

13  that it necessitates production now.

14          With respect to those materials that Plaintiff has classified in her subpoena as "Category

15  3," Patty Dowd avers that "conducting an electronic search as requested will take longer than 9

16  business days or 12 calendar days, as it involves engaging the IT department and may require

17  planning and running multiple searches." Dkt. No. 56 ¶ 5. "As written," Dowd asserts, "and with

18  summer break about to start, this request may take at least ninety days." *Id.* Similarly, a search

19  for "Category 4" materials cannot be completed "in only 9 business days or 12 calendar days"

20  (*id.* ¶ 6), and a search for "Category 5" materials "would take an undeterminable amount of

21  time" (*id.* ¶ 7). "Mukilteo School District is a public school district in the State of Washington,

22  and its' [*sic*] employees generally work during normal business hours." Dkt. No. 55 at 6.

23          Because Plaintiff has not disputed MSD's assertion that 12 days is not sufficient time for

24  MSD to comply with the subpoena, the Court considers MSD's position on the subject to have

merit. *See Renato v. Beaulieu*, No. C20-708, 2022 WL 1607919, at *11 (W.D. Wash. May 20, 2022) (finding plaintiff's failure to "substantively contest [defendants'] legal arguments" to be an admission that those arguments had merit). Further, beyond her conclusory statements that the documents sought are "time-sensitive," Plaintiff does not provide any substantive argument as to why she needs the requested materials so quickly. Plaintiff has asserted that, in seeking to quash her subpoena, MSD "continues a pattern of procedural evasion, bad faith delay, and obstruction" (Dkt. No. 58 at 1), but MSD's motion to quash appears to be the first—and only—instance of MSD's resistance to Plaintiff's prosecution of this case. MSD is not a party to this lawsuit, and while the Court recognizes that Plaintiff is concurrently suing MSD in a separate case in this District, any friction she might be encountering with MSD there is immaterial here and should, instead, be addressed in the other case. *See* Amended Complaint, *Thompson v. Mukilteo Sch. Dist. No. 6*, No. C25-529 (W.D. Wash. Apr. 20, 2025), Dkt. No. 46.

Moreover, caselaw tends to indicate that Plaintiff has not provided MSD with sufficient time to comply with her subpoena. "Rule 45 has been crafted to mirror 'the other discovery rules.'" *BNSF Ry. Co. ex rel. U.S. v. Ctr. for Asbestos Related Disease, Inc.*, No. C19-40, 2022 WL 1442854, at *4 (D. Mont. May 6, 2022) (citing Fed. R. Civ. P. 45 advisory committee's note to 1970 amendment). "Under Rule 34, a party is generally afforded 30 days to produce documents, no matter how small or non-complex the request." *Id.* (citing Fed. R. Civ. P. 34(b)(2)(A)). Here, Plaintiff demanded production within just 12 days. "Given the complexity of the production sought, this rushed deadline is hard to justify." *Id.* Moreover, whether a subpoena provides a reasonable amount of time to comply is a fact-specific inquiry. *See Whole Woman's Health v. Paxton*, No. MC17-303, 2017 WL 4855392, at *2 (D. Haw. Oct. 26, 2017). Through the Dowd Declaration, MSD has proffered evidence demonstrating that Plaintiff's subpoena provides an unreasonably short time for compliance. *See* Dkt. No. 56 ¶¶ 5–8. Plaintiff's

response, in contrast, is based entirely on procedural grounds—i.e., untimeliness, improper designation as an "emergency motion," delay, and lack of supporting documentation. *See* Dkt. No. 59 at 2–3. With Plaintiff proffering no facts of her own to counter those of MSD, the fact-specific inquiry necessarily tips in favor of MSD.

Therefore, the Court finds that Plaintiff's subpoena did not provide MSD with a reasonable amount of time to comply. Plaintiff SHALL therefore provide MSD with ninety (90) days from the date of this Order to comply with the subpoena.

*    *    *

Finally, the Court reminds the Parties (and non-party) that they are engaged in *civil* litigation, and the Court urges all involved to conduct themselves accordingly. "Discovery between parties should be cooperative and largely unsupervised by the district court." *Infanzon v. Allstate Ins. Co.*, 335 F.R.D. 305, 310–11 (C.D. Cal. 2020) (citing *Sali v. Corona Reg'l Md. Ctr.*, 884 F.3d 1218, 1219–20 (9th Cir. 2018)). The Court's ruling herein resolves only those questions framed in MSD's motion to quash. Plaintiff and MSD will therefore need to come to an agreement over the breadth and scope of those parts of the subpoena that the Court has not addressed. Every time the Court's intervention into an ancillary issue is sought, the case is delayed and the Parties are led astray from the issues at hand.

## IV.    PLAINTIFF'S MOTION TO COMPEL

On June 14, 2025, Plaintiff filed a motion to compel MSD's compliance with the same subpoena that is the subject of MSD's motion to quash. Dkt. No. 48. Plaintiff also moved for sanctions against MSD. *Id.* at 4–5. Given that Plaintiff's motion to compel and MSD's motion substantially overlap one another (*compare id.*, *with* Dkt. No. 55), Plaintiff's motion to compel is GRANTED IN PART and DENIED IN PART, consistent with this Order. Plaintiff's request for sanctions against MSD is DENIED.

## V.     PLAINTIFF'S SUPPLEMENTAL OPPOSITION

On June 27, 2025, Plaintiff filed "Supplemental Opposition to MSD's Motion to Quash Subpoena (Dkt. #55) and Request for Compelled Disclosure of November 29, 2023, Voicemail and Associated Records." Dkt. No. 77. The Court STRIKES this submission as an inappropriate surreply.

While Plaintiff captioned the submission as "supplemental opposition," she erroneously docketed the submission as a "Notice of Supplemental Authority." *See id.* A notice of supplemental authority is a filing used to "bring to the court's attention relevant authority issued after the date the party's last brief was filed." LCR 7(n). In this context, "authority" is "[a] legal writing taken as definitive or decisive; esp., a judicial or administrative decision cited as a precedent." *Authority*, Black's Law Dictionary (12th ed. 2024). This definition does not include a party's additional argumentation in support of their position. In captioning her briefing as "supplemental opposition," Plaintiff clearly understood that, despite representing her submission as such, she was not actually providing the Court with a notice of supplemental authority under Local Civil Rule 7(n).[7]

As to the actual content of Plaintiff's briefing, the submission is an improper surreply. In opposing a motion, a may submit *one* "brief in opposition to the motion, together with any supporting material . . . ." LCR 7(b)(2). Under specific circumstances, and for one specific purpose—namely, to request that the Court strike material contained or attached to a movant's reply brief—an opposing party may file a short (1,050-word, or 3-page) surreply. LCR 7(g). But "the surreply must be filed within five days of the filing of the reply brief, and shall be strictly

---

[7] In any event, a proper notice of supplemental authority may not contain "both the new authority *and* argument." *McArthur v. Holland Am. Line Inc.*, No. C22-1071, 2022 WL 18673224, at *2 (W.D. Wash. Dec. 9, 2022); *see* LCR 7(n) (providing that a notice of supplemental authority ("attaches the supplemental authority without argument").

1    limited to addressing the request to strike. Extraneous argument or a surreply filed for any other

2    reason will not be considered." LCR 7(g)(2). Excluding the certificate of service, Plaintiff's

3    "supplemental opposition" is eight pages long. *See* Dkt. No. 77. It was filed 10 days after MSD

4    submitted its reply brief in support of its motion to quash. *Id.* And it: (1) re-treads arguments that

5    Plaintiff already made in her opposition to MSD's motion (*see, e.g.*, *id.* at 4 (arguing that MSD

6    asserted privilege without providing a privilege log)); and (2) presents new arguments that

7    Plaintiff could have raised in her original opposition brief (Dkt. No. 59) (*see, e.g.*, *id.* at 5

8    (arguing that the crime-fraud exception to attorney-client privilege requires disclosure of certain

9    records)). Further, the "Request for Compelled Disclosure" portion of Plaintiff's submission (*see*

10   *id.* at 2, 4–7) is redundant. Plaintiff presented this same subject matter to the Court in her original

11   Motion to Compel (Dkt. No. 48). Plaintiff is advised that, when seeking the Court's intervention

12   on a specific issue, duplicative requests are wasteful and unhelpful, as they do little more than

13   drain the Court's limited resources.

14            Plaintiff is again cautioned that she is expected to prosecute her case in accordance with

15   the Federal Rules of Civil Procedure and this District's Local Civil Rules. Having given Plaintiff

16   this exact admonishment in an Order dated June 23, 2025 (*see* Dkt. No. 75 at 5), the Court is

17   astounded that Plaintiff ran afoul of it only four days later. Plaintiff is advised that future

18   violations may result in sanctions.

19                            **VI.    CONCLUSION**

20            Accordingly, MSD's motion to quash (Dkt. No. 55) is GRANTED IN PART and DENIED IN

21   PART. It is ordered:

22            (1)    Plaintiff's subpoena is QUASHED with respect to records sought in

23                   "Category 4";

24

(2)     Plaintiff's subpoena is QUASHED to the extent that it seeks records protected by attorney-client privilege and the work-product doctrine. In responding to Plaintiff's subpoena, MSD SHALL provide Plaintiff with a privilege log that accords with Federal Rule of Civil Procedure 45(e)(2)(A).

(3)     Consistent with this Order, Mukilteo School District SHALL produce records responsive to Plaintiff's subpoena **no later than ninety (90) days** from the date of this Order.

(4)     Plaintiff's Motion to Compel (Dkt. No. 48) is GRANTED IN PART and DENIED IN PART, consistent with this Order.

(5)     Plaintiff's Supplemental Opposition to MSD's Motion to Quash Subpoena and Request for Compelled Disclosure of November 29, 2023, Voicemail and Associated Records. (Dkt. No. 77) is STRICKEN.

Dated this 3rd day of July 2025.

Tana Lin
United States District Judge