UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ROSA MARIA CABRERA THOMPSON,

Plaintiff,

v.

SEATTLE PUBLIC SCHOOLS, a public school district in the State of Washington,

Defendant.

CASE NO. 2:25-cv-00468-TL

ORDER ON MOTION TO AMEND

This matter is before the Court on Plaintiff's motion for leave to file a second amended complaint ("SAC"). Dkt. No. 96. Having reviewed the motion, Defendant's response (Dkt. No. 98), Plaintiff's reply (Dkt. No. 99), and the relevant record, the Court GRANTS IN PART and DENIES IN PART Plaintiff's motion.

## I.    BACKGROUND

This is a fractious employment-discrimination case. Plaintiff Rosa Maria Cabrera Thompson, a school administrator, identifies herself as "a Black and Hispanic woman of Afro-

ORDER ON MOTION TO AMEND – 1

Caribbean descent, [whose] national origin is Latina." Dkt. No. 96-3 (proposed SAC) at 2. Defendant is Seattle Public Schools ("SPS"), a public school district in Washington.[1]

In a nutshell, this case stems from Defendant SPS's rescission of a job offer it made to Plaintiff. In October 2023, Plaintiff settled a federal Equal Employment Opportunity ("EEO") complaint against her former employer, Mukilteo School District ("MSD"). *See id.* at 3.[2] The settlement agreement "included non-retaliation, no investigations and neutral reference provisions beyond October 16, 2023." *Id.* In October or November 2023, Plaintiff applied for an assistant principal position with Defendant SPS. *Id.* On November 20, 2023, "SPS formally extended an employment offer for a substitute assistant principal and pending interim assistant principal position at Garfield High School, which Plaintiff accepted after completing all onboarding and compliance requirements." *Id.* On December 7, 2023, however, Defendant SPS rescinded the job offer. *See id.* at 3. Plaintiff alleges that the rescission of the job offer was retaliation for Plaintiff's having engaged in protected EEO activity in her former job at MSD. Plaintiff alleges further that the rescission of her job offer represents the culmination of a conspiracy between Defendant SPS, MSD, and the Washington Schools Risk Management Pool ("WSRMP").

On March 11, 2025, Plaintiff filed a complaint against Defendant SPS, alleging

---

[1] As a preliminary matter, the Court points to a contradiction in Plaintiff's proposed SAC. The caption identifies SPS as the only Party Defendant in the case. Dkt. No. 96-3 at 1. Under Federal Rule of Civil Procedure 10(a), "The title of the complaint must name all the parties." None of Plaintiff's pleadings has identified any other Defendant. In the body of the proposed SAC, however, Plaintiff asserts that she "now seeks to add the [Washington Schools Risk Management Pool ('WSRMP')] for its central role in coordinating retaliatory and discriminatory actions." *Id.* at 2. However, the Court also notes that at the time this motion was filed, Plaintiff had filed a Motion to Extend Joinder Deadline to February 1, 2026 ("Joinder Motion"). Dkt. No. 92. The Court presumes Plaintiff pleaded allegations regarding WSRMP without adding it as a defendant because her Joinder Motion was pending, and the original deadline for joinder was August 1, 2025 (the date this motion was filed). Dkt. No. 83. The Court has since granted the Joinder Motion. Dkt. No. 155.

[2] Plaintiff is presently suing MSD in a parallel case in this District, *Thompson v. Mukilteo School District No. 6*, No. C25-529 (W.D. Wash.).

ORDER ON MOTION TO AMEND – 2

employment discrimination under the Washington Law Against Discrimination ("WLAD"); employment discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"); breach of contract; violation of the Washington Public Records Act; violation of due process under 42 U.S.C. § 1983; and violation of equal protection under 42 U.S.C. § 1983. *See generally* Dkt. No. 1. On April 9, 2025, Plaintiff filed a first amended complaint ("FAC") as a matter of course. Dkt. No. 21. The FAC included new allegations but maintained the same Defendant and same six causes of action as the original complaint. *Compare* Dkt. No. 21, *with* Dkt. No. 1.

Discovery began, and on August 1, 2025, based on information she learned from Defendant's production, Plaintiff filed the instant motion, seeking leave to amend the FAC. Dkt. No. 96. In accordance with the Local Civil Rules, Plaintiff's motion included a proposed SAC.[3] Dkt. No. 96-3. The proposed SAC includes 11 new causes of action. The proposed SAC includes 17 claims: (1) employment discrimination under WLAD; (2) employment discrimination under Title VII; (3) breach of contract; (4) violation of the Washington Public Records Act; (5) violation of due process under 42 U.S.C. § 1983; (6) violation of equal protection under 42 U.S.C. § 1983; (7) violation of the terms of an EEOC settlement agreement; (8) First Amendment retaliation; (9) violation of the Washington Consumer Protection Act ("WCPA"); (10) civil violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"); (11) civil rights conspiracy under 42 U.S.C. § 1985(3); (12) lost wages and benefits under Chapters 49.48 and 49.52 RCW; (13) abuse of power/substantive due process under 42 U.S.C. § 1983; (14) wrongful termination in violation of public policy; (15) promissory estoppel; (16) tortious interference with a business expectancy; and (17) retaliation under Title VII. Dkt. No. 96-3 at 36–64.

---

[3] While the SAC refers to exhibits, no exhibits were attached to the SAC. *See generally* Dkt. No. 96.

ORDER ON MOTION TO AMEND – 3

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 15(a)(2) provides that "[t]he court should freely give leave [to amend a pleading] when justice so requires." This is a liberal standard, and a court should decline to grant leave to amend only if there is strong evidence of undue delay, bad faith, prejudice to the opposing party, or futility. *See, e.g.*, *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma County*, 708 F.3d 1109, 1117 (9th Cir. 2013) (alteration in original) (internal quotation marks omitted) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).[4]

## III.    DISCUSSION

Counts One through Six of Plaintiff's proposed SAC are the same as the claims brought in her FAC, except that Plaintiff appears to seek to add an additional Defendant (WSRMP) to Counts Three and Five. Dkt. No. 96-3 at 36–46. Further, Plaintiff seeks to add 11 new claims (Counts Seven through Seventeen). *Id.* at 47–64. Plaintiff does not specify which claims are brought against which Defendants. It appears, however, that Plaintiff intends to plead all 11 new claims against Defendant SPS, and some of them against Defendant WSRMP. As the Court has now granted Plaintiff additional time to join parties (*see* Dkt. No. 155; *see also supra* n.1.), in evaluating Plaintiff's motion here, the Court will consider claims to have been pleaded against WSRMP where the language of the proposed SAC lends itself to such an interpretation. These appear to be Counts Three, Five, Seven, Ten, Eleven, and Sixteen. Defendant variously asserts

---

[4] Although the Court issued a case scheduling order (Dkt. No. 83) before Plaintiff filed the instant motion (Dkt. No. 96), Rule 15's liberal amendment standard applies here. Ninth Circuit authority indicates that the "good cause" standard of Rule 16 applies when a Party seeks to modify the scheduling order. *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992); Fed. R. Civ. P. 16(b)(4) (providing that a "schedule may be *modified* only for good cause and with the judge's consent") (emphasis added). In this case, Plaintiff moved for leave to amend her complaint on August 1, 2025 (Dkt. No. 96), well before the August 29, 2025, deadline to amend pleadings (Dkt. No. 83).

ORDER ON MOTION TO AMEND – 4

that these additional claims are futile, have been brought in bad faith, or both.[5] *See* Dkt. No. 98 at 3–7.

**A.    Futility/Failure to State a Claim**

"[T]he test of futility is identical to the one applied when considering challenges under Rule 12(b)(6) for failure to state a claim upon which relief may be granted." *Schaired v. Monterey Fin. Servs., Inc.*, No. C22-736, 2023 WL 376007, at *4 (S.D. Cal. Jan. 24, 2023) (citing *Nordyke v. King*, 644 F.3d 776, 788 n.12 (9th Cir. 2011), *rev'd per curiam on other grounds* 681 F.3d 1041 (2012)). The Court will examine each amended claim and each additional claim in turn.

**1.    Count Three: Breach of Contract (as against Defendant WSRMP)**

Under Washington law, there are three elements to a breach of contract claim: (1) existence of a contract; (2) breach of that contract; and (3) damages. *Corner Computing Sols. v. Google LLC*, 750 F. Supp. 3d 1208, 1214 (W.D. Wash. 2024) (citing *Univ. of Wash. v. Gov't Emps. Ins. Co.*, 200 Wn. App. 455, 467, 404 P.3d 559 (2017)).

Here, Plaintiff does not identify any contract between her and Defendant WSRMP. Plaintiff asserts that she signed an EEOC settlement agreement with non-party MSD. Dkt. No. 96-3 at 32. This settlement agreement appears to represent the allegedly breached contract at issue in this claim. *See id.* at 41. Nowhere in the proposed SAC, however, does Plaintiff allege that Defendant WSRMP was a party to the agreement. There is thus no enforceable contract here, and no cause of action against Defendant WSRMP for breach of contract.

Therefore, to the extent that Plaintiff seeks leave to amend her complaint by adding Defendant WSRMP to Count Three in the proposed SAC, Plaintiff's motion is DENIED.

---

[5] Defendant SPS did not move to dismiss the claims against it that are carried over from the FAC–i.e., Counts One through Six in the proposed SAC. Therefore, the Court will not discuss these claims, as against Defendant SPS.

ORDER ON MOTION TO AMEND – 5

**2.      Count Five: Violation of Due Process (as against Defendant WSRMP)**

Plaintiff seeks to add to Count Five the allegation that "Plaintiff had a constitutionally protected property interest in her confirmed employment with SPS. The rescission of this offer, following reference interference by individuals acting under color of law—including WSRMP and its retained counsel—constituted a deprivation of due process under the Fourteenth Amendment." Dkt. No. 96-3 at 45. Other than this single phrase, Plaintiff does not identify what, specifically, Defendant WSRMP might have done to violate her Fourteenth Amendment rights. Plaintiff brings allegations against a singular "Defendant" here but, as discussed above, *see supra* note 1, Plaintiff seeks to sue two Defendants. On the face of the proposed pleading, then, it is thus unclear which Defendant she is referring to. *See, e.g.*, *id*. at 46. Moreover, Plaintiff alleges that "Defendant failed to follow its own hiring policies," which only makes sense if "Defendant" refers to Defendant SPS, the entity with whom Plaintiff actually sought employment. And the complained-of conduct, as pleaded in the claim, is specifically the "rescission of [Plaintiff's job] offer" (*id.* at 45), which Defendant WSRMP could not have done, because it was Defendant SPS's job offer.

Therefore, to the extent that Plaintiff seeks leave to amend her complaint by adding Defendant WSRMP to Count Five in the proposed SAC, Plaintiff's motion is DENIED.

**3.      Proposed Count Seven: Violation of Terms of EEOC Settlement Agreement**

As discussed above, under Washington law, there are three elements to a breach of contract claim: (1) existence of a contract; (2) breach of that contract; and (3) damages. *Corner Computing Sols.*, 750 F. Supp. 3d at 1214. Here, Defendant SPS argues that Plaintiff's proposed breach claim is futile, because Defendant SPS was not party to the EEOC Settlement Agreement. *See* Dkt. No. 98 at 3. "Under no set of alleged facts could SPS be liable for a claim of breach of contract when it was not a party to the contract." *Id.* In response, Plaintiff asserts that "SPS's 'not

a party, no breach' argument ignores Washington doctrines imposing liability on non-signatories for assumption/ratification/agency/alter-ego/third-party-beneficiary conduct." Dkt. No. 99 at 6. This may be so, but Plaintiff ignores such doctrines too. Simple recitation of the existence of a doctrine, without authority or explanation, does not enable the Court to apply law to facts. Defendant's "'not a party, no breach' argument" is supported by case law (*see* Dkt. No. 98 at 3); Plaintiff's rebuttal of that argument is not (*see* Dkt. No. 99 at 6). To the extent Plaintiff attempts to rely on exhibits attached to her reply (*id.*), those documents were stricken from the record. Dkt. No. 153. In any event, the Court will not consider argument and evidence presented for the first time in a reply brief. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."); *Mort v. DeJoy*, No. C19-652, 2023 WL 168834, at *2 (E.D. Cal. Jan. 12, 2023) (collecting cases).

With respect to Defendant WSRMP, as pleaded, Plaintiff's proposed SAC alleges that "WSRMP, in concert with MSD and Ragonesi, violated the terms of the EEOC settlement agreement . . . ." Dkt. No. 96-3 at 41. Like Defendant SPS, Defendant WSRMP was not a party to the agreement in question. Moreover, in any event, Plaintiff's allegation that MSD violated the terms of the EEOC settlement agreement is one of the core claims in Plaintiff's other pending case, and allegations related to that claim belong in that case, not this one. Finally, Ragonesi is not named as a Defendant in the proposed SAC.

Therefore, to the extent that Plaintiff seeks leave to amend her complaint by adding Count Seven in the proposed SAC, Plaintiff's motion is DENIED.

### 4.    Proposed Count Eight: First Amendment Retaliation

There are three elements to a First Amendment retaliation claim. Plaintiff must establish that: (1) she was "engaged in a constitutionally protected activity"; (2) Defendant's "actions would chill a person of ordinary firmness from continuing to engage in the protected activity";

ORDER ON MOTION TO AMEND – 7

and (3) the protected activity was a substantial or motivating factor in the [Defendant's] conduct." *Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 827 (9th Cir. 2020). Defendant SPS alleges that Plaintiff's claim is deficient as to the third element. *See* Dkt. No. 98 at 4.

Plaintiff has adequately pleaded all three elements. As to the first, Plaintiff alleges that she filed an EEOC complaint against Defendant SPS in January 2024. Dkt. No. 96-3 at 49. In the Ninth Circuit, "the act of filing an administrative complaint with the EEOC . . . [is considered] a matter of public concern protected by the First Amendment." *Lucke v. Multnomah County*, No. C06-1149, 2008 WL 4372882, at *44 (D. Or. Sept. 22, 2008) (citing *Alpha Energy Savers, Inc. v. Hansen*, 381 F.3d 917, 926–27 (9th Cir. 2004)); *see Marziano v. County of Marin*, No. C10-2740, 2010 WL 3895528, at *5 (N.D. Cal. Oct. 4, 2010). As to the second, Plaintiff alleges that Defendant SPS "denied Plaintiff at least 17 further job opportunities across the district." Dkt. No. 96-3 at 49. This is sufficient to establish the second element in a pleading. *See Ramirez v. San Mateo County Dist. Attorney's Off.*, 639 F.2d 509, 514 (9th Cir. 1981). Finally, as to the third element, Defendant SPS's temporal argument frames the proposed claim too narrowly. Defendant SPS points to the alleged facts that "SPS learned of her protected activity/EEOC complaint in February 2024," which was "two months *after* the decision to not move forward with the conditional offer of employment for the three-week substitute job." Dkt. No. 98 at 4. But the claim is broader than Defendant SPS's decision not to hire Plaintiff in December 2023. Plaintiff alleges that Defendant SPS turned her down for "at least 17 further job opportunities." Dkt. No. 96-3 at 49. Certainly, Plaintiff will need to establish more concrete facts to ultimately prevail on this cause of action. But at this procedural posture, the claim has been adequately pleaded.

Therefore, to the extent that Plaintiff seeks leave to amend her complaint by adding Count Eight, as against Defendant SPS, in the proposed SAC, Plaintiff's motion is GRANTED.

### 5.    Proposed Count Nine: Washington Consumer Protection Act

"[T]o prevail in a private [W]CPA action . . . , a plaintiff must establish five distinct elements: (1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986).

Plaintiff's claim is deficient as to the first element. Discriminatory hiring does not fall within the purview of the WCPA. The WLAD provides that an act of discrimination under that statute is a per se violation of the WCPA. *See* RCW 49.60.030(3). However, the law provides an express exception to this rule: It does not apply to "any unfair practice committed by an employer against an employee or a prospective employee . . . ." *Id.* The Washington Supreme Court affords significant deference to statutory language when defining the interaction between the WCPA and other laws: "Where the Legislature specifically defines the exact relationship between a statute and the CPA, this court will acknowledge that relationship." *Hangman Ridge*, 105 Wn.2d at 787; *see also Kirkpatrick v. Ironwood Commc'ns*, No. C05-1428, 2006 WL 2381797, at *13 (W.D. Wash. Aug. 16, 2006) (noting that the "legislature chose to specifically exempt such WLAD claims from the scope of the CPA").

Therefore, to the extent that Plaintiff seeks leave to amend her complaint by adding Count Nine in the proposed SAC, Plaintiff's motion is DENIED.

### 6.    Proposed Count Ten: Racketeer Influenced and Corrupt Organizations ("RICO") Act

"The elements of a civil RICO claim are as follows: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to

ORDER ON MOTION TO AMEND – 9

plaintiff's business or property." *United Bhd. of Carpenters & Joiners of Am. v. Building & Constr. Trades Dep't, AFL-CIO*, 770 F.3d 834, 837 (9th Cir. 2014) (citation modified). "Racketeering activity includes specific, indictable conduct listed under 18 U.S.C. § 1961(1)." *Nikolich v. Progressive Cas. Ins. Co.*, No. C25-5825, 2026 WL 445566, at *2 (W.D. Wash. Feb. 17, 2026). Where, as here, the civil RICO claim is predicated upon fraud (*see* Dkt. No. 96-3 at 55), the allegations must be pleaded with sufficient particularity that satisfies Federal Rule of Civil Procedure 9(b). *See Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065–66 (9th Cir. 2004). Under Rule 9(b),

> Averments of fraud must be accompanied by "the who, what, when, where, and how" of the misconduct charged. A plaintiff must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false.

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation modified).

Plaintiff's pleading does not meet this standard. The claim, for example, is based in large part on alleged telephone calls and conversations, but the pleading "contains not a word of the [conversations]' specific contents." *Edwards*, 356 F.3d at 1066. Plaintiff provides a general narrative that includes allusions and references to activities that she alleges constitute a pattern, but the picture, as alleged, remains vague and based primarily on conclusory allegations and speculation. Moreover, "In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, "identify the role of each defendant in the alleged fraudulent scheme." *Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007). The only specific conduct that Plaintiff alleges against Defendant WSRMP is the organization's retention of Shannon Ragonesi, an attorney. Dkt. No. 96-3 at 51, 55. Retaining counsel is not, by itself, actionable misconduct, and assigning such conduct to Defendant WSRMP does not adequately explain its role in the alleged fraudulent scheme.

Further, the "specific, indictable conduct under 18 U.S.C. § 1961(1)" is not apparent from the proposed SAC, nor is it adequately pleaded. "A pattern of racketeering activity is defined by relationship and continuity." *Croteau v. Nat'l Better Living Ass'n, Inc.*, 290 F.R.D. 521, 533 (D. Mont. 2013) (citing *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)). The United States Supreme Court defines relatedness as conduct with "the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *H.J. Inc.*, 492 U.S. at 240. "Continuity may refer 'either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with threat of repetition.'" *Croteau*, 290 F.R.D. at 533 (quoting *H.J. Inc.*, 492 U.S. at 241). None of this is clearly apparent, beyond conjecture, from the proposed pleading.

Therefore, to the extent that Plaintiff seeks leave to amend her complaint by adding Count Ten in the proposed SAC, Plaintiff's motion is DENIED.

**7.    Proposed Count Eleven: Civil Rights Conspiracy**

"The four elements of a claim under § 1985(3) are: (1) a conspiracy; (2) undertaken to deprive, either directly or indirectly, any person or class of persons of the equal protection of the laws; (3) an overt act in furtherance of the conspiracy; and (4) injury to a plaintiff's person, property, or other protected rights." *Emanuel Displaced Persons Ass'n v. City of Portland*, 704 Supp. 3d 1088, 1106 (D. Or. 2023) (citing *United Bhd. of Carpenters & Joiners of Am. v. Scott*, 463 U.S. 825, 828–29 (1983)). "Further, the second of these four elements requires that in addition to identifying a legally protected right, a plaintiff must demonstrate a deprivation of that right motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992) (quoting *Griffith v. Breckenridge*, 403 U.S. 88, 102 (1971)).

Pleading a civil-rights conspiracy under Section 1985 is not easy. "To meet the first

element, 'the plaintiff must state specific facts to support the existence of the claimed conspiracy.'" *Gaetz v. City of Riverside*, 722 F. Supp. 3d 1054, 1069 (C.D. Cal. 2024) (citing *Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1989)). Although "a conspiracy may be inferred from conduct and need not be proven by evidence of an express agreement," *Ward v. Equal Emp. Opportunity Comm'n*, 719 F.2d 311, 314 (9th Cir. 1983), a "mere allegation of conspiracy without factual specificity is insufficient" for § 1985(3) liability, *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988). A successful pleading must contain "plausible allegations—with specific facts—that there was a 'meeting of the minds' or an 'agreement' between the alleged co-conspirators. *Gaetz*, 722 F. Supp. 3d at 1069; *see Lacey v. Maricopa*, 693 F.3d 896, 937 (9th Cir. 2012) ("The conclusory conspiracy allegations . . . do not define the scope of any conspiracy involving [Defendants], what role [they] had, or when or how the conspiracy operated."); *Steshenko v. Albee*, 70 F. Supp. 3d 1002, 1015 (N.D. Cal. 2014) ("Plaintiff has not alleged sufficient specific facts regarding the alleged conspiracy, including: (1) a specific agreement between [Defendants]; (2) the scope of the conspiracy; (3) the role of [the Defendants] in the conspiracy; [and] . . . (4) . . . how the conspiracy operated.").

Here, Plaintiff has drawn many dots on a whiteboard, but she has not adequately connected them. There may exist substantive lines of collusion and collaboration that could be drawn between these dots, but the SAC does not sketch them. Plaintiff refers to a "tacit agreement to share negative information and retaliate against Plaintiff for filing civil rights complaints" (Dkt. No. 96-3 at 56), but the facts she presents to substantiate this tacit agreement are the existence and timing—but not the content—of communications (*see id.* at 29–31, 32–36, 56–57). This is insufficient, especially considering the role that phone calls and voicemails allegedly play in the conspiracy. Where the agreement is "tacit"—i.e., unstated or implied—then by definition, its existence cannot be established circumstantially by pointing to necessarily

ORDER ON MOTION TO AMEND – 12

*verbal* interactions. Moreover, none of Plaintiff's allegations regarding purported contradictions in Defendant's counsel's submissions to the Court indicates the requisite meeting of the minds or agreement to indicate a plausible conspiracy.[6] Finally, Plaintiff's own framing of the agreement was "to share negative information and retaliate against Plaintiff for filing civil rights complaints." *Id.* at 56. But this suggests retaliation as the motivation (which is the subject of Plaintiff's proposed new Claim Seventeen), not a race- or class-based animus.

Therefore, to the extent that Plaintiff seeks leave to amend her complaint by adding Count Eleven in the proposed SAC, Plaintiff's motion is DENIED.

**8.      Proposed Count Twelve: Lost Wages and Benefits**

Plaintiff's proposed SAC does not allege that Defendant SPS withheld wages from her. Plaintiff cites Chapters 49.48 and 49.52 RCW as broadly providing authority for her claims, but together, these chapters of the Revised Code comprise more than 30 separate statutes and countless provisions of law. Plaintiff purports to provide the legal elements of a claim for lost wages and benefits (*see* Dkt. No. 96-3 at 58), but she does not cite to any legal authority. In any event, even if the Court accepted Plaintiff's recitation of the elements here as valid, Plaintiff has not demonstrated that Defendant SPS "willfully withheld wages." Plaintiff alleges that her job offer was revoked, but she does not establish that she was entitled to compensation for any work that she performed, nor does she establish that Defendant SPS neglected to pay her for work that she performed.

Therefore, to the extent that Plaintiff seeks leave to amend her complaint by adding Count Twelve in the proposed SAC, Plaintiff's motion is DENIED.

---

[6] Plaintiff's Section 1985 claim is largely a restatement of her Title VII claim. "[T]he deprivation of a right created by Title VII cannot be a cause of action under § 1985(3)." *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 378 (1979). Defendant SPS does not pursue this line of argument, however, and the Court will not take it up further.

**9.      Proposed Count Thirteen: Abuse of Power/Substantive Due Process**

To bring a substantive due process claim for abuse of power under 42 U.S.C. § 1983, a plaintiff must allege conduct "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998). The fact pattern here, as alleged, does not fit into the relatively narrow, two-branch framework that the Supreme Court has established for such claims. Under the "purpose to harm" standard, which applies where the alleged tortfeasor acted spontaneously, without time to consider their actions, a plaintiff must show that the defendant acted "maliciously and sadistically for the very purpose of causing harm." *Id.* at 853. Under the "deliberate indifference" standard, which applies where the alleged tortfeasor had time to deliberate before acting, a plaintiff must show that the defendant "consciously disregarded a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 839 (1994) (citation modified); *see Hammel v. Tri-County Metro. Transp. Dist. of Oregon*, 955 F. Supp. 2d 1205, 1211 (D. Or. 2013) (discussing the two standards).

Generally, these cases treat physical injury or death; many involve violence inflicted by police officers. *See, e.g.*, *id.* (fatal collision between public-transit bus and pedestrians); *Martin ex rel. C.M. v. Hermiston Sch. Dist. 8R*, 499 F. Supp. 3d 813, 823 (D. Or. 2020) (traumatic brain injury sustained while playing high school football); *Ochoa v. City of Mesa*, 26 F.4th 1050, 1053 (9th Cir. 2022) (fatal police shooting); *Rosales v. County of San Diego*, 511 F. Supp. 3d 1070, 1081–82 (S.D. Cal. 2021) (fatal police encounter involving chokehold and beating); *Valenzuela v. City of Anaheim*, 6 F.4th 1098, 1100–01 (9th Cir. 2021) (fatal police encounter involving "multiple choke holds and taser attacks"). The fact patterns in these cases tend to include acts of nightmarish cruelty and/or shocking disregard for human life. The Court cannot locate—and Plaintiff does not identify—any instances where courts have recognized this cause of action as applicable to an employment-discrimination complaint.

Therefore, to the extent that Plaintiff seeks leave to amend her complaint by adding Count Thirteen in the proposed SAC, Plaintiff's motion is DENIED.

**10.    Proposed Counts Fourteen and Sixteen: Wrongful Termination in Violation of Public Policy and Tortious Interference with Business Expectancy**

Defendant SPS argues that these state tort claims are futile, because Plaintiff failed to comply with a statutory requirement that she file a tort claim with Defendant SPS prior to filing a lawsuit. Dkt. No. 98 at 7 (citing RCW 4.96.020(4)).[7] Plaintiff asserts that she "served a tort claim on [Defendant SPS] in February 2025." Dkt. No. 99 at 8. Defendant SPS argues that Plaintiff's tort claim is inapplicable to *all* of Plaintiff's causes of action, however, because "[t]he claim she originally filed did not contain her newly crafted conspiracy theories or claims and was thus insufficient." Dkt. No. 98 at 7.

Plaintiff's tort claim satisfied her statutory obligation. "It is generally accepted that one of the purposes of the claim filing provisions is to allow government entities time to investigate, evaluate, and settle claims." *Medina v. Pub. Util. Dist. No. 1 of Benton County*, 147 Wn.2d 303, 310, 53 P.3d 993 (2002). The Court reads this language to indicate that so long as the content of the claim includes sufficient detail to provide notice and to apprise the government entity of the facts of the allegedly tortious conduct, then the plaintiff has satisfied the claim-filing requirement. Additional statutory language supports this interpretation: "The laws specifying the content for such claims shall be liberally construed so that substantial compliance therewith will be deemed satisfactory." RCW 4.96.010(1). Simply put, upon its receipt of Plaintiff's tort claim, Defendant SPS knew what Plaintiff was complaining about. That Plaintiff did not specifically

---

[7] Defendant also asserts that the tort-claim requirement applies to Plaintiff's claims for breach of contract, wage loss, and promissory estoppel. *See* Dkt. No. 98 at 7. None of these causes of action, however, "aris[es] out of *tortious* conduct." RCW 4.96.020(4) (emphasis added). The tort-claim requirement is therefore not applicable to these claims.

ORDER ON MOTION TO AMEND – 15

label it as wrongful termination or tortious interference does not indicate her noncompliance with the statute, nor did it inhibit Defendant SPS's ability to investigate the claim.

### a.    *Wrongful Termination*

"To state a cause of action [for wrongful termination in violation of public policy], the plaintiff must plead and prove that his or her termination was motivated by reasons that contravene an important mandate of public policy." *Becker v. Cmty. Health Sys., Inc.*, 184 Wn.2d 252, 258, 349 P.3d 746 (2015). There is "a strict clarity requirement in which the plaintiff must establish that the public policy is clearly legislatively or judicially recognized." *Id.* Plaintiff's pleading here is deficient in two ways.

First, as pleaded, Plaintiff does not allege that she was *terminated*. Rather, she alleges that an employment offer was rescinded. *See* Dkt. No. 96-3 at 59–60. This is not merely semantic, because Washington courts recognize the tort as "a narrow exception to the at-will doctrine. It is recognized as a means of encouraging employees to follow the law and preventing employers from using the at-will doctrine to subvert those efforts to promote public policy." *Becker*, 184 Wn.2d at 258. That is to say, the tort specifically regulates workplace conduct. Unlike anti-discrimination laws such as the Washington Law Against Discrimination ("WLAD") and Title VII, the wrongful-termination tort specifically contemplates a *contemporaneous* employer–employee relationship. *Compare id.*, *with Jin Zhu v. N. Cent. Educ. Serv. Dist.–ESD 171*, 189 Wn.2d 607, 623–24, 404 P.3d 504 (2017) (holding that an employer's discriminatory refusal to hire is "unambiguously" covered by the WLAD), *and Griggs v. Duke Power Co.*, 401 U.S. 424, 434 (1971) (finding that "the very purpose of title VII is to promote hiring on the basis of job qualifications, rather than on the basis of race or color"). Where, as here, the plaintiff is not actually an employee, the stated purpose of the law is inapplicable.

Second, Plaintiff does not specifically allege that the violation of a legislatively or

ORDER ON MOTION TO AMEND – 16

judicially recognized policy was the cause of her purported termination. Rather, Plaintiff alleges that MSD and Defendant SPS violated an EEOC settlement between herself and MSD "by communicating about Plaintiff post-resignation." *See* Dkt. No. 96-3 at 59–60. The settlement agreement might, in its subject matter, *promote* a public policy, but the contract itself is not a recognized vehicle from which to derive a wrongful-termination claim. "[T]he 'public policy' [must be] manifested in the constitution, statute, regulatory provision, or court decision." *Suarez v. State*, 3 Wn.3d 404, 430, 552 P.3d 786 (2024). Defendant SPS's alleged misconduct might represent a violation of public policy, but Plaintiff has not pleaded it here, let alone pleaded it "with clarity." *See Becker*, 184 Wn.2d at 258.

Therefore, to the extent that Plaintiff seeks leave to amend her complaint by adding Count Fourteen in the proposed SAC, Plaintiff's motion is DENIED.

### b.   *Tortious Interference with a Business Expectancy*

There are five elements of a claim for tortious interference with a business expectancy:

> (1) the existence of a valid contractual relationship or business expectancy; (2) that defendants had knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that defendants interfered for an improper purpose or used improper means; and (5) resultant damage.

*Leingang v. Pierce County Med. Bureau, Inc.*, 131 Wn.2d 133, 157, 930 P.2d 288 (1997).

Here, the business expectancy that Plaintiff identifies is "a confirmed offer of employment as substitute assistant principal at Garfield High School in Seattle Public Schools, with an assigned start date and salary." Dkt. No. 96-3 at 61. The problem here is that Plaintiff's counterparty in the alleged business expectancy is Defendant SPS. "A party cannot tortiously interfere with its own contract." *Reninger v. State Dep't of Corr.*, 134 Wn.2d 437, 448, 951 P.2d 782 (1998). To be sure, Plaintiff also alleges that she had "finalist-level applications with SPS

and *other districts*," (Dkt. No. 96-3 at 62 (emphasis added)), but these are not sufficiently specified in the pleading. Moreover, a "finalist-level application" is not an offer; unlike her allegations against Defendant SPS, which revolve around a concrete job offer that was subsequently rescinded, these relationships with "other districts" do not appear to represent actual opportunities for employment.

As to Plaintiff's pleading of this cause of action against Defendant WSRMP, the only action that Plaintiff assigns to Defendant WSRMP is its retention of Attorney Ragonesi. *See* Dkt. No. 96-3 at 61, 62. To the extent that Ragonesi, as Defendant WSRMP's agent, is alleged to have done anything, it is that she left a voicemail, the contents of which are not alleged, and performed an investigation on behalf of her client. *See id.* at 62.

Therefore, to the extent that Plaintiff seeks leave to amend her complaint by adding Count Sixteen in the proposed SAC, Plaintiff's motion is DENIED.

Additionally, Plaintiff purports to cite a case from this District, "*Shumway v. Wright*, No. 2:19-cv-00519-RSL (W.D. Wash. 2021)," as demonstrating that "[t]he U.S. District Court for the Western District of Washington has applied [the *Leingang*] framework in evaluating such claims." Dkt. No. 96-3 at 61. However, Case No. C19-519 in this District is *Christophe v. Nunn*, a case assigned to Judge Rothstein (and not to Judge Lasnik, as the initials "RSL" in the case number cited by Plaintiff would indicate), and the case considered an excessive-force claim brought against a police officer. 2021 WL 4132573, at *1 (W.D. Wash. Sept. 10, 2021).[8] The Court has cautioned Plaintiff about including misstatements of law in her court filings. *See* Dkt. No. 84 (Order on Motion to Quash) at 10. In a prior order, the Court warned Plaintiff that, "Should the court locate any other material misstatements of the law in [Plaintiff's] future

---

[8] The Court could not find any case involving a plaintiff named Shumway and a defendant named Wright on this District's docket. However, *Shumway v. Wright*, No. C19-58, was a civil action filed in the District of Utah.

filings, the court will not hesitate to issue [an] order to show cause as to why . . . sanctions should not be imposed." *Id.* at 10 n.4 (quoting *Promedev, LLC v. Wilson*, No. C22-1063, 2024 WL 1606667, at *3 (W.D. Wash. Apr. 12, 2024)). Plaintiff is therefore ORDERED to show cause as to why sanctions should not be imposed for her continued use of nonexistent legal authority.

### 11.    Proposed Claim Fifteen: Promissory Estoppel

"[T]he doctrine of promissory estoppel does not apply where a contract governs." *Spectrum Glass Co., Inc. v. Pub. Util. Dist. No. 1 of Snohomish County*, 129 Wn. App. 303, 317, 119 P.3d 854 (2005) (citing *Klinke v. Famous Fried Chicken, Inc.*, 94 Wn.2d 255, 261, 616 P.2d 644 (1980)). Here, Plaintiff alleges that Defendant SPS offered her a job for the period between November 27, 2023, and December 15, 2023. Dkt. No. 96-3 at 41. Plaintiff alleges that she accepted the offer for employment between those dates. *See id.* This offer and acceptance created an enforceable contract. *See, e.g.*, *Pierce v. Bill & Melinda Gates Found.*, 15 Wn. App. 2d 419, 435, 475 P.3d 1011 (2020) (finding acceptance of job offer created an enforceable contract). Indeed, Plaintiff even argues as much. *See* Dkt. No. 96-3 at 41. Because a contract governed Plaintiff's relationship with Defendant SPS in this regard, she cannot bring a claim for promissory estoppel.

Therefore, to the extent that Plaintiff seeks leave to amend her complaint by adding Count Fifteen in the proposed SAC, Plaintiff's motion is DENIED.

### 12.    Proposed Claim Seventeen: Retaliation Under Title VII

"To state a claim for retaliation, a plaintiff must allege she (1) engaged in a protected activity, (2) her employer subjected her to a materially adverse employment action, and (3) a causal link exists between the protected activity and the adverse action." *Cloud v. Brennan*, 436 F. Supp. 3d 1290, 1298 (N.D. Cal. 2020) (citing *Westendorf v. W. Coast Contractors of Nev., Inc.*, 712 F.3d 417, 421 (9th Cir. 2013)). Here, Plaintiff alleges that she made complaints of

discrimination, and that she was subsequently denied employment. *See* Dkt. No. 96-3 at 63. Plaintiff alleges that her EEOC complaint against MSD "culminat[ed]" on October 26, 2023, and that the denial of employment occurred less than two months later, on December 7, 2023. *See id.* Temporal proximity can support a prima facie case of retaliation-based discrimination. *See Kama v. Mayorkas*, 107 F.4th 1054, 1059 (9th Cir. 2024). Although the 42-day gap between the termination of Plaintiff's EEO action and the alleged adverse employment action may not, by itself, be sufficient to *prove* retaliation, it is sufficient, at this procedural posture, to plead it.

Therefore, to the extent that Plaintiff seeks leave to amend her complaint by adding Count Fourteen in the proposed SAC, Plaintiff's motion is GRANTED.

**B.    Bad Faith**

Defendant SPS argues that Plaintiff's motion for leave to amend has been submitted in bad faith. *See* Dkt. No. 98 at 7. Defendant SPS argues that, because the Court denied Plaintiff's motion to disqualify Defendant SPS's counsel (Dkt. No. 97), Plaintiff should have "update[ed] and refil[ed] her motion to reflect the rulings of the Court." Dkt. No. 98 at 7. But Defendant SPS misinterprets the implications of the Court's Order. In denying Plaintiff's motion to disqualify, the Court ruled that, with respect to Plaintiff's argument brought under Rule of Professional Conduct ("RPC") 1.9(a), Plaintiff lacked standing to make such a complaint. *See* Dkt. No. 97 at 5–6. And with respect to Plaintiff's argument brought under RPC 3.7(a), the Court found that Plaintiff's motion was premature. *See id.* at 7. In other words, the Court has made no definitive determinations of the merits of Plaintiff's allegations against Attorney Ragonesi. To be sure, they remain unproved and unsubstantiated, but the Court has not made a judicial determination on them either way. To the extent that such misconduct might form the basis for Plaintiff's proposed claims, they are subject only to the pleading requirements of Federal Rule of Procedure 8 and, where applicable, Rule 9(b).

## IV.   CONCLUSION

Accordingly, Plaintiff's motion for leave to file a second amended complaint is GRANTED IN PART and DENIED IN PART. It is hereby ORDERED:

(1)    Plaintiff is GRANTED leave to file a SAC that includes Proposed Count Eight and Proposed Count Seventeen. Plaintiff's SAC SHALL NOT include any of the claims that the Court has denied in this Order, nor shall it include any additional claims that were not specifically granted in this Order. Further, should Plaintiff wish to attach any exhibits to a SAC, they SHALL be included in the same docket entry (as Plaintiff did with her FAC). *See, e.g.*, Dkt. No. 21.

(2)    Should Plaintiff wish to amend her complaint to include claims denied by the Court in this Order and/or claims not pleaded in the proposed SAC, she SHALL file a motion for leave to amend her pleading, along with a proposed third amended complaint ("TAC"), **no later than April 30, 2026.**

(3)    **Within seven (7) days** of this Order, Plaintiff SHALL show cause as to why the Court should not issue sanctions against her for her continued citation of nonexistent legal authority, despite the Court's previous caution.

Dated this 31st day of March, 2026.

Tana Lin
United States District Judge