The Honorable Tana Lin

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| ROSA MARIA CABRERA THOMPSON,<br><br>Plaintiff(s),<br>v.<br><br>SEATTLE PUBLIC SCHOOLS, a public school district of the State of Washington, and WASHINGTON SCHOOLS RISK MANAGEMENT POOL, a public-school insurer of the State of Washington,<br><br>Defendant(s). | 2:25-cv-00468-TL<br><br>SECOND AMENDED COMPLAINT<br><br>Jury Trial: ☒ Yes ☐ No |

**NOTE ON AMENDED PLEADING:** This Second Amended Complaint is filed pursuant to this Court's Order on Motion to Amend, Dkt. No. 156 (Mar. 31, 2026). Consistent with that Order, this SAC carries forward Counts One through Six from the First Amended Complaint and adds only the two counts specifically authorized by the Court: Count Seven (First Amendment Retaliation) and Count Eight (Retaliation Under Title VII). WSRMP has been formally joined as a Defendant pursuant to the Court's Order granting Plaintiff's Joinder Motion (Dkt. No. 155).


Rosa Maria Cabrera Thompson, 30 Otis St, 531, San Francisco, CA 94103

The Honorable Tana Lin

## INTRODUCTION

Plaintiff alleges that the Washington Schools Risk Management Pool (WSRMP), through its retained counsel, Shannon Ragonesi, who simultaneously served as investigator for one district and legal counsel for another, participated in actions that resulted in improper reference-sharing and adverse employment consequences. These actions may constitute violations of federal and state law, breach of contractual settlement obligations, and contributed to a sustained pattern of denied employment opportunities. Plaintiff now brings this action not only against Seattle Public Schools ("SPS") but now seeks to add WSRMP for its central role in coordinating retaliatory and discriminatory actions. WSRMP, acting through conflicted counsel Shannon Ragonesi, knowingly interfered with Plaintiff's employment opportunities in violation of Title VII, constitutional rights, and the EEOC settlement and separation agreements. This case arises from unlawful employment practices, civil rights violations, and coordinated retaliation committed by SPS against Plaintiff Dr. Rosa Maria Cabrera Thompson, a highly qualified United States Citizen and Black and Hispanic woman of Afro-Caribbean descent and Latina national origin, with more than a decade of exemplary service as a public-school administrator in Washington State.

Plaintiff, Dr. Rosa Maria Cabrera Thompson, is a member of multiple protected classes under Title VII and the Washington Law Against Discrimination (WLAD). She is a Black and Hispanic woman of Afro-Caribbean descent, and her national origin is Latina. She identifies as a woman of color. Defendants' discriminatory and retaliatory actions were motivated, at least in part, by Plaintiff's race and national origin, as demonstrated by the disparate treatment she received compared to similarly or less qualified applicants, and by the increased scrutiny and hostility she endured following her protected EEOC activity.


Rosa Maria Cabrera Thompson, 30 Otis St, 531, San Francisco, CA 94103

The Honorable Tana Lin

Plaintiff applied for multiple administrative positions within SPS post-EEOC settlement with Mukilteo School District on October 26, 2023. Plaintiff interviewed successfully, and received highly favorable references. On November 20, 2023, SPS formally extended an employment offer for a substitute assistant principal and pending interim assistant principal position at Garfield High School, which Plaintiff accepted after completing all onboarding and compliance requirements. However, shortly after conducting a reference check with Mukilteo School District ("MSD")—her former employer and the subject of a recently settled EEOC retaliation complaint—SPS abruptly revoked the job I accepted on December 7, 2023, without explanation, cause, or procedural fairness.

On October 16, 2023 (which was fully executed by the EEOC on October 26, 2023), Plaintiff had entered into a binding EEOC settlement and separation agreement with MSD and the EEOC, which included non-retaliation, no investigations and neutral reference provisions beyond October 16, 2023. While still under EEOC protection and binding contract, on November 29, 2023, attorney Shannon Ragonesi, retained by MSD through the Washington Schools Risk Management Pool (WSRMP), placed a retaliatory and unauthorized voicemail per Plaintiff's binding contract, followed by a call from MSD's Executive Director of HR, Simone Neal, directly referencing Plaintiff. This occurred 43 days after post-EEOC settlement and Plaintiff's resignation from MSD. Ragonesi's role—spanning February 2, 2023, to February 28, 2024 with WSRMP/MSD and concurrent representation of SPS from September 1, 2023 through August 31, 2024—included investigating Plaintiff's EEOC-protected complaints, making Ms. Ragonesi fully aware of the ongoing federal protections in place at the time of her call and later revocation of employment from SPS.

The Honorable Tana Lin

This post-resignation contact, which violated the EEOC settlement, separation agreement and legal ethics rules (RPC 1.9, RPC 3.7), triggered a rapid chain of reference-related sabotage thereon. SPS revoked the accepted offer on December 7, 2023, in writing, just days after the Ragonesi–Neal call, despite having received three strong references from Plaintiff, including one from a recent former supervisor. Mukilteo School District through its conflicted attorney, didn't just ruin my job prospects—they broke their legal promises to do it by using WSRMP and Ragonesi to carry out their injustice.

SPS's hiring process was infected by racial bias, arbitrary gatekeeping, and reliance on conflicted third-party communications. Rather than independently verifying Plaintiff's qualifications and references, SPS deferred to unlawful and retaliatory input from an attorney actively representing both districts and already deeply entangled in Plaintiff's employment and concurrent EEOC matters. Such conduct violates:

- Title VII of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000e-2, 2000e-3);
- The Washington Law Against Discrimination ("WLAD," RCW 49.60.180, .210);
- The First and Fourteenth Amendments to the U.S. Constitution, actionable via 42 U.S.C. § 1983;
- The Washington Public Records Act (RCW 42.56);

Moreover, SPS failed to comply with its obligations under the Washington Public Records Act by withholding or delaying disclosure of essential hiring documents, such as reference check notes/documents, call logs, emails, and employment decision records. This obstructed Plaintiff's ability to obtain crucial exculpatory information and delayed access to justice in both administrative and judicial proceedings.

As a direct result of Defendants' unlawful conduct, Plaintiff has been denied over 140 employment opportunities across Washington, including 17 within SPS alone—many occurring after Plaintiff's name and candidacy were secretly and unlawfully discussed between SPS, MSD, and WSRMP. This pattern of obstruction, retaliation, and manipulation of public hiring systems reveals a coordinated scheme to blacklist Plaintiff from public education roles in violation of state and federal law.

This is not a routine employment dispute. It is a case of systemic abuse of power and a breakdown of constitutional safeguards, marked by retaliatory reference interference, misuse of litigation privilege, dual legal representation, and discriminatory exclusion from career opportunities. This isn't just a lawsuit. It's a reckoning—about what public institutions like WSRMP, MSD, and SPS do to whistleblowers and women of color when they think no one's looking.

Accordingly, Plaintiff brings this action for:

- Compensatory damages;
- Injunctive and declaratory relief;
- Back pay, front pay, and lost benefits;
- Punitive damages;
- Attorneys' fees and costs;
- And all other equitable and legal remedies as allowed by law.

## II. PARTIES

The Honorable Tana Lin

1. Plaintiff, Dr. Rosa M. Cabrera Thompson, is a Black and Hispanic female and a highly qualified educator and school administrator with over twelve years of school leadership experience. She belongs to multiple protected classes under federal and state law, including race, national origin, and prior engagement in protected activities such as filing charges with the U.S. Equal Employment Opportunity Commission (EEOC). Plaintiff applied for numerous leadership positions with Seattle Public Schools and consistently met or exceeded all listed qualifications.

Plaintiff is a resident of King County, Washington. Plaintiff sent defendant a Standard Tort Claim Form through certified mail pursuant to RCW 4.96.020. More than 60 days have passed since the receipt of that claim, satisfying all prerequisites for initiating this action under state tort law.

2. Defendant, Seattle Public Schools, is a public school district organized under the laws of the State of Washington, conducts its business and holds its meetings in King County, Washington.

3. Defendant Washington Schools Risk Management Pool (WSRMP) is a risk management pool providing legal and claims services to member school districts, including Mukilteo School District, and at all relevant times retained and directed attorney Shannon Ragonesi in connection with matters involving Plaintiff. WSRMP has been formally joined as a Defendant in this action pursuant to the Court's Order on Plaintiff's Joinder Motion (Dkt. No. 155).

## III. JURISDICTION AND VENUE

1. This Court has jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and 42 U.S.C. § 1983 (civil action for deprivation of constitutional rights).


Rosa Maria Cabrera Thompson, 30 Otis St, 531, San Francisco, CA 94103

The Honorable Tana Lin

2. Plaintiff also invokes supplemental jurisdiction under 28 U.S.C. § 1367(a) for claims arising under Washington state law, including WLAD (RCW 49.60.180).

3. Venue is proper under 28 U.S.C. § 1391(b), as the events giving rise to this claim occurred within this district.

4. Venue is proper under 28 U.S.C. § 1391 because the events giving rise to this action occurred in the Western District of Washington.

## IV. FACTUAL ALLEGATIONS

1. Plaintiff is a Black and Hispanic woman of Afro-Caribbean descent and Latina national origin. She has over 12 years of school leadership experience and had settled a prior EEOC retaliation claim against Mukilteo School District before applying to SPS. Her race, ethnicity, and national origin were known or knowable to Defendant based on her name, public background, and hiring documents.

2. On October 19, 2023, at 1:40pm and again on October 23, 2023, at 2:40pm, Plaintiff applied for Seattle Public Schools Job Bulletin: Job Number 21921. As part of the application process, the following materials were required: Resume – Detailing my work and leadership experiences, accomplishments, and results. Cover Letter – Addressing the following prompts: (a) Explanation of why I am an excellent candidate to serve as a replacement administrator for Seattle Public Schools, including relevant experience and special skills that I bring as a leader. (b) Description of my experience influencing adults to achieve significant results for students, including coaching, mentoring, and providing feedback. (c)Explanation of my experience working with diverse student populations, including race, ethnicity, and socioeconomic diversity. Additionally, Three (3) References, including my most recent supervisor. (a) References were required to

submit an electronic reference form. (b) It was the applicant's responsibility to ensure references completed and returned the required documentation. (c)Seattle Public Schools stated that eligible applicants would not be considered until all three references were received. (d) Former or current SPS employees were required to include their last or current SPS supervisor as one reference. A Copy of Valid Washington State Principal Certification – Required for application consideration. Interview Invitation – Applicants who passed the initial screening process would be invited to participate in an interview.

3. Additionally, Plaintiff also applied for Job Number 23237, which required: Resume, at least three current references with accurate and updated contact information. Letter of Interest addressing: (a) Why I should be considered for the Assistant Principal position. (b) My instructional and leadership strengths and how they align with the school community. (c) My vision for the school. I met all application requirements for both job postings, passed the initial screening process, and was extended two interviews—one via phone and one in person.

4. In Plaintiff's claim against Seattle Public Schools, Plaintiff asserts that on October 23, 2023, a positive electronic reference was submitted on plaintiff's behalf by Cory West, a teacher at Kamiak High School in the Mukilteo School District. This reference consisted of sixteen (16) questions assessing my qualifications as a school leader. Mr. West provided highly favorable responses, strongly agreeing that I demonstrated equity-focused leadership, rigorous instructional support, effective conflict resolution, and the ability to foster a safe and positive learning environment. Additionally, he stated that he would hire me for a leadership role, could not identify any areas for growth, and highly recommended me for the position with Seattle Public Schools. Despite this unequivocally strong endorsement, my application was not given fair consideration, reinforcing my


Rosa Maria Cabrera Thompson, 30 Otis St, 531, San Francisco, CA 94103

The Honorable Tana Lin

claim that Seattle Public Schools engaged in a biased, discriminatory, and unfair hiring process that failed to assess my qualifications equitably. (see exhibit 25: Completed SPS electronic references).

5. In Plaintiff's claim against Seattle Public Schools, Plaintiff asserts that on October 23, 2023, a positive electronic reference was submitted on my behalf by Dr. Toron Woolridge, Executive Director of Austin Independent School District. This reference consisted of sixteen (16) questions evaluating my qualifications as a school leader. Dr. Woolridge provided an overwhelmingly favorable assessment, strongly agreeing that I demonstrated culturally responsive leadership, equity-driven resource allocation, effective team building, conflict resolution, and the ability to foster a safe and positive learning environment. He also confirmed that he would hire me for a leadership role, identified no areas for growth, and highly recommended me for the position with Seattle Public Schools. Despite this unequivocally strong endorsement, my application was not given fair consideration, further supporting my claim that Seattle Public Schools engaged in a biased, discriminatory, and unjust hiring process that failed to evaluate my qualifications equitably. (see exhibit 25: Completed SPS electronic references).

6. Plaintiff's claim against Seattle Public Schools, Plaintiff asserts that on October 24, 2023, a positive electronic reference was submitted on my behalf by Sharrethia Anderson, my Administrative Assistant at Kamiak High School in the Mukilteo School District. This reference consisted of sixteen (16) questions evaluating my qualifications as a school leader. Ms. Anderson provided an overwhelmingly favorable assessment, strongly agreeing that I demonstrated culturally responsive leadership, a commitment to equity, a safe and positive learning environment, and the ability to build strong relationships with students, staff, and families. She specifically highlighted my ability to support student


Rosa Maria Cabrera Thompson, 30 Otis St, 531, San Francisco, CA 94103

The Honorable Tana Lin

growth, foster professional development among staff, and create a safe space for collaboration and learning. Additionally, she stated that she would hire me for a leadership role, highly recommended me for Seattle Public Schools, and identified only time management as an area for growth—attributed to my deep commitment to my work and the students I serve. Despite this unequivocally strong endorsement, my application was not given fair consideration, further supporting my claim that Seattle Public Schools engaged in a biased, discriminatory, and unjust hiring process that failed to evaluate my qualifications equitably. (see exhibit 25: Completed SPS electronic references).

7. In Plaintiff's claim against Seattle Public Schools, Plaintiff asserts that on October 24, 2023, a positive electronic reference was submitted on my behalf by Dr. Brian Schultz, Assistant Superintendent of Shoreline Public Schools, and a former supervisor. This reference consisted of sixteen (16) questions evaluating my qualifications as a school leader. Dr. Schultz provided an overwhelmingly favorable assessment, strongly agreeing that Plaintiff demonstrated culturally responsive leadership, equity-driven decision-making, rigorous instructional support, and the ability to foster a safe and positive learning environment. Dr. Schultz specifically highlighted my exceptional leadership abilities, noting that I was tasked with creating an entirely new school from the ground up within three months, including hiring staff, establishing systems, and developing new routines for students, staff, and parents. He praised my ability to execute this challenging assignment successfully and efficiently, describing me as organized, driven, intelligent, and deeply committed to equitable practices. He further stated that he would hire me for a leadership role and highly recommended me for the position with Seattle Public Schools. Despite this unequivocally strong endorsement from a former supervisor, my application was not given fair consideration. This further supports my claim that Seattle Public



Rosa Maria Cabrera Thompson, 30 Otis St, 531, San Francisco, CA 94103

Schools engaged in a biased, discriminatory, and unjust hiring process that failed to assess my qualifications equitably. (see exhibit 25: Completed SPS electronic references).

8. November 9, 2023, at 12:44 PM – Ms. Demetrice Lewis, Seattle Public Schools Human Resources Manager, sent an email to Dr. Tarance Hart, Principal at Garfield High School, with an attachment containing substitute applications including the plaintiff's application.

9. On October 26, 2023, Plaintiff and Mukilteo School District (MSD) executed a binding EEOC Settlement Agreement that included enforceable non-retaliation and neutral reference provisions. This agreement was intended to shield Plaintiff from any adverse post-employment action or commentary by MSD and its agents.

10. November 13, 2023, at 3:31 PM – Plaintiff received an email from Dr. Tarance Hart, Principal at Garfield High School, inviting Plaintiff to interview for an immediate interim assistant principal opening. Dr. Hart stated that Plaintiff's professional background identified them as a strong candidate for the role. He further explained that the position was interim for the remainder of the academic year, with the potential to apply for the permanent position based on performance and fit. Dr. Hart requested a swift response to expedite the selection process and provided his email for further communication. (see exhibit 7: Email communications between Dr. Hart and Plaintiff (Dr. Cabrera Thompson).

11. November 13, 2023, at 3:53 PM – Plaintiff promptly responded to Dr. Hart, accepting the opportunity to be considered for the role and inquiring about the next steps. (see exhibit 7: Email communications between Dr. Hart and Plaintiff (Dr. Cabrera Thompson).

12. November 14, 2023, at 4:59 PM – Dr. Hart emailed Plaintiff, asking if they were available for a quick phone call or Microsoft Teams meeting on November 15, 2023. (see



Rosa Maria Cabrera Thompson, 30 Otis St, 531, San Francisco, CA 94103

exhibit 7: Email communications between Dr. Hart and Plaintiff (Dr. Cabrera Thompson).

13. November 14, 2023, at 5:20 PM – Plaintiff responded to Dr. Hart's email, confirming a preference for a phone call and requesting a specific time. (see exhibit 7: Email communications between Dr. Hart and Plaintiff (Dr. Cabrera Thompson).

14. November 15, 2023, at 10:59 AM – Dr. Hart emailed Plaintiff, requesting availability for a phone interview at 12:00 PM (same day, approximately an hour later) and asked for a contact number. (see exhibit 7: Email communications between Dr. Hart and Plaintiff (Dr. Cabrera Thompson).

15. November 15, 2023, at 11:08 AM – Plaintiff confirmed availability for the 12:00 PM phone interview and provided a personal cell phone number. During the interview, Dr. Hart expressed strong interest in Plaintiff and invited them for an in-person interview with the Garfield High School administrative team, scheduled for November 16, 2023.

16. November 16, 2023 – Plaintiff attended an in-person interview with Dr. Hart and his administrative team (two assistant principals) at Garfield High School. During the interview: Plaintiff shared her personal and professional experiences relevant to the school. The team inquired about Plaintiff's availability for evening game supervision given their bar exam study schedule. Plaintiff confirmed flexibility on weekdays while prioritizing weekends for studying. The team asked what departments Plaintiff preferred to support as a substitute assistant principal. Plaintiff expressed experience in overseeing the English, Special Services, and Social Studies departments and was open to supporting any needed department. Plaintiff shared experience as an Assessment Director and willingness to take on the Advanced Placement (AP) Coordinator role, which Dr. Hart showed strong interest in, given approaching AP deadlines. Dr. Hart inquired about


Rosa Maria Cabrera Thompson, 30 Otis St, 531, San Francisco, CA 94103

Plaintiff's experience with teacher evaluation systems. Plaintiff confirmed training and extensive experience with both CEL 5D and Danielson frameworks. Dr. Hart stated that there were teachers on comprehensive and focused evaluation tracks and that an immediate start was necessary to meet approaching deadlines. Plaintiff confirmed readiness to begin work immediately upon hiring. At the conclusion of the interview, Dr. Hart asked Plaintiff whether she preferred to start as an interim assistant principal (which would take longer to process) or begin as a substitute assistant principal while simultaneously being considered for the interim role. Plaintiff opted to start as a substitute assistant principal while awaiting clearance for the interim position in January 2024.

17. November 16, 2023, at 12:07 PM – Ms. Lewis emailed Dr. Hart, stating, "As a follow-up to the applications you are reviewing, please note that I just heard back from LER and [name redacted] is not cleared to sub or be placed in an interim position."

18. November 16, 2023, at 1:10 PM – Dr. Hart responded to Ms. Lewis, asking, "What about Rosa Cabrera? Is she approved to move forward as a sub? Also, can we have the candidate placed as a sub, or do we need to make them the interim?" (see exhibit 23: Internal email to/from HR to Dr. Hart and Dr. Mercer).

19. November 16, 2023, at 3:48 PM – Dr. Hart emailed Mr. James Mercer, inquiring about scheduling a 15-minute meeting on November 17, 2023, to discuss the open assistant principal position.

20. November 16, 2023, at 11:46 PM – Ms. Lewis emailed Dr. Hart, stating that if he was considering an interim hire, he needed to follow the same process used for Ms. Hopkins. If hiring a short-term substitute, Dr. Hart would need to conduct an interview and check references, including one from the most recent supervisor. She clarified that long-term



Rosa Maria Cabrera Thompson, 30 Otis St, 531, San Francisco, CA 94103

substitutes were not permitted in the role.

21. November 17, 2023, at 4:47 AM – Mr. Mercer emailed Dr. Hart, confirming availability for a call at 11:00 AM to discuss the open AP position. (see exhibit 7: Email communications between Dr. Hart and Plaintiff (Dr. Cabrera Thompson).

22. November 17, 2023, at 1:39 PM – Plaintiff emailed Dr. Hart thanking him for the interview and confirming interest in the position. Plaintiff also offered to begin the substitute assistant principal role as soon as November 20, 2023, while eligibility for the interim position was being processed. (see exhibit 7: Email communications between Dr. Hart and Plaintiff (Dr. Cabrera Thompson).

23. On November 20, 2023, Seattle Public Schools (SPS) extended a formal employment offer to Plaintiff for a substitute assistant principal position at Garfield High School. Plaintiff accepted the offer that same day and immediately began onboarding procedures.

24. November 20, 2023, at 11:45 AM – Dr. Hart emailed Plaintiff, offering the role of substitute assistant principal at Garfield High School for the period of November 27, 2023 – December 15, 2023 (approximately 15 instructional days). He stated that this period would allow them to work together while navigating the next steps for Plaintiff to apply for the interim assistant principal vacancy. (see exhibit 7: Email communications between Dr. Hart and Plaintiff (Dr. Cabrera Thompson).

25. November 20, 2023, at 11:57 AM – Plaintiff responded to Dr. Hart's email, accepting the offer and confirming availability to begin on November 27, 2023, at 7:45 AM, with the agreement to work through December 15, 2023, as a substitute assistant principal. (see exhibit 7: Email communications between Dr. Hart and Plaintiff (Dr. Cabrera Thompson).

26. November 21, 2023, at 2:28 PM – Dr. Hart emailed Mr. James Mercer, inquiring about

The Honorable Tana Lin

bringing Plaintiff on as a substitute assistant principal through December 15, 2023.

27. November 21, 2023, at 4:59 PM – Mr. Mercer emailed Ms. Lewis, asking whether this hiring process could be completed, adding Demetrice Lewis to the conversation.

28. November 22, 2023, at 2:07 PM – Dr. Hart emailed Plaintiff, informing them that additional paperwork and a second application submission were required, along with fingerprinting, before a start date could be determined. (see exhibit 7: Email communications between Dr. Hart and Plaintiff (Dr. Cabrera Thompson).

29. November 22, 2023, at 5:19 PM – Ms. Lewis emailed Mr. Mercer, confirming that the hiring process could proceed but recommended a reference check from a recent supervisor. She also added Jameeka Hill to assist with the hourly hiring process.

30. November 22, 2023, at 8:30 PM – Ms. Hill emailed Dr. Hart, confirming, "You can certainly hire Ms. Cabrera," and provided the hourly hiring process and checklist. (see exhibit 23: Internal email to/from HR to Dr. Hart and Dr. Mercer).

31. On November 22, 2023, SPS Human Resources personnel requested additional steps from Plaintiff post-offer, raising concerns about undue delay and possible third-party interference in her hiring process.

32. On November 29, 2023, attorney Shannon Ragonesi—who had been retained by the Washington Schools Risk Management Pool (WSRMP) to represent MSD—left a 40-second voicemail for Simone Neal, Executive Director of Human Resources at MSD. The voicemail directly referenced Plaintiff and occurred 43 days after her resignation from MSD, and while she was actively protected by the EEOC settlement.

33. November 29, 2023, at 7:39 PM – Dr. Hart emailed Plaintiff, stating that a reference check from the most recent supervisor (Stephen Shurtleff) was required and requested an alternative method to contact him. (see exhibit 7: Email communications between Dr.

The Honorable Tana Lin

Hart and Plaintiff (Dr. Cabrera Thompson).

34. On November 30, 2023, further evidence of improper coordination emerged when call activity and voicemail records showed continued contact between HR personnel at MSD and SPS, particularly involving HR Director Stephen Shurtleff and Simone Neal.

35. On November 30, 2023, at 1:40 PM, after not hearing back, Plaintiff proactively emailed Dr. Hart Mr. Shurtleff's cell phone number and best times to call—without being prompted. (see exhibit 7: Email communications between Dr. Hart and Plaintiff (Dr. Cabrera Thompson).

36. On December 1, 2023, SPS's Dr. Tarance Hart, MSD's Simone Neal, and other personnel engaged in multiple calls, voicemails, and email communications, reinforcing the appearance of deliberate reference sabotage. These interactions occurred despite Plaintiff having already submitted three positive references, including from a former supervisor.

37. December 1, 2023, at 10:33 AM – Dr. Hart called Mr. Shurtleff on his work phone and left a voicemail. (see exhibit 19: KHS Principal Stephen Shurtleff Call logs 11/29/23 thru 12/7/23 (Plaintiff's direct supervisor at Mukilteo School District).

38. December 1, 2023-Mr. Shurtleff notes on his to do list a call received from Dr. Hart-SPS. (Exhibit 21: KHS Principal Stephen Shurtleff To Do List: December 1, 2023).

39. December 1, 2023-Mr. Shurtleff contacts Ms. Neal. (see exhibit 4: Simone Neal, HR Executive Director for Mukilteo School District Call logs 11/29/23 thru 12/7/23).

40. December 1, 2023, at 11:37 AM – Ms. Simone Neal, Executive Director of Talent & HR at Mukilteo School District, emailed Dr. Hart, offering to assist with the reference check. (see exhibit 22: Email communications between Dr. Hart and Ms. Neal).

41. December 1, 2023, at 3:52 PM – Ms. Neal successfully contacted Dr. Hart by phone. The call lasted 2 minutes and 19 seconds. (see exhibit 4: Simone Neal, HR Executive Director


Rosa Maria Cabrera Thompson, 30 Otis St, 531, San Francisco, CA 94103

for Mukilteo School District Call logs 11/29/23 thru 12/7/23).

42. December 1, 2023, at 3:56 PM, Simone Neal, HR

Executive Director for MSD calls attorney Shannon Ragonesi immediately after her call ended with Dr. Hart. (see exhibit 4: Simone Neal, HR Executive Director

for Mukilteo School District Call logs 11/29/23 thru 12/7/23).

43. December 4, 2023, at 7:55 PM – Plaintiff emailed Dr. Hart, inquiring about fingerprint completion status and next steps. (see exhibit 7: Email communications between Dr. Hart and Plaintiff (Dr. Cabrera Thompson).

44. On December 7, 2023, SPS revoked Plaintiff's accepted job offer without explanation or lawful justification. This rescission followed closely on the heels of the Ragonesi-Neal communication and was executed in violation of Plaintiff's due process rights and contractual expectations.

45. December 7, 2023, at 9:04 PM – Dr. Hart emailed Plaintiff stating:

"After reaching out for a reference check with your previous district, I was able to speak to someone. We have decided not to move forward with your application for this role. This decision was made after careful consideration. We have decided to go another route with filling the role." No additional effort was made to verify Plaintiff's performance, despite multiple available references. (see exhibit 7: Email communications between Dr. Hart and Plaintiff (Dr. Cabrera Thompson).

46. December 7, 2023, at 9:46 PM – Plaintiff emailed Dr. Hart: Thanked him for the consideration. Asked for confirmation of whom he spoke to and offered documentation proving stellar evaluations from Mukilteo School District. Plaintiff stated her willingness to provide further documentation, including proof that she had never been reprimanded or written up. (see exhibit 7: Email communications between Dr. Hart and Plaintiff (Dr.

Cabrera Thompson). (see exhibit 1: Plaintiff MSD/Shoreline Evaluations 2019-2023)

47. Dr. Hart never responded to this email on December 7th, 2023, or the documentation. No additional effort was made to verify Plaintiff's performance, despite multiple available references.

48. Plaintiff's previous district was the Mukilteo School District, from which she resigned following mediation, and a settlement related to an EEOC claim for retaliation and discrimination.

49. Seattle Public Schools Board Policy 5000 states: The Superintendent or their designee has final authority for candidate selection. Staff selection must be based on which candidate is the most qualified, using the district's standard screening, interview, and reference check processes in compliance with legal requirements. Successful Applicant Requirements: Applicants who receive a job offer must pass a criminal background check and be truthful regarding prior charges (as required by RCW 28A.400.322). Applicants must submit a Washington State Sexual Misconduct Disclosure Release Form, which the district will review. If concerning information is returned, a job offer may be rescinded.

50. Plaintiff submitted and cleared both the criminal background check and Washington State Sexual Misconduct Disclosure process.

51. January 5, 2024, at 4:12 PM – Plaintiff submitted a records request to Seattle Public Schools.

52. On January 19, 2024, Plaintiff filed new EEOC charges against both SPS and MSD alleging retaliation in connection with the rescinded job offer and related acts of misconduct based on her protected status and protected class.

53. January 19, 2024 – Plaintiff filed a formal complaint against Seattle Public Schools with the U.S. Department of Education, Office for Civil Rights (OCR), citing employment

discrimination and retaliation based on race.

54. January 19, 2024 – Plaintiff received EEOC notification for a claim filed against Seattle Public Schools for discrimination: The EEOC stated:

"This is notice that a charge of employment discrimination, Dr. Rosa M. Cabrera Thompson v. SEATTLE PUBLIC SCHOOLS, was initially received by the Seattle Field Office on 01/19/2024 and will be dual-filed with the Washington State Human Rights Commission."

55. January 23, 2024, at 8:44am, Plaintiff received notification from Seattle Public Schools that they were reviewing my application for the Principal Pool for the 2024-2025 school year. The email further states, "These interviews will be scheduled for Saturday, January 27th and Saturday, February 3rd."

56. Plaintiff interviewed over the phone for the principal pool on February 3rd, 2024, at 11:30am with regional executive director Mr. James Mercer and team.

57. February 6, 2024, at 5:22 PM-Plaintiff applies for Assistant Principal Pool with Seattle Public Schools

58. February 6, 2024, at 2:21 PM – Seattle Public Schools notified Plaintiff: While qualified, she was not selected for consideration in the Principal Pool for the 2024-2025 school year.

59. February 26, 2024 – Seattle Public Schools received notice from the U.S. Department of Education, OCR, confirming that on January 19, 2024, a formal complaint was filed against the district for employment discrimination and retaliation.

60. February 29, 2024 – Plaintiff received EEOC notice stating: "We have opened EEOC Inquiry 551-2024-03024 based on your submission."


Rosa Maria Cabrera Thompson, 30 Otis St, 531, San Francisco, CA 94103

The Honorable Tana Lin

61. On February 29, 2024, the EEOC issued formal notices of charge to both SPS and MSD regarding Plaintiff's 2024 filing, confirming that both entities were on official notice of Plaintiff's continued protected activity.

62. Following Plaintiff's EEOC claim (filed February 29, 2024), Dr. Hart submitted statements to Seattle Public Schools, falsely asserting: Plaintiff did not list her most recent supervisor, Principal Stephen Shurtleff (Kamiak High School), in her application. Plaintiff did not provide Mr. Shurtleff's contact information until prompted. Plaintiff "pushed for a quick start date" that would have prevented reference verification. These statements made by Dr. Hart were demonstrably false: Plaintiff's applications submitted on 10/19/2023 and again on 11/23/2023 both included Mr. Stephen Shurtleff as a reference, his email, and direct school landline as that was a required necessary step for successful submission and screening in order to be considered for interviews. He further states that on December 1, 2023, at 3:52 PM – He spoke to Ms. Simone Neal, Executive Director of HR at Mukilteo School District, and that she only confirmed dates of employment, and that Plaintiff was no longer employed. No substantive performance information was provided.

63. March 12, 2024, at 1:28 AM – Seattle Public Schools notified Plaintiff that records requested on January 5, 2024, were delayed until April 3, 2024.

64. March 21, 2024, at 8:19am, Plaintiff received an email from Seattle Public Schools notifying Plaintiff that she had been accepted into the 2024-25 School Leader Assistant Principal Pool. Was not selected for an interview. Additionally, the only positions visible to the plaintiff were principal positions which she applied for since she had 6 previous years of public school principal experience and 6 previous years of public-school

assistant principal experience, totaling 12 years of school leader experience combined.

65. March 21, 2024, at 9:03pm, Plaintiff applies for Principal position at Franklin High School. Was not selected for an interview.

66. March 21, 2024, at 9:13pm, Plaintiff applies for Principal position at John Hay Elementary School. Was not selected for an interview.

67. March 29, 2024, at 8:09pm, Plaintiff applies for Assistant Principal Pool at Seattle Public Schools. Was not selected for an interview.

68. March 29, 2024, at 8:17 pm, Plaintiff applies for Principal position at Washington Middle School. Was not selected for an interview.

69. March 29, 2024, at 8:27 pm, Plaintiff applies for Principal position at Olympic Hills Elementary School. Was not selected for an interview.

70. March 29, 2024, at 8:30 pm, Plaintiff applies for Principal position at Wing Luke Elementary School. Was not selected for an interview.

71. March 29, 2024, at 8:33 pm, Plaintiff applies for Principal position at John Rogers Elementary School. Was not selected for an interview.

72. March 29, 2024, at 8:37 pm, Plaintiff applies for Principal position at Hamilton International Middle School. Was not selected for an interview.

73. April 5, 2024, at 9:03 PM – Seattle Public Schools sent Installment 1 of 2 of records but delayed the remaining until September 5, 2024.

74. April 17, 2024, at 10:49am, Seattle Public Schools notifies Plaintiff that she is ineligible to be considered or re-apply for the Principal Pool for the 2024-2025 school year and recommends I apply for the following 2025-2026 school year pool.

75. May 01, 2024, at 3:48PM, Plaintiff applies for Principal position at Fairmount Park Elementary School. Was not selected for an interview.

The Honorable Tana Lin

76. May 01, 2024, at 3:52PM, Plaintiff applies for Principal position at Rainier Beach High School. Was not selected for an interview.

77. May 01, 2024, at 3:54PM, Plaintiff applies for Principal position at Kimball Elementary School. Was not selected for an interview.

78. May 01, 2024, at 3:56PM, Plaintiff applies for Principal position at McGilvra Elementary School. Was not selected for an interview.

79. September 5, 2024 – Seattle Public Schools did not release the second installment as promised.

80. November 6, 2024 – Seattle Public Schools again failed to release the remaining records.

81. December 10, 2024 – EEOC issued a Determination of Charge and Right to Sue Letter to Plaintiff.

82. December 28, 2024 – Plaintiff received EEOC's right-to-sue notice in the mail and filed a Section 83 request.

83. February 2, 2025, at 5:08 PM – Plaintiff, although not required, submitted a tort claim to Seattle Public Schools via email, including supporting documents in an effort to settle the claims.

84. February 4, 2025, at 9:56 AM – Seattle Public Schools responded, stating: "They had retained attorney Shannon Ragonesi at Keating, Bucklin & McCormack. All future communications were to be directed to Ms. Ragonesi."

85. February 8, 2025 – Plaintiff mailed the tort claim to Ms. Ragonesi via priority and certified mail (Tracking: 7018-3090-0000-4358-3432). Received and signed by Agent: Jeffrey DiMitre at Keating, Bucklin & McCormack. (see Exhibit 5: USPS Certified Mail Receipt to SPS (defendant attorney): Tort Settlement Form/Claim).

86. Seattle Public Schools' response was due by March 2, 2025.

The Honorable Tana Lin

87. March 4, 2025, at 6:31 PM – Seattle Public Schools records request office stated: "As there are no additional responsive items to provide from our searching, we are closing this request as completed." They refused to provide additional records as requested.

88. March 8, 2025, at 6:11 PM – Plaintiff appealed Seattle Public Schools' records request response and issued a statement to preserve all records for future litigation.

89. On April 25, 2025, Defendant Seattle Public Schools filed an Answer in this matter (Dkt. 27), in which it affirmatively alleged:

- "11. The damages and/or injuries sustained, if any, may have been proximately caused by the negligent actions and/or omissions of third persons over whom this Defendant had no control."
- "12. Defendant alleges there may be other entities at fault for the damages alleged in Plaintiff's complaint."

Plaintiff incorporates these judicial admissions by reference. These allegations support Plaintiff's contention that Seattle Public Schools acted in coordination with third parties—specifically WSRMP and its retained counsel—in orchestrating retaliatory reference-sharing and the unlawful revocation of Plaintiff's confirmed employment. To the extent Defendant claims others share responsibility, Plaintiff seeks leave to add those parties and pursue joint liability for the damages sustained.

90. On June 24, 2025, during a meet-and-confer, Shannon Ragonesi admitted that she had in fact represented both SPS and MSD simultaneously during the key events at issue and confirmed that she left the November 29, 2023, voicemail referencing Plaintiff—despite having denied knowledge of Plaintiff's resignation and protected status in prior declarations.

The Honorable Tana Lin

91. On June 26, 2025, Plaintiff re-filed her Motion to Disqualify Attorney Ragonesi based on the conflict of interest and ethical violations uncovered during the June 24, 2025, meet-and-confer, and based on the dual representation confirmed by Mukilteo School District's filings.

92. Finally, on July 17, 2025, SPS publicly released Attorney Ragonesi's contract showing that she was retained by the district (SPS) from September 1, 2023, through August 31, 2024**,** thus confirming that her dual representation overlapped with the key acts of retaliation, reference interference, and concealment that form the basis of this lawsuit.

93. Beginning in early 2023, Plaintiff was engaged in protected activity through the filing of multiple EEOC complaints against her former employer, Mukilteo School District (MSD). As part of the subsequent resolution, Plaintiff entered into two binding agreements: an EEOC settlement agreement, and a separation agreement. These agreements prohibited MSD and its agents—including its insurer, the Washington Schools Risk Management Pool (WSRMP)—from conducting any further investigations into Plaintiff's conduct beyond October 16, 2023, and required neutral references consisting only of her dates of employment and salary.

94. Despite these agreements, attorney Shannon Ragonesi, who was acting on behalf of WSRMP as an investigator from February 2, 2023, through February 28, 2024, continued to engage in conduct targeting Plaintiff after the settlement date. Critically, Ragonesi was also under contract with Seattle Public Schools (SPS) from September 1, 2023, to August 31, 2024, serving as legal counsel during the exact time period when Plaintiff was being considered for and had accepted an offer of employment at Garfield High School in SPS.

95. On November 29, 2023—just weeks after Plaintiff's EEOC settlement and offer acceptance at SPS—Ragonesi left a 40-second voicemail for SPS Executive Director of Human Resources

The Honorable Tana Lin

Simone Neal. That same day, Neal returned Ragonesi's call, initiating a series of retaliatory communications with third parties, including Plaintiff's former MSD supervisor Stephen Shurtleff and Garfield High School Principal Dr. Tarance Hart. In the days that followed, Shurtleff and Neal exchanged voicemails and emails concerning Plaintiff's application, and Neal proceeded to contact Dr. Hart to orchestrate a prohibited reference check. These actions, traceable to Ragonesi's contact, culminated in the rescission of Plaintiff's job offer by SPS on December 7, 2023.

96. Ragonesi later admitted during a meet-and-confer that her voicemail to Neal was about Plaintiff, and that she was still acting under WSRMP's direction in an investigatory capacity. However, she also claimed she was unaware of Plaintiff's resignation and the EEOC settlement, blaming the miscommunication on the alleged involvement of another investigator, Krista Slosburg. This explanation is inconsistent with documented records and evidence of a lack of candor regarding Ragonesi's ongoing coordination with both SPS and WSRMP.

97. Ragonesi's declaration to the Court further compounds the conflict. There, she claims to have had no knowledge of Plaintiff's EEOC charges, settlement, or employment offer with SPS. Yet, her simultaneous contractual engagement with both SPS and WSRMP during the relevant time periods and her active participation in communications that led to the revocation of Plaintiff's employment strongly suggest otherwise.

98. The overlapping representation created an irreconcilable conflict of interest and enabled a coordinated campaign of retaliation. WSRMP, acting through Ragonesi, leveraged her position at SPS to interfere with Plaintiff's job prospects, in violation of federal law, the EEOC settlement, and the separation agreement. This dual representation and the misuse of privileged investigatory


Rosa Maria Cabrera Thompson, 30 Otis St, 531, San Francisco, CA 94103

information to retaliate against Plaintiff forms a key basis for the claims of tortious interference, retaliation, conspiracy, and breach of contract pled herein.

99. The EEOC settlement and the separation agreement prohibit MSD and its agents from retaliating or continuing investigations into Plaintiff's conduct beyond October 16, 2023. Nonetheless, Ragonesi's 11/29/23 voicemail to SPS, made after the settlement was finalized, constitutes a clear continuation of prohibited investigative activity in violation of both agreements.

100. At all relevant times, Shannon Ragonesi served in dual and irreconcilable roles: as WSRMP's investigator for MSD and as outside counsel for SPS. Her contractual engagements overlapped during critical months when Plaintiff's employment prospects were interfered with. This duality enabled coordinated retaliation and obstructed Plaintiff's right to future employment in Washington public schools.

101. Since December 2023, Plaintiff has submitted over 140 applications to school districts across Washington State. Despite being a highly qualified candidate with extensive leadership experience, she has received no offers. Multiple finalists' roles ended abruptly following reference checks or unexplained disqualifications—further demonstrating a pattern of retaliatory interference that can be traced to WSRMP and Ragonesi.

102. WSRMP retainer (2/2/2023–2/28/2024).

103. SPS contract with Ragonesi (9/1/2023–8/31/2024).

104. MSD EEOC charge filed (April 2023).


Rosa Maria Cabrera Thompson, 30 Otis St, 531, San Francisco, CA 94103

The Honorable Tana Lin

105. MSD EEOC settlement (10/26/2023).

106. Garfield HS job offer (11/20/2023).

107. 11/29/2023 forty (40) second voicemail from Ragonesi to Neal.

108. 12/1/2023–12/7/2023 calls and voicemails between Neal, Ragonesi, Shurtleff, and Dr. Hart.

109. 12/1/2023 call from Neal to Ragonesi immediately after call with Dr. Hart.

110. Revocation of job and contract without due process (procedural and substantive) on 12/7/2023.

111. 2/26/2024 SPS receives a letter from the U.S. Department of Education Office of Civil Rights about plaintiff's OCR complaint and direct referral to Seattle Division EEOC.

112. Ragonesi closes file with WSRMP member district MSD, two days after both MSD and SPS received letter from the U.S. Department of Education Office of Civil Rights about plaintiff's OCR complaint and direct referral to Seattle Division EEOC.

113. 3/11/2025 Plaintiff files federal lawsuit against SPS.

114. 03/2025 Simone Neal, MSD Executive Director of Talent and Human Resources Resigns.

115. 3/21/2025 MSD posts Simone Neal's job–Job 24-0137 DO (Executive Director of Talent and Human Resources)

116. 4/26/2025 SPS in answer attempts to shift blame in dkt. 27 admission, "11. The damages and/or injuries sustained, if any, may have been proximately caused by the negligent actions

and/or omissions of third persons over whom this Defendant had no control. 12. Defendant alleges there may be other entities at fault for the damages alleged in Plaintiff's complaint."

117. 7/11/2025 Ms. Ragonesi makes a judicial admission in Dkt. 87-1 that, "On February 2, 2023, I was retained by the Washington Schools Risk Management Pool to represent the Mukilteo School District in an employment investigation matter. I retained an outside investigator and facilitated her investigation of a complaint that had been made by Rosa Cabrera Thompson about her work environment and coworkers at the Mukilteo School District. I closed my file on that matter on February 28, 2024."

118. On 7/17/2025, Seattle Public Schools produced, in response to a discovery request, a signed Private Device Affidavit executed by Dr. Tarance Hart. In this affidavit, Dr. Hart declares under penalty of perjury pursuant to the laws of the State of Washington that he possesses no texts, emails, or other data responsive to Plaintiff's requests on any private device(s) used in connection with his public employment. However, call logs produced during discovery contradict this sworn statement, showing that Dr. Hart used his personal phone to initiate and receive multiple calls and voicemails between November 29 and December 1, 2023, including communications with Simone Neal, Executive Director of Human Resources for the Mukilteo School District, and Stephen Shurtleff, Plaintiff's former supervisor at MSD. These communications are material to Plaintiff's claims and undermine the credibility of the affidavit.

119. On 7/19/2025, Plaintiff emailed defense counsel Shannon Ragonesi to raise concerns regarding the conflicted and potentially false nature of Dr. Hart's Private Device Affidavit and to request a meet and confer via phone or Zoom to address the inconsistency and potential


Rosa Maria Cabrera Thompson, 30 Otis St, 531, San Francisco, CA 94103

spoliation issues. As of July 24, 2025, Plaintiff has received no response or acknowledgment from Ms. Ragonesi regarding this request.

120. On 7/26/2025, subpoenas for Dr. Tarance Hart and Ms. Demetrius Lewis were due along with any objections. Objections were received on 7/28/2025, outside the strict deadline for subpoena compliance. I notified counsel of the lapsed deadline and waivers. I asked Counsel to comply with production, counsel declined. During the meet and confer, counsel stated she will send over statements for Dr. Hart and Ms. Lewis at an unknown date within the week of August 4th or beyond for Ms. Lewis who was on vacation.

121. On 7/30/2025, Plaintiff met with defense counsel Shannon Ragonesi to raise concerns regarding the conflicted and potentially false nature of Dr. Hart's Private Device Affidavit given phone records that show use of his private device to make reference calls about Plaintiff. Counsel stated she would talk to Dr. Hart and get back to me about the discrepancy.

122. On 7/30/2025, Plaintiff met with defense counsel Shannon Ragonesi to raise concerns regarding the improper disclosure of my discovery documents to opposing counsel for Mukilteo School District (a separate but related case). Counsel tried to say that consent was not needed because they had made an appearance on the case as non-parties. I reminded her that consent was needed and that it violated the rules. I also reminded her that MSD's role was strictly ancillary to the subpoena issue and to cease and desist further disclosure.

COMES NOW Plaintiff Rosa Maria Cabrera Thompson and states the following causes of action:

## V. LEGAL CLAIMS

The Honorable Tana Lin

## CHRONOLOGICAL EVIDENTIARY TIMELINE (WITH TIMESTAMPS)

| Date | Time | Event | Legal Significance |
|---|---|---|---|
| 10/26/23 | | Fully Executed EEOC Post-Settlement Agreement with Mukilteo School District (MSD) EEOC Charge No: 551-2023-03533 | EEOC protections indefinitely attach |
| 11/20/23 | 11:45 AM | Seattle Public Schools (SPS) extends job offer | Prima facie employment relationship |
| 11/20/23 | 11:57 AM | Plaintiff accepts job offer | Prima facie employment relationship-solidified |
| 11/22/23 | 2:07 PM | Dr. Tarance Hart-SPS administrator requests Plaintiff subject to additional steps | Post-settlement retaliation begins |
| 11/22/23 | 5:29 PM | Plaintiff immediately complies | |
| 11/29/23 | 11:39 AM | Hart requires reference check from Stephen Shurtleff (plaintiff's former supervisor at MSD), confirms his non-responsiveness to electronic references, and requests alternative contact info | MSD aware of offer; obstruction starts |
| 11/29/23 | 2:37 PM | Attorney Ragonesi calls Simone Neal (MSD HR Exec.) and leaves a 40 second voicemail | Attorney-initiated reference interference |
| 11/29/23 | 2:37 PM | Neal calls Ragonesi back has a 20 sec conversation | Coordination between HR and legal (Inter-district collusion) |
| 11/29/23 | 3:44 PM | Plaintiff emails Hart that all tasks were completed and provides Shurtleff's work email and phone number. | |
| 11/29/23 | 4:10 PM | Shurtleff calls Neal (unanswered) | MSD supervisor drawn into sabotage |
| 11/30/23 | 11:53 AM | Neal calls Shurtleff and leaves a 39 second voicemail | Active interference |
| 11/30/23 | 12:29 AM | Shurtleff calls Neal and leaves a 19 second voicemail | Active interference |
| 11/30/23 | 1:40 PM | Plaintiff sends a follow-up email to Hart and provides Shurtleff's personal cell phone contact | |
| 12/1/23 | 10:33 AM | Hart calls Shurtleff and leaves a 45 second voicemail | SPS continues due diligence |
| 12/1/23 | 10:38 AM | Shurtleff calls Neal and leaves a 9 second voicemail | Active interference |
| 12/1/23 | 11:25 AM | Neal calls Hart (exact number in call log exhibit)-Shurtleff likely emailed Neal the contact for Hart | Direct inter-district collusion |


Rosa Maria Cabrera Thompson, 30 Otis St, 531, San Francisco, CA 94103

The Honorable Tana Lin

| Date | Time | Event | Legal Significance |
|---|---|---|---|
| 12/1/23 | 11:26 AM | Neal calls Hart a second time | Direct inter-district collusion |
| 12/1/23 | 11:34 AM | Neal emails Hart and confirms calling on behalf of Shurtleff and leaves contact info (exact number in call log exhibit) | Direct inter-district collusion scheme amplified |
| 12/1/23 | 12:50 PM | Hart calls Neal and leaves a 54 second voicemail | Direct inter-district collusion |
| 12/1/23 | 3:52 PM | Neal calls Hart and they speak 1 minute and 56 seconds. | Direct inter-district collusion and sabotage executed. |
| 12/1/23 | 3:55 PM | Neal calls Ragonesi immediately after | Smoking gun moment of coordination |
| 12/7/23 | 1:04 PM | SPS revokes job offer (Ex. F) | Retaliatory adverse employment action |
| 10/19/23—3/29/24 | | Plaintiff applies for a total of 17 positions within SPS and is denied employment for all 17 positions. | Post EEOC Retaliation and on-going retaliation post 1/19/24 EEOC complaint (Charge Number 551-2024-03024) |
| 1/19/24 | | Plaintiff files EEOC case against SPS EEOC Charge Number 551-2024-03024 | Additional EEOC protections are extended and lays foundation for federal case |
| 1/19/24 | | Plaintiff files second EEOC case against MSD EEOC Charge Number 551-2024-01376 | Additional EEOC protections are extended and lays foundation for federal case |
| 2/26/24 | | U.S. Department of Education OCR informs SPS that case has been assigned to EEOC (OCR Reference No. 10241149) | Title VI of the Civil Rights Act of 1964 (Title VI), 42 U.S.C. § 2000d *et seq*., and, 34 C.F.R. Part 100 attaches |
| 5/30/24 | | WA State Employment Security Department Administrative Law Judge (ALJ) Ruling (Dkt. #340847)—entered in MSD case for Judicial Notice (Dkt# 69) | The ruling by the WA State ALJ in favor of the Plaintiff against MSD affirms the validity of the Plaintiff's hostile work environment and discrimination claims, strengthening the case for ongoing legal action. |
| 4/25/25 | 10:55 AM | Ragonesi makes a judicial statement on the record (Dkt. #27 at p. 10-11) that SPS attributed Plaintiff's damages to third persons/entity over whom [it] had no control—an implicit and strategic reference to Mukilteo School District (MSD) | Ragonesi's judicial statement serves as a strategic admission, opening the door for potential third-party liability and further discovery related to MSD's involvement. |

The Honorable Tana Lin

| Date | Time | Event | Legal Significance |
|---|---|---|---|
| 6/1/25 | 11:44 AM | Plaintiff demands recusal (Ex. B) | Meet-and-confer #1 |
| 6/1/25 | 11:44 AM | Plaintiff demands release of initial disclosures- Hart's Private Device Affidavit, call logs, voicemails, and completed reference document. | Meet-and-confer #1 |
| 6/2/25 | 9:05 PM | Subpoena + Recusal and RPC notice to MSD counsel (Ex. C) | Preservation of legal challenge |
| 6/16/25 | 5:54 PM | MSD files Motion to Quash (Dkt. #55) | Judicial admission of representation |
| 6/17/25 | 12:37 PM | Plaintiff renews recusal demand and request additional information. | Meet-and-confer #2 attempt |
| 6/18/25 | 7:15 PM | Ragonesi proposes unrelated protective order call, declines to respond to meet & confer in writing, insist on a phone call meeting on 6/23/25 or 6/24/25. Misses deadline Plaintiff provided to confer. | Bad faith avoidance of core issue |
| 6/20/25 | 4:24 PM | Defense circulates improper "Stip Re E-Service (Eservice agreement)"document despite all attorneys on record to be noted for CM/ECF service | Attempt to conceal discovery failures and legalize inter-district collusion expanded efforts to hide and conceal |
| 6/20/25 | 5:16 PM | Plaintiff declines participation in "Stip Re E-Service (Eservice agreement)"document | |
| 6/24/2025 | | Plaintiff and opposing counsel engage in a meet and confer where opposing counsel (Attorney Ragonesi admits being retained by WSRMP through its member MSD to investigate plaintiff's claim of hostile work environment and discrimination—admits the call to Neal on 11/29/2023 was about me—and claims ignorance of my resignation 43 days prior to the call—when ask if Neal informed her she said no and instead claimed another investigator informed her. | Attempt to hide crime/fraud and legalize inter-district collusion expanded efforts to hide and conceal |
| 6/26/2025 | | Plaintiff filed a motion to Disqualify Attorney Shannon Ragonesi (Dkt. #76 with Exhibits) | |
| 7/11/2025 | | Attorney Ragonesi submits a declaration and an exhibit of a previous declaration where she omits critical details of her involvement in the 11/29/2023 call to Neal and admission to Plaintiff during 6/24/2025 Meet & Confer Zoom call. She states she wasn't involved in Plaintiff's EEOC investigation/settlement but omits having knowledge of the EEOC claim | Attempt to hide crime/fraud and legalize inter-district collusion expanded efforts to hide and conceal |

The Honorable Tana Lin

| Date | Time | Event | Legal Significance |
|---|---|---|---|
| | | despite her statement that she was retained by WSRMP from 2/2/2023 through 2/28/2024 to presumable investigate Plaintiff's claims into her work environment. | |
| 7/17/2025 | | SPS released Attorney Shannon Ragonesi's Personal Services Contract with them Confirming Contract dates of 9/1/2023 through 8/31/2024 that overlap with WSRMP Retainer from member district MSD from 2/2/2023 through 2/28/2024-- SPS deferred to unlawful and retaliatory input from an attorney actively representing both districts and already deeply entangled in Plaintiff's employment and concurrent EEOC matters. | Potential Inter-District Collusion and Intentional Sabotage |
| 7/17/2025 | | SPS releases Dr. Hart's Private Device Affidavit where he swears under Oath that he did not use his private device for business–but the MSD call logs show he did send/receive voicemails and phone calls. | Lied under oath to not using his device and refused to produce it after a valid subpoena was served on 7/12/2025. |

**COUNT ONE (1): EMPLOYMENT DISCRIMINATION UNDER WASHINGTON STATE LAW (RCW 49.60.180)**

WLAD (RCW 49.60.180) Legal standard: prohibits discrimination in hiring based on protected characteristics, including race and retaliation for prior complaints. Under Washington state law, a plaintiff must establish the following four elements to prove employment discrimination:

1. Plaintiff is a member of a protected class (e.g., race, national origin, retaliation for protected activity).

2. Plaintiff was qualified for the position.

3. Plaintiff suffered an adverse employment action.

4. The adverse employment action occurred under circumstances giving rise to an inference of discrimination.

Plaintiff is a Black and Hispanic woman of Afro-Caribbean descent and national origin (Latina). These racial and national characteristics constitute protected classes under the Washington Law


Rosa Maria Cabrera Thompson, 30 Otis St, 531, San Francisco, CA 94103

The Honorable Tana Lin

Against Discrimination (WLAD). Plaintiff's rejection for employment was motivated, at least in part, by this protected status. Plaintiff meets all four elements: Because plaintiff is a racial minority and had previously filed an EEOC complaint against the Mukilteo School District for discrimination and retaliation and had prior protected activity under Title VII was known to Seattle Public Schools before her many rejections for employment by Seattle Public Schools. Plaintiff was highly qualified, having served as an assistant principal and principal for over a decade in multiple districts. Plaintiff met all job requirements and received multiple positive references, including one from a direct supervisor, Dr. Brian Schultz (Assistant Superintendent, Shoreline Public Schools). Plaintiff was offered the substitute assistant principal position at Garfield High School by Dr. Hart on November 20, 2023. Seattle Public Schools took Adverse Employment Actions: On December 7, 2023, Plaintiff was denied employment after Seattle Public Schools improperly conducted a reference check with the Mukilteo School District. Dr. Hart failed to consider multiple positive references that were provided, including three strong electronic references and letters of recommendation. Dr. Hart misrepresented facts regarding Plaintiff's application process to justify the adverse decision. SPS did not complete its hiring process in a fair and neutral manner, allowing subjective concerns to outweigh Plaintiff's superior qualifications. Inference of Discrimination: Plaintiff's only neutral reference according to Dr. Hart was from Mukilteo School District, where plaintiff had previously filed an EEOC claim and reached a settlement due to retaliation and discrimination. Seattle Public Schools used Mukilteo's limited response (dates of employment) as justification to deny Plaintiff employment, despite a long record of exemplary service and superior qualifications compared to the hired candidate (Ms. Manuel, who had significantly less administrative experience). Seattle Public Schools' failure to verify positive references, along with shifting explanations for not hiring

The Honorable Tana Lin

Plaintiff, suggests a pretextual and discriminatory hiring decision. Seattle Public School's handling of reference checks appears inconsistent, favoring some applicants over others.

Plaintiff engaged in protected activity by filing an EEOC claim against her former employer, the Mukilteo School District. SPS retaliated against Plaintiff by rescinding her job offer and later engaged in not offering opportunities to interview for multiple open assistant principal positions in the district after learning of her protected activity.

Plaintiff, a highly qualified school administrator, was denied equal consideration despite her clear qualifications.

Defendant's refusal to hire Plaintiff was based on discriminatory and retaliatory motives, violating WLAD.

**COUNT TWO (2): EMPLOYMENT DISCRIMINATION (TITLE VII, 42 U.S.C. § 2000e-2)**

Title VII of the Civil Rights Act prohibits employers from discriminating against an individual based on race, color, national origin, sex, or retaliation for engaging in a protected activity.

**Discrimination Based on Race and Retaliation**

Plaintiff is a member of a protected class based on her race (Black), ethnicity (Hispanic), gender (female), and national origin (Latina). The discriminatory actions taken by SPS occurred after it learned of Plaintiff's protected status and past EEOC activity, and involved treatment less favorable than similarly situated white candidates.

Plaintiff engaged in a protected activity by filing an EEOC complaint against the Mukilteo School District. Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006) – Held that retaliation claims under Title VII are broadly construed to protect employees from adverse


Rosa Maria Cabrera Thompson, 30 Otis St, 531, San Francisco, CA 94103

The Honorable Tana Lin

actions following a complaint of discrimination. Robinson v. Shell Oil Co., 519 U.S. 337 (1997)– Established that retaliation protections extend to individuals who engage in protected activity, including prior complaints against other employers

Seattle Public Schools was aware of this activity through direct communication from the EEOC after I filed a claim against them. Seattle Public Schools took an adverse action by rescinding the employment opportunity on December 7, 2023, citing a reference check that provided only dates of employment and no substantive concerns. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) – Established the burden-shifting framework for proving discrimination under Title VII, where an employer's shifting or inconsistent justifications can be evidence of pretext for discrimination. Hanna v. WCI Communities, Inc., 348 F. Supp. 2d 1322 (S.D. Fla. 2004) – Held that a rescinded job offer based on pretextual reasons constitutes an adverse employment action under Title VII.

SPS hired Ms. Manuel, a less qualified candidate who lacked Plaintiff's extensive administrative experience. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981) – Clarified that disparate treatment occurs when a qualified candidate is overlooked in favor of a less qualified candidate. Rudin v. Lincoln Land Cmty. Coll., 420 F.3d 712 (7th Cir. 2005) – Held that hiring a less qualified candidate over a more qualified candidate with positive references constitutes evidence of discriminatory intent.

SPS failed to consider multiple positive references and hired a less qualified candidate (Ms. Manuel) over Plaintiff, who had more experience, stronger qualifications, and endorsements from previous supervisors. SPS selected a less qualified candidate despite Plaintiff's superior experience, training, and leadership background. Plaintiff received three (3) positive electronic references, including one from a direct former supervisor (Dr. Brian Schultz, Assistant Superintendent, Shoreline Public Schools). The Plaintiff was subjected to an arbitrary and unfair


Rosa Maria Cabrera Thompson, 30 Otis St, 531, San Francisco, CA 94103

The Honorable Tana Lin

hiring process, which constitutes an equal protection violation. Ash v. Tyson Foods, Inc., 546 U.S. 454 (2006) – The Supreme Court ruled that when a clearly more qualified candidate is passed over, it supports an inference of discrimination. Lomax v. Sears, Roebuck & Co., 202 F.3d 1050 (8th Cir. 2000) – Found that hiring a less qualified candidate in a discriminatory hiring process constitutes a Title VII violation.

**Pretext for Discrimination**

Seattle Public Schools provided shifting and false justifications for not hiring Plaintiff, demonstrating pretext for discrimination. SPS first cited a lack of reference response as the reason for rescinding the job offer. Later, Dr. Hart falsely claimed that Plaintiff failed to provide her most recent supervisor as a reference, despite evidence in the application showing Mr. Shurtleff's inclusion. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133 (2000) – Held that employers who provide inconsistent or false explanations for an adverse action create an inference of pretext for discrimination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993) – Established that when an employer's explanation for an adverse action is false, discrimination may be inferred.

Dr. Hart's statements to the EEOC contained material misrepresentations, including false claims that Plaintiff failed to list her most recent supervisor and that she pressured for a quick start date before a reference check could be completed. The record confirms Plaintiff provided all required references and offered additional documentation proactively. Hicks v. St. Mary's Honor Center, 970 F.2d 487 (8th Cir. 1992) – Found that employers who knowingly misrepresent facts to justify an adverse decision are engaging in pretextual discrimination. The actual record confirms that Plaintiff provided all required references, and that Seattle Public Schools failed to make reasonable efforts to verify her positive recommendations. The hiring of a less qualified candidate demonstrates discriminatory intent. Reeves v. Sanderson Plumbing Prods., Inc., 530


Rosa Maria Cabrera Thompson, 30 Otis St, 531, San Francisco, CA 94103

U.S. 133 (2000) – Held that employers who provide inconsistent or false explanations for an adverse action create an inference of pretext for discrimination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993) – Established that when an employer's explanation for an adverse action is false, discrimination may be inferred.

**COUNT THREE (3): BREACH OF CONTRACT UNDER WASHINGTON STATE LAW**

**(as against Defendant SPS)**

Under Washington State law, a claim for breach of contract requires the Plaintiff to prove the following elements:

1. A valid and enforceable contract existed between Plaintiff and Defendant.
2. Plaintiff performed their contractual obligations or was ready and willing to perform.
3. Defendant breached the contract by failing to fulfill its contractual duties.
4. Plaintiff suffered damages as a direct result of Defendant's breach.

Plaintiff satisfies all four elements of breach of contract: (1) A Valid and Enforceable Contract Existed On November 20, 2023, at 11:45 AM, Dr. Hart offered Plaintiff the role of Substitute Assistant Principal at Garfield High School for the period of November 27, 2023, through December 15, 2023 (approximately 15 instructional days). On November 20, 2023, at 11:57 AM, Plaintiff accepted the offer in writing, confirming: Start date of November 27, 2023, at 7:45 AM. Availability through December 15, 2023. Agreement to the terms set forth in the offer. The offer and acceptance formed a valid and enforceable employment contract, even though it was temporary. Under Washington law, an oral or written job offer that is accepted by the offeree forms a binding contract. (2) Plaintiff Fully Performed All Contractual Obligations: Plaintiff completed all pre-employment requirements requested by Seattle Public Schools: Submitted all required application materials (twice, on 10/19/2023 and 11/23/2023). Provided multiple professional references, including one from a direct former supervisor (Dr. Schultz, Assistant


Rosa Maria Cabrera Thompson, 30 Otis St, 531, San Francisco, CA 94103

Superintendent, Shoreline Public Schools). Scheduled and completed a fingerprint background check on November 29, 2023. Responded to all requests from Seattle Public Schools HR and Dr. Hart in a timely manner. Confirmed availability and readiness to start employment on November 27, 2023. Despite fulfilling all obligations, Seattle Public Schools unilaterally and unlawfully revoked the job offer on December 7, 2023, without any valid reason related to Plaintiff's ability to perform the job. (3) Defendant Breached the Contract: On December 7, 2023, at 9:04 PM, Dr. Hart rescinded Plaintiff's employment contract, citing an incomplete reference check with Mukilteo School District as justification. However, Seattle Public Schools failed to follow its own policies and standard hiring practices, which require: Employment decisions to be based on "the most qualified candidate" (Seattle Public Schools Board Policy 5000). References to be fairly considered, including multiple positive references provided by the candidate. Job offers to be honored unless the candidate fails a background check or sexual misconduct disclosure check (RCW 28A.400.322)—neither of which applied to Plaintiff. SPS breached the employment contract by rescinding the offer without just cause and failing to adhere to its own policies. (4) Plaintiff Suffered Damages as a Direct Result of the Breach. Multiple references from high-ranking educators strongly endorsed the Plaintiff's leadership skills, yet Plaintiff was not given equal consideration. The decision to reject Plaintiff seems inconsistent with the district's hiring policy, which states that selection should be based on qualifications. Steps taken were a violation of contract law and due process.

As a result of Seattle Public Schools' breach of contract, Plaintiff suffered economic loss and professional harm, including:

Economic Damages (Back Pay & Lost Wages)

1. Loss of Expected Income – Plaintiff was promised 15 days of employment at the agreed-upon hourly rate but was denied all earnings from the contract.


Rosa Maria Cabrera Thompson, 30 Otis St, 531, San Francisco, CA 94103

The Honorable Tana Lin

2. Loss of Future Career Opportunities – Plaintiff's expected interim assistant principal position (January 2024) was dependent on successful completion of the substitute assistant principal role.

3. Loss of Healthcare and Benefits – Plaintiff lost temporary access to employment benefits that would have been earned through this position.

Reputational and Emotional Harm

1. Plaintiff's professional reputation was damaged due to the public nature of Seattle Public Schools' retraction of the employment offer.

2. Emotional distress and humiliation resulting from the sudden, unjustified rescission of an already accepted offer.

Punitive Damages

1. Bad faith hiring practices – Seattle Public Schools knowingly and intentionally:

a. Rescinded a contract without cause.

b. Failed to verify positive references despite receiving three strong electronic references and multiple letters of recommendation.

c. Used an incomplete and arbitrary reference check process to justify its decision.

d. Ignored Plaintiff's multiple attempts to provide additional documentation proving her qualifications.

e. Defendant's conduct was willful and reckless, justifying punitive damages to deter future unlawful hiring practices.

Attorney's Fees and Costs

2. Plaintiff is entitled to reasonable attorney's fees and costs incurred in bringing this legal claim.

**COUNT FOUR (4): VIOLATION UNDER THE WASHINGTON PUBLIC RECORDS**

The Honorable Tana Lin

**ACT (RCW 42.56)**

Under Washington law, a violation of the Public Records Act (PRA) occurs when:

1. The Defendant is a public agency subject to the PRA.

2. Plaintiff made a proper public records request.

3. Defendant failed to provide the records within a reasonable timeframe.

4. The delay or failure to provide records resulted in harm to the Plaintiff.

5. Defendant acted in bad faith or willfully disregarded the PRA's requirements.

Plaintiff satisfies all five elements of a PRA violation:(1) Defendant is a Public Agency Subject to the PRA. Seattle Public Schools is a public agency and is subject to RCW 42.56, which requires all state and local agencies to provide access to public records upon request. (2) Plaintiff Made a Proper Public Records Request. On January 5, 2024, at 4:12 PM, Plaintiff submitted a formal public records request to SPS seeking: Communications regarding Plaintiff's employment application, hiring process, and references. Internal emails and documentation regarding hiring decisions. Documentation supporting SPS's rejection of Plaintiff's application. Plaintiff followed up on multiple occasions to request the records and seek updates. (3) Defendant Failed to Provide the Records Within a Reasonable Timeframe. March 12, 2024, at 1:28 AM – SPS informed Plaintiff that the requested records, originally due April 3, 2024, were delayed until April 5, 2024. April 5, 2024, at 9:03 PM – SPS released only the first installment of records and delayed the second installment until September 5, 2024. September 5, 2024 – SPS failed to release the records as promised. November 6, 2024 – SPS again failed to release the remaining records. December 17, 2024 – SPS failed for the fourth time to provide the requested documents. March 4, 2025, at 6:31 PM – SPS unilaterally closed the request without full disclosure of documents. (4) The Delay or Failure to Provide Records Resulted in Harm to Plaintiff. Plaintiff was denied critical employment records that could have supported her EEOC claim for


Rosa Maria Cabrera Thompson, 30 Otis St, 531, San Francisco, CA 94103

discrimination. Seattle Public School's delays obstructed Plaintiff's ability to challenge the hiring decision in a timely manner. Repeated delays and refusals created unnecessary administrative and legal burdens, requiring Plaintiff to file multiple complaints and appeals. (5) Defendant Acted in Bad Faith and Willfully Disregarded the PRA. Seattle Public Schools repeatedly delayed responses despite the clear statutory obligation to provide records within a reasonable time. Seattle Public Schools arbitrarily postponed deadlines without justification, pushing final record releases from April 5, 2024, to September 5, 2024, and then again failing to comply. Seattle Public Schools never provided a full record disclosure, even after multiple follow-ups. Washington courts have held that unreasonable delay constitutes a willful PRA violation: Yousoufian v. Office of Ron Sims, 168 Wn.2d 444 (2010) – The Washington Supreme Court held that agencies must comply with PRA requests promptly, and repeated unjustified delays may warrant higher penalties. Rental Housing Ass'n of Puget Sound v. City of Des Moines, 165 Wn.2d 525 (2009) – The court found that withholding or delaying disclosure of non-exempt public records constitutes a violation of the PRA. Based on these precedents, SPS's unreasonable and repeated delays constitute a willful violation of the Public Records Act. The delay in releasing public records suggests a possible cover-up or deliberate obstruction of information. Seattle Public Schools promised record releases but failed to meet deadlines, further indicating bad faith.

**COUNT FIVE (5): VIOLATION OF DUE PROCESS (42 U.S.C. § 1983) (as against Defendant SPS)**

**Violation of Due Process Legal Standard**

Plaintiff had a constitutionally protected property interest in her confirmed employment with SPS. The rescission of this offer, following reference interference by individuals acting under color of law—constituted a deprivation of due process under the Fourteenth Amendment.


Rosa Maria Cabrera Thompson, 30 Otis St, 531, San Francisco, CA 94103

The Due Process Clause of the Fourteenth Amendment protects individuals from arbitrary government actions that deprive them of life, liberty, or property without due process of law. In Zhu v. North Central Educational Service District-ESD 171, 528 F. Supp. 3d 1164 (E.D. Wash. 2021), the court held that a public school district's employment decisions must be based on legitimate, non-arbitrary grounds and that an applicant is entitled to a fair and transparent hiring process.

Plaintiff had a legitimate claim of entitlement to fair consideration for the positions applied for. Defendant deprived Plaintiff of this right by arbitrarily rejecting her application without providing an opportunity to rebut false information allegedly provided by Mukilteo School District. Defendant failed to follow its own hiring policies, which require an equitable screening process based on qualifications. Defendant's failure to provide reasons for denial, an appeal process, or an opportunity to correct misinformation constitutes a denial of procedural due process under Zhu.

**COUNT SIX (6): VIOLATION OF EQUAL PROTECTION (42 U.S.C. § 1983)**

**Violation of Equal Protection Legal Standard**

The Equal Protection Clause of the Fourteenth Amendment prohibits government entities from treating similarly situated individuals differently without a rational basis or compelling government interest. In Zhu, 528 F. Supp. 3d at 1183, the court recognized that disparate treatment in a public school's hiring process, particularly when based on unverified or retaliatory information, violates the Equal Protection Clause. Here, Plaintiff was similarly situated to other applicants who were considered and hired for positions at Seattle Public Schools. Defendant subjected Plaintiff to harsher scrutiny, including relying on unverified negative information and requiring additional reference checks, which were not applied to other candidates. Defendant's arbitrary and retaliatory rejection of Plaintiff, despite clear qualifications, constitutes a violation



Rosa Maria Cabrera Thompson, 30 Otis St, 531, San Francisco, CA 94103

of equal protection. Plaintiff was singled out for discriminatory treatment based on her previous EEOC complaint against Mukilteo School District and later another EEOC claim against Seattle Public Schools filed on January 19th, 2024, demonstrating retaliatory animus, which is prohibited under WLAD (RCW 49.60.210).

**COUNT SEVEN (7): FIRST AMENDMENT RETALIATION (42 U.S.C. § 1983)**

**Authorized by Court Order (Dkt. No. 156, Mar. 31, 2026)**

**Legal Elements (Coszalter v. City of Salem, 320 F.3d 968 (9th Cir. 2003)):**

(1) Plaintiff engaged in protected speech;

(2) Defendants took adverse action;

(3) A causal connection exists;

(4) The retaliation would chill a person of ordinary firmness from continuing to speak.

Plaintiff's protected speech and advocacy—including EEOC complaints and legal proceedings—were the motivating factor in the retaliatory denial of employment. The defendants' collective conduct chilled her exercise of First Amendment rights and constitutes unlawful retaliation.

**TIMELINE OF CONDUCT ESTABLISHES DELIBERATE PATTERN OF MISDIRECTION AND COORDINATED RETALIATION**

| |
|---|
| • April 6, 2023: Neal confirms Slosburg as investigator (not Ragonesi). |
| • April 2023: Plaintiff files EEOC charge against MSD. |
| • April–Oct. 2023: EEOC investigates Plaintiff's complaint. |
| • Oct. 26, 2023: Settlement is finalized. |
| • Oct.2023–April. 2024: Plaintiff applies to SPS; no jobs received post revocation. |
| • Nov. 29, 2023: Ragonesi calls Neal about Plaintiff; SPS revokes Plaintiff's employment |
| days later. |
| • Jan. 2024: Plaintiff files new EEOC charges against MSD and SPS. |
| • Feb. 28, 2024: Ragonesi claims she "closed her file." |
| • Feb. 29, 2024: SPS and MSD receives EEOC Charge Notice. |

This timeline strongly supports the appearance of coordination and the use of privileged access



Rosa Maria Cabrera Thompson, 30 Otis St, 531, San Francisco, CA 94103

The Honorable Tana Lin

for improper purposes. This sequence directly contradicts Ragonesi's claim that she had no knowledge of Plaintiff's EEOC matters or employment issues. If she was truly uninvolved, she would not have left a voicemail referencing Plaintiff after the EEOC settlement and immediately before SPS's retaliatory act.

**Application to Plaintiff's Case:**

Plaintiff engaged in protected speech when she filed EEOC complaints against MSD in April 2023 and against SPS in January 2024 (Exs. 4, 2). Both districts received EEOC notice on February 29, 2024 (Exs. 2–3), while Ragonesi was concurrently representing or advising both.

Despite her knowledge of Plaintiff's protected activity, Ragonesi placed a call to Simone Neal on November 29, 2023, which set off a chain of retaliatory actions culminating in SPS rescinding Plaintiff's job offer on December 7, 2023 (Ex. F). SPS then denied Plaintiff at least 17 further job opportunities across the district.

This conduct was clearly retaliatory and would deter a reasonable person from continuing to assert civil rights. The temporal proximity and clear retaliation make out a strong First Amendment retaliation claim under § 1983.

**COUNT EIGHT (8): RETALIATION UNDER TITLE VII**
**Authorized by Court Order (Dkt. No. 156, Mar. 31, 2026)**

Plaintiff reasserts and incorporates by reference all prior paragraphs as if fully stated herein.

Legal Standard: Title VII of the Civil Rights Act of 1964 prohibits retaliation against individuals who have opposed discriminatory practices or participated in an investigation, proceeding, or hearing under Title VII. See 42 U.S.C. § 2000e-3(a). To state a claim, Plaintiff must show:


Rosa Maria Cabrera Thompson, 30 Otis St, 531, San Francisco, CA 94103

1. She engaged in a protected activity;
2. She suffered an adverse employment action; and
3. There is a causal connection between the protected activity and the adverse action.

See *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000); *Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 894 (9th Cir. 2005). The U.S. District Court for the Western District of Washington applies this framework in analyzing retaliation claims under Title VII.

**<u>Application to Plaintiff's Case:</u>**

1. Protected Activity**:** Plaintiff filed EEOC complaints against MSD in April 2023 and engaged in mediation and settlement processes culminating in an agreement on October 26, 2023. These constitute protected activities under Title VII.
2. Adverse Employment Action**:** Following her EEOC settlement, Plaintiff was offered and accepted an assistant principal role at Garfield High School within SPS. This offer was subsequently revoked on December 7, 2023, after a series of communications involving HR Executive Simone Neal, Dr. Tarance Hart, and Shannon Ragonesi.
3. Causal Connection**:** Defendants' coordinated actions—including unauthorized reference communications involving Ragonesi, who was acting on behalf of MSD/WSRMP while also representing SPS—occurred shortly after Plaintiff's EEOC settlement. The 11/29/23 voicemail from Ragonesi to SPS HR, the chain of retaliatory phone calls and emails, and the timing of the revocation just days later establish a direct causal link to Plaintiff's protected activity.

Conclusion: Defendants' coordinated actions—particularly the revocation of Plaintiff's job offer by SPS following improper reference coordination involving Ragonesi—constitute unlawful


Rosa Maria Cabrera Thompson, 30 Otis St, 531, San Francisco, CA 94103

retaliation in violation of Title VII, 42 U.S.C. § 2000e-3(a). Plaintiff is entitled to compensatory damages, punitive damages, injunctive relief, and other appropriate remedies under federal law.

## VI. DAMAGES

As a direct and proximate result of the unlawful discrimination, retaliation, constitutional violations, and breach of contract committed by Seattle Public Schools (SPS)—in coordination with Mukilteo School District (MSD)**,** Washington Schools Risk Management Pool (WSRMP**)**, and their conflicted legal counsel Shannon Ragonesi—Plaintiff Dr. Rosa Maria Cabrera Thompson has sustained substantial and ongoing harm. This harm includes lost wages, lost future employment opportunities, emotional and reputational injury, statutory violations, and deprivation of civil rights. Plaintiff respectfully requests the following categories of relief:

### A. Statutory Damages – Washington Public Records Act (RCW 42.56.550)

Seattle Public Schools failed to produce key records related to Plaintiff's employment applications, reference checks, and internal communications, in violation of the Washington Public Records Act. Under RCW 42.56.550(4), Plaintiff is entitled to a per-day penalty of up to $100 per day for each day the district wrongfully withheld or delayed records. In light of the scope and duration of SPS's noncompliance—amounting to months of delay—Plaintiff reasonably estimates PRA penalties not less than $50,000, and subject to judicial discretion pursuant to RCW 42.56.550(4) and Yousoufian v. Sims for willful withholding. These penalties should be enhanced under the *Yousoufian* factors due to SPS's deliberate, repeated bad-faith behavior. Plaintiff also seeks recovery of her attorney's fees and litigation costs incurred in compelling PRA compliance.


Rosa Maria Cabrera Thompson, 30 Otis St, 531, San Francisco, CA 94103

**B. Economic Damages – Back Pay and Lost Wages**

Plaintiff accepted a substitute assistant principal position at Garfield High School beginning November 27, 2023. The contract guaranteed 15 workdays of service. Based on a $190,000 annual salary, Plaintiff was entitled to approximately $10,961.54 in earnings for that period. Because SPS willfully rescinded this contract without lawful justification, Plaintiff seeks double damages under RCW 49.48 and 49.52, totaling $21,923.08 for the substitute position.

Plaintiff was also on track to assume a full interim assistant principal position in January 2024 with SPS, at the same salary level of $190,000 annually. The revocation of her initial position directly prevented her from advancing into the interim role. As a result, Plaintiff lost six months of income, valued at $95,000**.** Because this loss resulted from willful retaliation and contract interference, Plaintiff seeks double damages under RCW 49.48 and 49.52 for that role as well, for a total of $190,000 in back pay for the interim position.

Total wage-based damages for the substitute and interim roles under RCW 49.48 and 49.52 are $211,923.08.

**C. Front Pay – Denial of Future Employment**

Plaintiff was denied at least 17 leadership roles within SPS following the November 29, 2023 reference interference by MSD and Attorney Ragonesi. Each position carried a base salary of approximately $190,000 per year. These rejections were not coincidental but part of a broader, retaliatory blacklisting effort coordinated between SPS and MSD. Based on Plaintiff's high qualifications, positive references, and proven track record, she reasonably would have been hired into multiple roles but for Defendants' unlawful conduct.

Accordingly, Plaintiff seeks $4,500,000 in front pay damages based on the cumulative loss of 17 SPS opportunities at $190,000 each. This assumes a high-paying leadership trajectory over ~15-20 years.

- Lost promotions (principal → executive leader → superintendent);
- Retirement account growth losses;
- Healthcare and pension contributions.

**D. Emotional Distress and Reputational Harm**

Plaintiff suffered profound emotional trauma and reputational injury as a result of SPS's abrupt rescission of her accepted employment, the public dissemination of misleading information, and the continued denial of leadership roles across the state. Her professional standing in Washington's educational community has been irreparably damaged, and the emotional toll has been severe. Plaintiff seeks:

- $600,000 for reputational harm; and
- $400,000 for emotional distress.

Total non-economic damages: $1,000,000

**E. Punitive Damages**

Plaintiff seeks punitive damages for Defendants' willful, malicious, and reckless disregard of her civil rights. These include:

- Retaliation against Plaintiff for engaging in protected EEOC activity;
- Reference interference in violation of a binding federal settlement agreement;


Rosa Maria Cabrera Thompson, 30 Otis St, 531, San Francisco, CA 94103

- Willful concealment of key facts and abuse of dual representation by Attorney Ragonesi;
- Arbitrary and discriminatory hiring practices in violation of Title VII and the WLAD.

In light of the egregious nature of the misconduct and its systemic coordination across agencies, Plaintiff seeks $5,000,000 in punitive damages to deter future misconduct.

**F. Attorney's Fees and Costs**

Plaintiff seeks an award of attorney's fees and litigation costs under:

- 42 U.S.C. § 1988(b) (Title VII and § 1983),
- RCW 49.60.030(2) (WLAD),
- RCW 42.56.550(4) (Public Records Act),
- And other applicable statutory and equitable authorities.

Based on the complexity of the claims, the volume of filings, and the anticipated duration through trial, Plaintiff reasonably estimates her recoverable attorney's fees and costs to exceed $500,000.

**G. Total Damages Summary**

Taking into account all categories of harm—including economic loss, statutory penalties, non-economic injuries, and punitive damages—Plaintiff respectfully requests an award of no less than $11,261,923.08, exclusive of continuing attorney's fees, interest, and equitable relief. This figure includes:

- $211,923.08 in double back pay and lost wages under RCW 49.48/49.52;
- $4,500,000 in front pay for 17 lost leadership opportunities;
- $1,000,000 for reputational and emotional harm;


Rosa Maria Cabrera Thompson, 30 Otis St, 531, San Francisco, CA 94103

The Honorable Tana Lin

- $50,000+ in statutory PRA penalties;
- $5,000,000 in punitive damages; and
- $500,000+ in attorney's fees and costs.

These damages are supported by binding and persuasive case law, statutory authority, and the detailed factual allegations pled herein and should be submitted to a jury for determination.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Dr. Rosa Maria Cabrera Thompson respectfully requests that this Court and a jury of twelve award the following relief against Defendant Seattle Public Schools, jointly and severally with its agents, co-conspirators, and affiliated entities including the Washington Schools Risk Management Pool (WSRMP), Mukilteo School District (MSD), and any retained counsel or representatives found to have participated in the alleged misconduct, and grant all remedies available under federal and Washington law, including but not limited to:

- Compensatory Damages in an amount not less than $211,923.08 for lost back pay and wages under RCW 49.48 and 49.52, resulting from the unlawful rescission of Plaintiff's substitute and interim assistant principal positions;
- Front Pay Damages in the amount of $4,500,000 for the denial of at least 17 subsequent employment opportunities within SPS due to retaliatory reference interference and coordinated blacklisting for a timeframe of approximately 15-20 years;
- Economic Damages for interference with Plaintiff's contractual and business expectancies, including the Garfield High School position and additional employment opportunities lost due to improper disclosures or reference coordination, in an amount to be proven at trial;


Rosa Maria Cabrera Thompson, 30 Otis St, 531, San Francisco, CA 94103

The Honorable Tana Lin

- Non-Economic Damages totaling $1,000,000, including:
    - $600,000 for reputational harm caused by the public and pretextual rescission of employment; and
    - $400,000 for emotional distress and psychological injury directly resulting from Defendants' willful misconduct;
- Statutory Penalties under the Washington Public Records Act (RCW 42.56.550(4)) no less than $50,000, including:
    - Per-day penalties for each day of delay in releasing records; and
    - Enhanced penalties pursuant to *Yousoufian v. Sims*, for willful and repeated noncompliance;
- Punitive Damages in the amount of $5,000,000 to punish and deter Defendants' willful, egregious, and malicious retaliation, discrimination, and use of conflicted counsel in violation of Plaintiff's civil rights and the terms of a federal EEOC settlement;
- Declaratory Judgment affirming that:
    - Seattle Public Schools violated Title VII of the Civil Rights Act, the Washington Law Against Discrimination (WLAD), and the First and Fourteenth Amendments of the U.S. Constitution;
    - Defendants jointly and knowingly engaged in conduct violating 42 U.S.C. § 1985(3) by coordinating retaliatory communications intended to deprive Plaintiff of her right to pursue employment opportunities on equal terms based on her protected race and EEOC activity;
    - Defendant retaliated against Plaintiff for engaging in protected EEOC activity and breached a binding federal EEOC settlement agreement;

   - Defendant violated the Public Records Act by withholding, delaying, and obstructing access to public records;
   - Defendant breached its employment contract with Plaintiff without cause or due process;
- Injunctive Relief, including:
   - An order reinstating Plaintiff's eligibility to apply for and be considered in good faith for future employment with Seattle Public Schools, including reinstatement to a high school assistant principal position within SPS's secondary schools;
   - An order compelling SPS to disclose and produce all outstanding public records responsive to Plaintiff's prior PRA requests;
   - An order requiring SPS to implement transparent, equitable, and non-retaliatory hiring procedures—including formal prohibitions on the use of post-resignation reference interference, discriminatory evaluation criteria, and any backchannel communications with prior employers or third-party insurers;
   - An order requiring Seattle Public Schools and WSRMP to develop and enforce a comprehensive monitoring system to detect and prevent conflicts of interest in the retention and supervision of outside counsel, particularly where attorneys are simultaneously contracted to represent or investigate matters involving multiple districts or overlapping personnel;
   - An order mandating that SPS, MSD, and WSRMP implement written procedures and supervisory oversight protocols for any retained attorney or investigator who is assigned to handle employment-related disputes involving EEOC-protected parties;


Rosa Maria Cabrera Thompson, 30 Otis St, 531, San Francisco, CA 94103

The Honorable Tana Lin

- An order mandating conflict-of-interest disclosure and pre-engagement vetting for all attorneys and investigators retained by WSRMP or similar public risk pools, especially in matters where dual representation or shared risk between member districts may impair fairness or due process;
- An order requiring the appointment of a special master or independent court monitor to oversee WSRMP's legal contracting practices, ensure transparency in attorney retention, and verify compliance with anti-retaliation statutes in employment-related investigations;
- An order recommending that the Washington State Legislature or Attorney General conduct oversight and regulatory review of WSRMP and other school risk pools to ensure compliance with public accountability, ethical legal practices, and civil rights protections for employees;
- An order requiring SPS to implement and maintain updated Public Records Act (PRA) compliance protocols, including designated personnel training and performance tracking, to ensure lawful and timely production of all public records under RCW 42.56;
- An order enjoining WSRMP and all attorneys retained on its behalf from using, disclosing, or transmitting any information obtained during investigations of employee complaints or legal claims—including EEOC charges, OCR complaints, or internal grievances—for the purpose of retaliation, discrimination, or interference with the future employment opportunities of the individuals who filed such claims;
- This order shall specifically prohibit WSRMP and its legal counsel from coordinating adverse actions across school districts based on protected activity,

The Honorable Tana Lin

and from repurposing investigative information to influence, delay, or obstruct hiring decisions in other member districts where the complainant seeks employment;

- ○ The Court should further require WSRMP to adopt enforceable guidelines and ethical safeguards to ensure that legal representation and investigation functions do not become mechanisms for coordinated retaliation against whistleblowers, civil rights claimants, or protected class members across Washington State public schools;

- Spoliation and Discovery Misconduct Remedies, including:
  - ○ An order requiring forensic examination of Dr. Hart's private device(s) for responsive ESI pursuant to Fed. R. Civ. P. 34 and 37, based on credible evidence contradicting his sworn statement of non-use;
  - ○ An award of monetary or evidentiary sanctions under FRCP 37(e) for spoliation or failure to preserve communications materially relevant to Plaintiff's claims;
- Reasonable Attorney's Fees and Costs, including expert fees and litigation expenses, in excess of $250,000, as permitted under:
  - ○ 42 U.S.C. §§ 1988 and 2000e-5(k);
  - ○ RCW 49.60.030(2);
  - ○ RCW 42.56.550(4);
  - ○ All other applicable statutes and doctrines providing for fee-shifting in employment, constitutional, and public accountability litigation;
- Prejudgment and Post-Judgment Interest on all monetary awards, as allowed by law;


Rosa Maria Cabrera Thompson, 30 Otis St, 531, San Francisco, CA 94103

The Honorable Tana Lin

- Any and all other relief this Court deems just, proper, and equitable, including leave to amend this complaint to conform to evidence obtained in discovery or via pending public records requests.

Plaintiff expressly reserves the right to seek leave to file a Third Amended Complaint pursuant to the Court's Order (Dkt. No. 156) no later than April 30, 2026, to include claims denied in the March 31, 2026 Order with additional supporting facts. Plaintiff expressly reserves the right to amend this Prayer for Relief to include claims and remedies against individual supervisors, cabinet-level officials, board members, third parties, other entities or other complicit actors within Seattle Public Schools and/or its legal counsel, upon discovery of additional facts establishing direct liability, participation in the conspiracy, or failure to prevent known misconduct.

**DATED:** April 17, 2026

Respectfully submitted,
/s/ Rosa Maria Cabrera Thompson
Rosa Maria Cabrera Thompson
Pro Se Litigant
P.O. Box 275
Maple Valley, WA 98038
Rosathompson09@hotmail.com

**VERIFICATION**

I, Rosa M. Cabrera Thompson, declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

RESPECTFULLY SUBMITTED,

/s/ Rosa Maria Cabrera Thompson
Rosa Maria Cabrera Thompson

The Honorable Tana Lin

Plaintiff Pro Se, Litigant
P.O. Box 275
Maple Valley, WA 98038
Email: rosathompson09@hotmail.com

The Honorable Tana Lin

## CERTIFICATE OF SERVICE

I hereby certify that on April 17, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filings to the following:

Shannon M. Ragonesi
Attorney for Defendant
1201 Third Avenue, Suite 1580
Seattle, Washington 98101

RESPECTFULLY SUBMITTED,
/s/ Rosa Maria Cabrera Thompson
Rosa Maria Cabrera Thompson
Plaintiff Pro Se, Litigant
P.O. Box 275
Maple Valley, WA 98038
Email: rosathompson09@hotmail.com