UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

ROSA MARIA CABRERA THOMPSON,

Plaintiff(s),

v.

SEATTLE PUBLIC SCHOOLS, a public school district of the State of Washington; WASHINGTON SCHOOLS RISK MANAGEMENT POOL, a public-school insurer; MISA GARMOE, individually; JOHN CERQUI, individually; LIBBY SIMEON, individually; SARAH J. PRITCHETT, individually; AYRIAN L. HASTINGS, individually; TARANCE HART, individually; SHARONDA WILLINGHAM, individually; SHANNON RAGONESI, individually; SIMONE NEAL, individually; STEPHEN SHURTLEFF, individually; MARK FILIPINI, individually; SHELBY STONER, individually; KRISTA SLOSBURG, individually; ALISON BRYNELSON, individually PATTY DOWD, individually; K&L GATES LLP; KEATON BUCKLIN & MCCORMACK; STOKES LAWRENCE and DOES 1 through 25, inclusive,

Defendant(s).

CASE NO. 2:25-cv-00468-TL

**PLAINTIFF'S THIRD AMENDED COMPLAINT**

*(Jury Trial Demanded)*

*Filed pursuant to: Court Order, Dkt. No. 156 (Mar. 31, 2026); and Motion for Leave to File Third Amended Complaint, filed concurrently herewith.*



ROSA MARIA CABRERA THOMPSON, P.O. BOX 275, MAPLE VALLEY, WA 98038

NOTE ON AMENDED PLEADING: This Third Amended Complaint is filed pursuant to this Court's Order on Motion to Amend, Dkt. No. 156 (Mar. 31, 2026), which granted Plaintiff leave to file a TAC including claims denied in that Order upon filing a motion for leave with supporting facts no later than April 30, 2026. Counts One through Eight are carried forward from the Second Amended Complaint. Counts Nine through Twenty are newly added or revised pursuant to deposition testimony, documentary evidence, and the analysis set forth in Plaintiff's concurrent Motion for Leave to File Third Amended Complaint. Each newly pleaded count supplies the supporting authority and specific factual allegations that the Court identified as previously lacking.

## I. INTRODUCTION

1. Plaintiff Rosa Maria Cabrera Thompson brings this action for employment discrimination, retaliation, civil rights conspiracy, racketeering, fraud, tortious interference, and related claims arising from a coordinated, multi-institutional scheme to blacklist her from public school employment in Washington State in retaliation for exercising her federally protected rights and incorporates all previous exhibits and complaints.
2. This is not a routine employment dispute. It is a documented, timestamped, enterprise-level operation involving two public school districts, a shared risk management pool, two law firms with cross-district billing relationships, and at least fifteen named individual actors — all working through shared technological infrastructure to permanently exclude a highly qualified Black and Hispanic school administrator from public employment because she filed complaints with the EEOC.
3. The core facts, now supported by documentary and deposition evidence, are as follows:



ROSA MARIA CABRERA THOMPSON, P.O. BOX 275, MAPLE VALLEY, WA 98038

4. On October 26, 2023, Plaintiff entered into a binding EEOC Settlement Agreement and Separation Agreement with Mukilteo School District ("MSD") that contained enforceable non-retaliation, neutral reference, and no-investigation provisions effective immediately upon execution. On November 20, 2023, Seattle Public Schools ("SPS") formally offered Plaintiff an assistant principal position at Garfield High School, which Plaintiff accepted. On November 29, 2023 — 43 days after the settlement — Shannon Ragonesi, an attorney simultaneously under contract with both MSD (through Washington Schools Risk Management Pool, "WSRMP") and SPS, placed a voicemail for MSD's HR Executive Director Simone Neal, initiating a chain of retaliatory reference interference that culminated in the revocation of Plaintiff's accepted job offer on December 7, 2023.
5. The scheme did not end there. On March 21, 2024, SPS's own HR department formally accepted Plaintiff into the 2024-25 Assistant Principal Pool, granting her "direct access" to apply for AP openings anticipated mid-April. Fourteen days later, on April 4, 2024, SPS Executive Director Misa Garmoe issued a written directive to flag Plaintiff's profiles in SPS's NEOGOV and SAP applicant tracking systems — explicitly and in writing connecting the flagging to Plaintiff's pending EEOC complaint: "Demetrice/Sandy are processing the EEOC Complaint." Plaintiff was permanently and invisibly excluded from every AP position posted thereafter.
6. Separately, attorneys Mark Filipini and Shelby Stoner of K&L Gates LLP — which billed both MSD and SPS for legal services — drafted a scripted reference response directing Plaintiff's former supervisor Stephen Shurtleff to communicate, in coded professional language, that Plaintiff's reference was subject to "advice of counsel," signaling legal concern to SPS HR while purporting to comply with the neutral reference obligation of the

settlement agreement. On February 23, 2024, Filipini and Stoner submitted a post-settlement investigation report to the EEOC in direct violation of Clause 8 of the separation agreement.

7. On February 3, 2025 — one day after Plaintiff filed her pre-suit tort claim — SPS employee Ayrian Hastings created a calendar task directing herself to add Plaintiff's claim to Origami Risk, WSRMP's cloud-based claims management system, and to update the litigation log with communications from SPS's outside counsel. This entry establishes that SPS employees had direct write access to WSRMP's shared claims infrastructure, directly contradicting deposition testimony that only WSRMP's internal team could access the system.

8. The result of this coordinated enterprise has been the systematic denial of over 175 employment opportunities across Washington State — including 17 within SPS alone — to a highly qualified educator with doctoral and law degrees, twelve years of school leadership experience, and an unblemished professional record.

9. Plaintiff brings this action for compensatory damages, punitive damages, injunctive relief, and all other remedies available under federal and Washington law.

## II. PARTIES

### A. PLAINTIFF

10. Plaintiff Dr. Rosa Maria Cabrera Thompson is a Black and Hispanic woman of Afro-Caribbean descent and Latina national origin. She is a United States citizen residing in King County, Washington. She holds a Juris Doctor degree, a doctoral degree in education, and Washington State licensure as a teacher, principal, and superintendent. She has over twelve years of public school leadership experience in Washington State



ROSA MARIA CABRERA THOMPSON, P.O. BOX 275, MAPLE VALLEY, WA 98038

and is a member of multiple protected classes under Title VII of the Civil Rights Act of 1964 and the Washington Law Against Discrimination. Plaintiff, Dr. Rosa M. Cabrera Thompson, is a Black and Hispanic female and a highly qualified educator and school administrator with over twelve years of school leadership experience. She belongs to multiple protected classes under federal and state law, including race, national origin, and prior engagement in protected activities such as filing charges with the U.S. Equal Employment Opportunity Commission (EEOC). Plaintiff applied for numerous leadership positions with Seattle Public Schools and consistently met or exceeded all listed qualifications. Plaintiff is a resident of King County, Washington.

11. Plaintiff filed a Standard Tort Claim Form with SPS via certified mail pursuant to RCW 4.96.020. More than sixty days have elapsed since receipt of that claim. All administrative prerequisites to filing suit have been satisfied. This Court confirmed at Dkt. No. 156, p. 15–16, that Plaintiff's tort claim satisfied her statutory obligation under RCW 4.96.020.

**B. DEFENDANTS**

12. Defendant Seattle Public Schools ("SPS") is a public school district organized under the laws of the State of Washington, with its principal offices located at 2445 3rd Avenue South, Seattle, Washington 98134. SPS is an employer within the meaning of Title VII, 42 U.S.C. § 2000e(b), and the Washington Law Against Discrimination, RCW 49.60.040.

13. Defendant Washington Schools Risk Management Pool ("WSRMP") is a risk management pool providing legal defense, claims management, and investigation services to member school districts in Washington State, including Mukilteo School District. WSRMP maintains a cloud-based claims management system, Origami Risk, accessible to member

districts and their designated personnel. WSRMP has been formally joined as a defendant in this action pursuant to the Court's Order granting Plaintiff's Joinder Motion, Dkt. No. 155.

14. Defendant Misa Garmoe is, and at all relevant times was, Executive Director of Employee and Association Relations at SPS, employed at 2445 3rd Avenue South, Seattle, Washington 98134. On April 4, 2024, Defendant Garmoe issued a written directive to flag Plaintiff's profiles in NEOGOV and SAP, explicitly tying the action to Plaintiff's pending EEOC complaint. She is sued individually and in her official capacity.

15. Defendant John Cerqui is, and at all relevant times was, deputy general counsel retained for SPS. His email address was jcerqui@seattleschools.org. On April 2, 2024, Defendant Cerqui forwarded an email to Garmoe with the subject line "Quick Update on Cabrera Thompson — Attorney/Client and Work Product Privileged," triggering the retaliatory flagging directive. He is also connected to the Origami Risk entry made by Defendant Hastings on February 3, 2025. He resigned from the district. He is sued individually.

16. Defendant Libby Simeon is, and at all relevant times was, HR Senior Analyst in SPS's Labor and Employee Relations department. On April 4, 2024 at 5:11 P.M., Defendant Simeon executed Garmoe's flagging directive by merging Plaintiff's two NEOGOV profiles and placing flags in NEOGOV and SAP. She is sued individually.

17. Defendant Sarah J. Pritchett is, and at all relevant times was, an SPS HR employee copied on the April 4, 2024 flagging email chain. She is sued individually. Her full individual capacity liability will be assessed in discovery.

18. Defendant Ayrian L. Hastings is, and at all relevant times was, an SPS employee with write access to WSRMP's Origami Risk cloud-based claims management system. On

February 3, 2025, she created a calendar task directing herself to add Plaintiff's claim to WSRMP's Origami Risk cloud system and updating the litigation log in connection with SPS's deputy general counsel — establishing that SPS employees possess write access to WSRMP's shared enterprise infrastructure, directly contradicting Morgenthaler's deposition testimony. She is sued individually.

19. Defendant Dr. Tarance Hart is, and at all relevant times was, Principal of Garfield High School within SPS. He offered Plaintiff the substitute assistant principal position on November 20, 2023; revoked it on December 7, 2023 following improper reference communications with MSD and SPS personnel; submitted false statements to the EEOC regarding Plaintiff's application; and submitted a sworn Private Device Affidavit on or about July 17, 2025 that is directly contradicted by call log evidence. He is sued individually.

20. Defendant Sharonda Willingham is, and at all relevant times was, Principal of SPS's Interagency High School. Willingham and Defendant Simone Neal share a deep and longstanding personal relationship that predates their Washington State careers: the two worked together as high school English teachers in the same academic department at Baltimore County Public Schools in Maryland; they subsequently lived together in the Washington, D.C. metropolitan area; and they later relocated to Washington State, where they shared a residence before separating their households. This is not a relationship of professional acquaintances — it is a close personal relationship spanning many years. On November 29, 2023 — the same day Ragonesi called Neal. On December 1, 2023 — at 10:12 A.M. Willingham called Neal and left a five-second voicemail, exactly twenty-one minutes before Hart left his first reference voicemail for Shurtleff at 10:33 A.M. At 10:30



ROSA MARIA CABRERA THOMPSON, P.O. BOX 275, MAPLE VALLEY, WA 98038

A.M. Neal placed a 37-minute telephone call to Willingham, an SPS insider with direct knowledge of SPS's assistant principal hiring processes. At 10:38 A.M. Stephen Shurtleff calls Neal to inform her of Hart's call and voicemail. Shurtleff leaves a nine (9) second voicemail. The call with Willingham ends at 11:07 A.M. After receiving an email from Shurtleff about Hart's call and request for reference check, at 11:25 A.M. Neal calls Hart and leaves a voicemail. At 12:50 P.M. Hart calls Neal and leaves a 54 second voicemail. At 3:52 P.M. Neal calls Hart, the call last one (1) minute and fifty-six (56) seconds. Fifty-three (53) seconds later Neal calls Ragonesi. At 3:57 P.M. Neal calls Anne Feaster, Risk Management Pool Manager. At 4:00 P.M. Neal calls Kirk Barney, MSD HR Director. The depth and duration of the Neal-Willingham personal relationship renders Neal's deposition denial of any connection between these calls and Plaintiff's SPS application implausible. She is sued individually.

21. Defendant Shannon Ragonesi is an attorney at Keating, Bucklin & McCormack, P.C. ("KBM"). From February 2, 2023 through February 28, 2024, she was retained by WSRMP to represent MSD in an employment investigation matter involving Plaintiff. From September 1, 2023 through Present, she was simultaneously under contract with SPS as outside counsel. On November 29, 2023, she placed a 40-second voicemail for MSD's HR Executive Director Simone Neal, allegedly initiating the reference interference chain that caused Plaintiff's job offer to be revoked. She has made judicial admissions that the call she made to Neal was about plaintiff and the insurance claim (Dkt. No. 87-1). The circumstances raise a serious question as to why a panel attorney for WSRMP—retained solely to investigate claims arising during Plaintiff's employment—initiated contact with a Human Resources executive regarding Plaintiff forty-three (43) days after her resignation



ROSA MARIA CABRERA THOMPSON, P.O. BOX 275, MAPLE VALLEY, WA 98038

and post-EEOC settlement. This conduct is inconsistent with established protocol. As confirmed by the deposition testimony of Holly Morgenthaler, investigations and related billing activity are not to continue once the claimant has resigned or the matter has otherwise been resolved. She is sued individually.

22. Defendant Simone Neal was, at all relevant times, Executive Director of Talent and Human Resources at MSD. She was a signatory to and had full knowledge of the EEOC settlement and separation agreement. Prior to their respective Washington State careers, Neal and Defendant Willingham taught together in the same department at Baltimore County Public Schools in Maryland, lived together in the Washington, D.C. metropolitan area, and relocated to Washington State together, sharing a residence before separating their households. She conducted a reference call with Hart on December 1, 2023 in violation of Clause 7; called Ragonesi 53 seconds after that call ended; and called Willingham (SPS) for 37 minutes on December 1, 2023. She is sued individually.

23. Defendant Stephen Shurtleff was, at all relevant times, Principal of Kamiak High School within MSD and Plaintiff's most recent direct supervisor. On December 1, 2023, nine seconds after receiving Hart's reference voicemail, he called Simone Neal rather than responding directly to Hart — routing the reference request into the MSD coordination channel. He thereafter transmitted to SPS HR a scripted reference response drafted by K&L Gates attorney Mark Filipini that stated he could not answer the reference survey due to "advice of counsel," communicating adverse legal concerns about Plaintiff to SPS HR in violation of Clause 7 of the separation agreement. He is sued individually.

24. Defendant Mark Filipini is an attorney at K&L Gates LLP. At all relevant times, Filipini served as counsel for MSD. K&L Gates also billed SPS for legal services during the same

period. Filipini had full knowledge of the EEOC settlement and separation agreement, including Clause 7 (neutral reference) and Clause 8 (no further investigation). He drafted the scripted reference response transmitted by Shurtleff to SPS HR, and was involved in submitting a barred post-settlement investigation report to the EEOC on February 23, 2024 in violation of Clause 8. He is sued individually.

25. Defendant Shelby Stoner is an attorney at K&L Gates LLP. At all relevant times, Stoner served as co-counsel for MSD, with full knowledge of the separation agreement. Neal called Stoner on November 29, 2023, at approximately 2:01 P.M. Stoner allegedly contacted Ragonesi. Ragonesi contacted Neal at 2:37 P.M. left a forty (40) second voicemail. That same day Shurtleff calls Neal at 4:10 P.M. leaves a 3 second voicemail. Neal calls Ragonesi at 4:11 P.M. She participated in the scripted reference chain and co-submitted the February 23, 2024, barred post-settlement investigation report to the EEOC. She is sued individually.

26. Defendant K&L Gates LLP is a law firm that, at all relevant times, simultaneously represented MSD (via WSRMP) and billed SPS for legal services. It is liable as an entity under respondeat superior for the tortious acts of Filipini and Stoner within the scope of their representation, and as a participant in the RICO enterprise described herein. They are sued as a corporation.

27. Defendant Keaton, Bucklin, & McCormack LLP is a law firm that, at all relevant times, simultaneously represented MSD (via WSRMP) and billed SPS for legal services. It is liable as an entity under respondeat superior for the tortious acts of Ragonesi within the scope of their representation, and as a participant in the RICO enterprise described herein.

28. Defendant Ann Feaster was, at all relevant times, Risk Management & Loss Control Coordinator within MSD who also allegedly had access to Origami Risk to make entries per Simone Neal's deposition testimony. On November 29, 2023, at 1:55 p.m., Neal placed a call to Feaster lasting approximately four (4) minutes. On December 1, 2023, at 3:52 p.m., Neal placed a call to Hart lasting one (1) minute and fifty-six (56) seconds. Immediately thereafter, at 3:55 p.m., Neal contacted Ragonesi, followed by another call to Feaster at 3:57 p.m., which lasted eleven (11) seconds. This sequence reflects a highly unusual and tightly clustered pattern of communications occurring both in close temporal proximity to Plaintiff's reference check with Hart and immediately following it. The timing and coordination of these calls render the pattern highly suspicious and indicative of potential coordinated conduct. She is sued individually.

29. Defendant Patty Dowd was, at all relevant times, the assistant superintendent of MSD. She signed the separation agreement on October 17, 2023, and knew of clause 7 and 8. She also was aware of the EEOC agreement that prohibited retaliation. Despite that knowledge she directed the ongoing investigation beyond October 17, 2023, and funded drafts and revisions of the barred investigation report that was fraudulently submitted to the EEOC, a federal agency. When funds ran out for the claim, she directed that invoices be sent to her for payment. She approved those payments and used district funds to further fund retaliation against Plaintiff. She is sued individually.

30. Defendant Krista Slosburg is an attorney at Stokes Lawrence. At all relevant times, Slosburg served as investigator for MSD/WSRMP and KBM, with full knowledge of the separation agreement cease investigation clause. Slosburg drafted the January 11, 2024, and February 23, 2024, revised investigation report that was provided to KBM, Ragonesi,

MSD, WSRMP, Neal, Dowd, Brynelson, Stoner, and Filipini. She indirectly participated in the February 23, 2024, barred post-settlement investigation report that was fraudulently submitted to the EEOC—a federal agency. She is sued individually.

31. Defendant Alison Brynelson, was, at all relevant times, the superintendent for MSD. She was aware of all of the agreements in place, supervised Dowd and failed to stop her from funding the retaliation Dowd, Filipini, Stoner, Shurtleff, Neal, and all others under her supervision engaged in. She is sued individually.

32. Defendant Stokes Lawrence is a law firm that, at all relevant times, simultaneously represented MSD (via WSRMP) and billed WSRMP and KBM for legal services. It is liable as an entity under respondeat superior for the tortious acts of Slosburg within the scope of their representation, and as a participant in the RICO enterprise described herein.

33. Defendants Does 1 through 25, inclusive, are persons or entities whose true names and capacities are currently unknown to Plaintiff. Does 1 through 5 are SPS employees who technically executed or approved the NEOGOV/SAP profile merger and flagging beyond Simeon's confirmed actions. Does 6 through 10 are WSRMP board members or senior officers who approved post-settlement investigation funding and attorney retention without conflict checks. Does 11 and 12 are the SPS HR employees ("Demetrice Lewis" and "Sandra Philbrook") identified in Garmoe's April 4, 2024 email as the designated processors of Plaintiff's EEOC complaint. Does 13 through 16 are MSD employees Patrick Haggerty, Sasha Fraliegh, Tory Kartchner, and Kirk Barney, who allegedly made unauthorized reference communications to SPS in violation of Clause 7. Does 17 through 19 are additional K&L Gates attorneys involved in the SPS billing relationship and/or the scripted reference or investigation report. Does 20 through 21 are technology

administrators who granted SPS employees write access to Origami Risk. Does 22 are Washington Education Agency. Does 23 through 25 are additional SEA union members/president Girard Montejo-Thompson and SPS administrators involved in decisions affecting Plaintiff's applications and hiring process. Plaintiff will amend this complaint to state their true names when ascertained.

## III. JURISDICTION AND VENUE

34. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question), 42 U.S.C. § 1983 (civil rights), 18 U.S.C. § 1964(c) (civil RICO), and 42 U.S.C. § 2000e-5(f) (Title VII).

35. This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over all state law claims, which arise from the same common nucleus of operative facts as Plaintiff's federal claims. Therefore, Plaintiff also invokes this Court's supplemental jurisdiction under 28 U.S.C. § 1367(a) over all state law claims, which arise from the same common nucleus of operative facts as her federal claims.

36. Venue is proper in the Western District of Washington under 28 U.S.C. § 1391(b) because all acts and omissions giving rise to Plaintiff's claims occurred within this district, Defendants SPS and WSRMP maintain their principal operations within this district, and the individual defendants acted within this district.

37. Plaintiff timely exhausted her administrative remedies by filing EEOC charges against SPS (Charge No. 551-2024-03024) on January 19, 2024, and received a Right to Sue letter which she filed on the docket and the Court acknowledged it in Dkt. 156.

## IV. FACTUAL ALLEGATIONS



ROSA MARIA CABRERA THOMPSON, P.O. BOX 275, MAPLE VALLEY, WA 98038

38. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

**A. Background: Plaintiff's Qualifications and Protected Activity**

39. Plaintiff Dr. Rosa Maria Cabrera Thompson is a highly qualified public school administrator with over fourteen years of combined assistant principal and principal experience in Washington State school districts. She holds a Juris Doctor degree, a doctoral degree in education, and Washington State licensure as a teacher, principal, and superintendent. Plaintiff is a Black and Hispanic woman of Afro-Caribbean descent and Latina national origin. She has over 12 years of school leadership experience and had settled a prior EEOC retaliation claim against Mukilteo School District before applying to SPS. Her race, ethnicity, and national origin were known or knowable to Defendant based on her name, public background, and hiring documents.

40. Beginning in 2020, Plaintiff was employed as an assistant principal at Kamiak High School within MSD. During her tenure, she experienced race and national origin discrimination and retaliation, which she reported through protected EEOC channels.

41. In April 2023, Plaintiff filed an EEOC charge against MSD (Charge No. 551-2023-03533) alleging discrimination, retaliation, and hostile work environment. The EEOC investigated the charge.

42. On October 16, 2023 (fully executed by the EEOC on October 26, 2023), Plaintiff and MSD entered into a binding EEOC Settlement Agreement and Separation Agreement. The agreements contained the following material provisions: (a) Clause 7: MSD and its agents were required to provide only neutral references consisting of dates of employment, title held, and salary — nothing more; and (b) Clause 8: MSD and its agents were required to immediately cease all investigation activity into Plaintiff's conduct upon execution of the



ROSA MARIA CABRERA THOMPSON, P.O. BOX 275, MAPLE VALLEY, WA 98038

agreement, effective October 16, 2023. These provisions were binding on MSD, its officers, employees, agents, attorneys, and any entity acting on its behalf.

43. WSRMP — the shared risk management pool and litigation funder for MSD — was never given a copy of the settlement agreement. WSRMP Claims Consultant Holly Morgenthaler testified at deposition on January 29, 2026 that she was never provided a copy of the settlement or separation agreement; she was never informed Plaintiff had resigned or settled; she never directed Ragonesi or K&L Gates to cease any activity after October 17, 2023; she would have done so had she been informed; WSRMP had no internal protocol requiring conflict-check procedures applicable to its retained law firms; and WSRMP received no conflict-check reports from KBM or K&L Gates regarding those firms' simultaneous representations of MSD and SPS during the relevant period. As a result of WSRMP's total absence of conflict protocols and failure to communicate the settlement's existence to its own personnel, investigation and reference interference activity continued for months after it was contractually required to stop.

**B. Plaintiff's Application to and Hiring by Seattle Public Schools**

44. On October 19, 2023, and again on October 23, 2023, Plaintiff applied for SPS Job Bulletin No. 21921 for a substitute assistant principal position. On October 23 and 24, 2023, four professional references submitted highly favorable electronic reference forms on Plaintiff's behalf, including Cory West (teacher, Kamiak HS), Dr. Toron Woolridge (Executive Director, Austin ISD), Sharrethia Anderson (Administrative Assistant, Kamiak HS), and Dr. Brian Schultz (Assistant Superintendent, Shoreline Public Schools). All four references strongly recommended Plaintiff and expressed they would hire her for a leadership role.



ROSA MARIA CABRERA THOMPSON, P.O. BOX 275, MAPLE VALLEY, WA 98038

45. Plaintiff also applied for SPS Job Bulletin No. 23237. She passed initial screening for both positions and was extended interviews.

46. On November 13, 2023, Dr. Tarance Hart, Principal of Garfield High School, emailed Plaintiff identifying her as a strong candidate and inviting her to interview for an immediate interim assistant principal opening. Plaintiff promptly accepted.

47. On November 15, 2023, Plaintiff completed a phone interview with Dr. Hart. Dr. Hart expressed strong interest and invited Plaintiff to an in-person interview with his administrative team.

48. On November 16, 2023, Plaintiff attended an in-person interview at Garfield High School. Dr. Hart and his team evaluated Plaintiff's qualifications, including her experience with teacher evaluation frameworks (CEL 5D and Danielson), her AP Coordinator experience, and her ability to start immediately. At the conclusion of the interview, Dr. Hart offered Plaintiff the choice of beginning as a substitute assistant principal while transitioning to the interim role in January 2024. Plaintiff accepted.

49. On November 16, 2023, Hart emailed SPS HR Manager Demetrice Lewis asking about Plaintiff's clearance. Lewis confirmed external candidates required a 'reference check from most recent supervisor.' A separate candidate, J. Lorca, was cleared through a Labor and Employee Relations channel not involving an MSD reference check, establishing that Plaintiff was subjected to a reference process not applied to other candidates.

50. On November 20, 2023 at 11:45 AM, Dr. Hart formally offered Plaintiff the position of Substitute Assistant Principal at Garfield High School for the period November 27 through December 15, 2023. Plaintiff accepted in writing at 11:57 AM that same day, confirming her start date of November 27, 2023 at 7:45 AM. A binding employment

contract was formed. This Court confirmed that Plaintiff's offer and acceptance created an enforceable contract at Dkt. No. 156, p. 19.

51. Following the offer, SPS HR required additional steps. Plaintiff complied with all requests, including completing a criminal background check, submitting a Washington State Sexual Misconduct Disclosure form, and completing fingerprinting on November 29, 2023. Plaintiff passed all clearance requirements.

**C. WSRMP's Conflict-Check Failures and the Reference Interference Chain**

52. Shannon Ragonesi of KBM was simultaneously under contract as WSRMP/MSD's retained investigator-attorney from February 2, 2023 through February 28, 2024, and as SPS's outside counsel from September 1, 2023 through August 31, 2024. This dual representation created a direct conflict of interest: she represented the district against which Plaintiff had just settled an EEOC complaint and simultaneously represented the district that was considering, offering, and then revoking Plaintiff's employment.
53. WSRMP had no internal conflict-check protocol applicable to its retained law firms, as established by Morgenthaler's deposition testimony. WSRMP never received a conflict-check disclosure from KBM regarding Ragonesi's simultaneous SPS representation. WSRMP never received a conflict-check disclosure from K&L Gates regarding that firm's concurrent billing relationship with SPS. This total absence of conflict protocols is the structural deficiency that allowed the reference interference to proceed. Without it, Ragonesi could not have weaponized her dual access to both districts to Plaintiff's detriment.
54. On November 29, 2023 at 2:37 P.M. — 43 days after the EEOC settlement — Ragonesi placed a 40-second voicemail to Neal about Plaintiff. This call was placed while



ROSA MARIA CABRERA THOMPSON, P.O. BOX 275, MAPLE VALLEY, WA 98038

Ragonesi was simultaneously SPS's outside counsel and while Plaintiff's accepted employment offer was pending. Ragonesi's knowledge of Plaintiff's SPS employment status in her SPS-counsel capacity, combined with her MSD/WSRMP mandate to manage Plaintiff's EEOC-related matter, made this call a direct weaponization of her dual representation.

55. On November 29, 2023, Neal placed a 37-minute 32-second telephone call to Sharonda Willingham, Principal of SPS's Interagency High School. As described in the Parties section above, Neal and Willingham share a documented personal history spanning years of shared employment, shared housing, and shared relocation. A 37-minute telephone call between former housemates now holding complementary positions at adjacent school districts, on the same afternoon Ragonesi called Neal, is coordination — not coincidence.

56. On November 30, 2023, Neal called Shurtleff (39-second voicemail) and Shurtleff returned her call (19-second voicemail). Cross-district HR coordination between MSD's Executive HR Director and Plaintiff's former supervisor occurred while Clause 7's neutral-reference obligation was in full effect.

**C. The EEOC Settlement Agreement Is Violated: The WSRMP-Ragonesi-Neal-Willingham-Hart Network**

57. From February 2, 2023 through February 28, 2024, Shannon Ragonesi of KBM was retained by WSRMP to represent MSD in an employment investigation matter involving Plaintiff. Simultaneously, from September 1, 2023 through August 31, 2024, Ragonesi was under contract with SPS as outside legal counsel. These dual engagements made Ragonesi the legal representative of both the referring district (MSD) and the hiring district (SPS) during the exact period Plaintiff was being considered for, offered, and then denied employment at SPS.

58. Holly Morgenthaler was the WSRMP claims consultant assigned to the MSD matter. In her deposition on January 29, 2026, Morgenthaler testified that she was never provided a copy of the EEOC settlement or separation agreement, never informed that Plaintiff had resigned, never told Ragonesi or the investigating firm to cease activity after October 17, 2023, and would have done so had she known. She confirmed that once an employee separates, there is no reason to continue an investigation. Despite this, WSRMP continued to approve and pay invoices for post-settlement investigation activity through at least February 2024.

59. On November 29, 2023 at 2:37 PM — 43 days after the EEOC settlement had been executed — Ragonesi placed a 40-second voicemail for Simone Neal, MSD's Executive Director of Talent and Human Resources. This call was made while Ragonesi was simultaneously under contract as SPS's outside legal counsel and while Plaintiff's offer acceptance was pending with SPS. Ragonesi later admitted during a meet-and-confer on June 24, 2025, that the voicemail was about Plaintiff.

60. On the same day, November 29, 2023, Simone Neal placed a telephone call to Sharonda Willingham, Principal of SPS's Interagency High School, which lasted 37 minutes and 32 seconds. Neal's own call log confirms this call. This was not a call between strangers or professional contacts: Neal and Willingham have known each other for many years, having worked together as teachers in the same academic department at Baltimore County Public Schools in Maryland, lived together in the Washington, D.C. metropolitan area, and later relocated to Washington State together, sharing a residence before separating their households. Willingham was an SPS insider with direct knowledge of SPS's assistant principal hiring processes, including the reference check requirements for that role. Neal

had no legitimate professional reason to contact Willingham regarding Plaintiff's reference — which had not yet been formally requested by SPS at the time of this call. Neal denied any connection between this call and Plaintiff's SPS application, but the timing — on the same afternoon Ragonesi called Neal, and the same day Neal's supervisor Shurtleff would begin the reference coordination sequence — combined with the 37-minute duration and the depth of the personal relationship, makes that denial implausible. A 37-minute call between lifelong friends and former housemates, both now holding key positions in adjacent school districts, on the precise day that a mutual former colleague's employment at one of those districts was being sabotaged, is not coincidence. It is coordination.

61. At 4:10 PM on November 29, 2023, Stephen Shurtleff, Principal of Kamiak High School and Plaintiff's most recent supervisor, called Neal and left a message. Neal had been prompted by Ragonesi's earlier voicemail.

62. On November 29, 2023 at 7:39 PM, Dr. Hart emailed Plaintiff stating that a reference check from her most recent supervisor (Shurtleff) was required and requesting alternative contact information. Plaintiff had already listed Shurtleff as a reference on both of her SPS applications, submitted on October 19 and November 23, 2023, including his work email and direct school landline.

63. On November 30, 2023, Neal called Shurtleff and left a 39-second voicemail. Shurtleff called Neal back and left a 19-second voicemail. These communications between MSD's HR executive and Plaintiff's former supervisor occurred while the neutral reference obligation of Clause 7 was in effect.

**<u>D. The K&L Gates Scripted Reference: Coded Adverse Communication</u>**

64. Shurtleff forwarded SPS HR's electronic reference survey to Neal. Neal forwarded it to Mark Filipini and Shelby Stoner of K&L Gates — the firm simultaneously serving as MSD's defense counsel while billing SPS for legal services. Filipini had full knowledge of Clause 7's neutral-reference obligation at the time.

65. Filipini drafted a scripted reference response directing Shurtleff to tell SPS HR that he could not answer the reference survey because the matter was subject to 'advice of counsel.' Shurtleff transmitted this scripted response to SPS HR. The phrase 'advice of counsel' in a professional reference context communicates a universally understood signal to experienced human resources professionals: the former employee is the subject of ongoing legal dispute, liability, or risk. This communication goes far beyond the neutral dates-and-title reference required by Clause 7. Filipini drafted this language with full knowledge of its professional effect. It is defamation per se.

**D. The Filipini/K&L Gates Scripted Reference: A Coded Adverse Communication**

66. During the reference check period, Demetrice Lewis, SPS's HR Senior Analyst, sent an electronic reference survey request to Shurtleff. Shurtleff forwarded this request to Simone Neal. Neal forwarded it to Mark Filipini and Shelby Stoner of K&L Gates LLP, who were serving as MSD's counsel. K&L Gates also billed SPS for legal services during the same period.

67. Both Filipini and Stoner had full knowledge of the EEOC settlement and separation agreement, including Clause 7's neutral reference requirement and Clause 8's prohibition on investigation activity. Despite this knowledge, Filipini drafted a scripted response and directed Shurtleff to send it to SPS HR. The scripted response stated, in substance, that



ROSA MARIA CABRERA THOMPSON, P.O. BOX 275, MAPLE VALLEY, WA 98038

Shurtleff could not answer the reference survey because the matter had been "part of recent emphasis from our HR team on reference checks and the advice of counsel."

68. Shurtleff transmitted this scripted response to SPS HR. The phrase "advice of counsel" in the context of a professional reference check communicates a universally understood signal to HR professionals: that the former employee is the subject of ongoing legal concern, dispute, or liability. This signal goes far beyond the neutral reference required by Clause 7. Filipini drafted this language with full knowledge of the effect it would have on any experienced HR professional who received it.

69. On December 1, 2023 at 10:33 AM, Hart called Shurtleff on his work phone and left a 45-second voicemail. Nine seconds later, at 10:38 AM, Shurtleff called Simone Neal — rather than returning Hart's call — routing the reference request directly into the MSD coordination channel. At 11:25 AM, Neal called Hart. At 11:34 AM, Neal emailed Hart confirming she was calling on behalf of Shurtleff and providing contact information.

70. On December 1, 2023 at 10:12 AM — twenty-one minutes before Hart left his 10:33 AM voicemail for Shurtleff — Sharonda Willingham called Simone Neal and left a five-second voicemail. This sequencing establishes that Willingham was aware of and participating in the coordination of the reference process before it was officially underway from SPS's side.

71. On December 1, 2023 at 3:52 PM, Neal and Hart spoke by telephone for 1 minute and 56 seconds. Neal later testified she provided only neutral information — dates of employment and title — but Dr. Hart's December 7, 2023 email states that his decision was made "after reaching out for a reference check with your previous district" and that he "was able to speak to someone" whose communication caused him to decide not to move forward. A

reference call confirming only dates and title would not cause the immediate revocation of an accepted offer from a candidate with four strong references.

72. On December 1, 2023 at 3:55 PM — 53 seconds after ending the call with Hart — Neal called Ragonesi. The content of this call is protected by a claimed privilege, but its timing — precisely 53 seconds after completing the Hart reference call — establishes that Neal reported back to WSRMP's counsel the substance of what she had communicated to SPS's principal. This 53-second interval is not a coincidence. It is coordination.

## E. The December 1 Six-Call Coordination Sequence

73. On December 1, 2023 at 10:12 A.M. — twenty-one minutes before Hart initiated the formal reference sequence by calling Shurtleff at 10:33 A.M. — Willingham called Neal and left a five-second voicemail. Willingham's advance-coordination call establishes that SPS insider involvement in the reference process preceded the official reference request.

74. At 10:33 A.M., Hart called Shurtleff and left a 45-second voicemail. Nine seconds later, Shurtleff called Neal — not Hart back — routing the reference request directly into the MSD coordination channel. At 11:25 A.M., Neal called Hart. At 11:34 A.M., Neal emailed Hart confirming she was 'calling on behalf of Principal Shurtleff' and was 'happy to assist.' Neal thereby inserted herself as MSD's reference provider for Plaintiff's candidacy, in direct violation of Clause 7.

75. At 3:52 P.M., Neal and Hart spoke by telephone for 1 minute and 56 seconds. Hart's December 7, 2023 email states this reference call caused his decision to not move forward. A neutral reference confirming only dates of employment and job title would not cause the immediate revocation of an accepted offer from a candidate with four strong positive electronic references. The gap between Neal's claimed testimony and



ROSA MARIA CABRERA THOMPSON, P.O. BOX 275, MAPLE VALLEY, WA 98038

Hart's contemporaneous reaction is the proof that Neal communicated materially adverse professional information.

76. At 3:55 P.M. — 53 seconds after ending her call with Hart — Neal called Ragonesi. This 53-second interval completes the enterprise feedback loop: the attorney who initiated the reference interference chain received real-time confirmation of its result from the MSD HR Director who executed it.

77. At 3:57 P.M. — seconds after ending her call with Ragonesi — Neal called Feaster who was the Risk Management & Loss Control Coordinator within MSD. The call lasted eleven (11) seconds.

78. At 4:00 P.M. — minutes after ending her call with Feaster — Neal called Barney who was the Human Resources Director within MSD. The call lasted six (6) seconds.

**E. Revocation of Plaintiff's Accepted Employment Contract**

79. On December 7, 2023 at 9:04 PM, Dr. Hart emailed Plaintiff stating: "After reaching out for a reference check with your previous district, I was able to speak to someone. We have decided not to move forward with your application for this role. This decision was made after careful consideration. We have decided to go another route with filling the role."

80. Dr. Hart did not identify who he spoke to at Plaintiff's previous district, nor did he explain what information he received. He did not consider Plaintiff's four submitted electronic references, all of which were strongly positive. He did not follow up on Plaintiff's offer to provide further documentation or evaluations.

81. At 9:46 PM on December 7, 2023, Plaintiff responded, thanking Hart, asking whom he spoke with, and offering to provide performance documentation including proof of no reprimands or write-ups during her tenure at MSD. Hart never responded to this email.

82. The revocation followed directly on the heels of the Ragonesi-Neal call sequence, the scripted Shurtleff response, and the Neal-Hart reference call — all of which occurred in violation of the EEOC settlement's Clause 7 and Clause 8 protections.

83. Hart later submitted false statements to the EEOC misrepresenting the nature of the reference check. On July 17, 2025, Hart executed a sworn Private Device Affidavit declaring no responsive communications on any personal device — a representation directly and comprehensively contradicted by call logs showing personal phone use during the November 29 through December 1, 2023 period for the precise reference-related communications at issue.

**F. Post-Revocation Protected Activity and Continued Retaliation**

84. On January 19, 2024, Plaintiff filed new EEOC charges against both SPS and MSD (Charge No. 551-2024-03024) alleging retaliation in connection with the rescinded job offer. On the same date, Plaintiff filed a formal complaint with the U.S. Department of Education Office for Civil Rights.

85. On February 6, 2024, Plaintiff applied to the SPS Assistant Principal Pool for 2024-25.

86. On February 26, 2024, SPS received notice from the U.S. Department of Education, OCR, confirming that a formal complaint against the district had been referred to the EEOC Seattle Field Office.

87. On February 28, 2024, Ragonesi "closed her file" with WSRMP — two days after both SPS and MSD received the OCR letter. The file closure was reactive to legal exposure, not a routine administrative close.

88. On February 23, 2024, Mark Filipini and Shelby Stoner of K&L Gates submitted an investigation report to the EEOC in proceedings related to Plaintiff's claims against MSD.



ROSA MARIA CABRERA THOMPSON, P.O. BOX 275, MAPLE VALLEY, WA 98038

This submission occurred more than four months after Clause 8 required all investigation activity to cease on October 17, 2023. Both attorneys had full knowledge of the separation agreement at the time of submission. The joint investigation report bearing a date of January 11, 2023 — which is chronologically impossible given that Ragonesi was not retained until February 2, 2023 — is more likely dated January 11, 2024, which would place its creation three months after Clause 8 required all investigation activity to cease. Both the K&L Gates investigation report and the misdated Ragonesi report establish a coordinated, cross-firm pattern of post-settlement investigative activity.

89. On March 21, 2024 at 8:19 AM, SPS Human Resources formally notified Plaintiff via its NEOED applicant tracking system that she had been accepted into the "2024-25 School Leader Assistant Principal Pool." The email stated: "Acceptance into the pool grants you direct access to apply for school-specific openings for the upcoming 24-25 academic year." SPS anticipated posting AP openings "mid April" and directed Plaintiff to apply separately for each school-specific position. This official acceptance confirmed that SPS's own qualification processes had affirmatively determined Plaintiff was qualified for AP positions — a determination made while her January 2024 EEOC charges against SPS were pending.

**G. The April 4, 2024 Flagging Directive: Retaliatory Blacklisting in Writing**

90. On March 21, 2024 at 8:19 A.M., SPS HR formally notified Plaintiff via NEOED that she had been accepted into the '2024-25 School Leader Assistant Principal Pool' and was granted 'direct access to apply for school-specific openings anticipated mid-April.' This constitutes a government-conferred property interest in AP Pool access under Board of Regents v. Roth, 408 U.S. 564 (1972).



ROSA MARIA CABRERA THOMPSON, P.O. BOX 275, MAPLE VALLEY, WA 98038

91. On April 2, 2024 at 4:10 PM, SPS outside counsel John Cerqui forwarded an email to Misa Garmoe, SPS Executive Director of Employee and Association Relations, with the subject line "Quick Update on Cabrera Thompson — Attorney/Client and Work Product Privileged." The body of Cerqui's message was redacted in production. Plaintiff alleges that the crime-fraud exception to attorney-client privilege applies to this communication because it was used in furtherance of an unlawful retaliatory scheme, and seeks in camera review pursuant to United States v. Zolin, 491 U.S. 554 (1989).

92. On April 4, 2024 at 9:49 AM — exactly fourteen days after SPS had formally accepted Plaintiff into the AP Pool — Misa Garmoe sent an email to HR Senior Analyst Libby Simeon (copied to Sarah Pritchett) directing: "Please put a flag on her in Neogov AND SAP if she is in there. I believe he was just an applicant. Her full name on applications is.... Dr. Rosa M. Cabrera Thompson. Demetrice/Sandy are processing the EEOC Complaint." This email constitutes direct, documentary evidence of retaliatory blacklisting motivated explicitly by Plaintiff's protected EEOC activity. Garmoe's linkage of the flagging directive to the EEOC complaint processing in the same sentence eliminates any non-retaliatory explanation for the action.

93. On April 4, 2024 at 5:11 PM, Libby Simeon responded to Garmoe confirming execution of the directive: "Just double checking that application attached is who we are referring to since the name is different. This person appears to have 2 neogov profiles which we will combine, the attached application comes from the more recently used profile." Simeon's response establishes that: (a) Plaintiff's two NEOGOV profiles were consolidated into a single flagged record; (b) flags were placed in both NEOGOV and SAP; and (c) the

merger ensured that all future SPS applications, under any name variant, would be captured and flagged.

94. Following the April 4, 2024 flagging, Plaintiff attempted to apply for the AP positions she had been accepted to pursue per the March 21, 2024 acceptance letter. After the flag was placed, no AP positions were visible to Plaintiff in the NEOGOV portal. The only positions Plaintiff could see and apply for were principal positions — for which SPS informed her on April 17, 2024 that she was ineligible for the 2024-25 school year. Plaintiff was effectively forced to apply for a pool she had been excluded from while being prevented from applying for the pool she had been formally accepted into. Every AP position posted by SPS after April 4, 2024 for the 2024-25 academic year represents a discrete lost employment opportunity caused directly by the retaliatory flag.

95. From October 19, 2023 through March 29, 2024 and continuing thereafter, Plaintiff applied for at least 17 leadership positions within SPS and was not selected for any of them. She applied for positions at Franklin High School, John Hay Elementary, Washington Middle School, Olympic Hills Elementary, Wing Luke Elementary, John Rogers Elementary, Hamilton International Middle School, Fairmount Park Elementary, Rainier Beach High School, Kimball Elementary, and McGilvra Elementary, among others. None resulted in an interview.

**H. Hart's False Sworn Affidavit**

96. On July 17, 2025, SPS produced a Private Device Affidavit executed by Dr. Tarance Hart under penalty of perjury, in which he declared that he possessed no texts, emails, or other data responsive to Plaintiff's discovery requests on any private device used in connection with his public employment. Call logs produced in discovery directly contradict this sworn

statement, showing that Hart used his personal phone to initiate and receive multiple calls and voicemails between November 29 and December 1, 2023, including communications with Neal and Shurtleff — the very reference communications that caused Plaintiff's offer to be revoked. Hart's false affidavit constitutes perjury and was designed to prevent discovery of his personal device communications.

**I. The Origami Risk Entry: SPS Accesses WSRMP's Shared Infrastructure**

97. On February 3, 2025 at 11:55 PM — one day after Plaintiff filed her pre-suit tort claim with SPS on February 2, 2025 — SPS employee Ayrian L. Hastings created a personal calendar task (DEF_002817) directing herself to: "Add Rosa Cabrera Thompson claim to Origami and update lit log and emails to and from JC re same." ("JC" refers to John Cerqui, SPS's outside counsel.) This entry establishes that: (a) SPS employees had write access to WSRMP's Origami Risk cloud-based claims management system — directly contradicting Morgenthaler's deposition testimony that only WSRMP's internal team could access it; (b) SPS entered Plaintiff's litigation claim into WSRMP's shared infrastructure, making her claim status visible to the WSRMP enterprise network; (c) the Origami Risk entry was linked to communications between Hastings and Cerqui — the same deputy general counsel who triggered the April 4, 2024 flagging directive; and (d) SPS's first institutional response to Plaintiff's tort claim was to activate WSRMP's claims management infrastructure. Cerqui resigned from SPS in approximately April 2025 after plaintiff filed and served this federal lawsuit.

98. Since October 2023, Plaintiff has submitted over 175 applications to school districts across Washington State. Despite her qualifications, she has received no offers and the only job she had as a substitute assistant principal was revoked without due process. Multiple

finalist-level processes ended abruptly following reference checks or unexplained disqualifications, demonstrating a pattern of retaliatory interference traceable to the WSRMP enterprise and Origami Risk infrastructure.

## V. LEGAL CLAIMS

99. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein. Each count below employs the Issue/Rule/Analysis/Conclusion structure for each claim and each element.

### COUNT ONE: EMPLOYMENT DISCRIMINATION UNDER WASHINGTON LAW AGAINST DISCRIMINATION (RCW 49.60.180)

Against Defendant Seattle Public Schools

100. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein. Plaintiff is a Black and Hispanic woman of Afro-Caribbean descent and national origin (Latina). These racial and national characteristics constitute protected classes under the Washington Law Against Discrimination (WLAD). Plaintiff's rejection for employment was motivated, at least in part, by this protected status. Plaintiff meets all four elements: Because plaintiff is a racial minority and had previously filed an EEOC complaint against the Mukilteo School District for discrimination and retaliation and had prior protected activity under Title VII was known to Seattle Public Schools before her many rejections for employment by Seattle Public Schools. Plaintiff was highly qualified, having served as an assistant principal and principal for over a decade in multiple districts. Plaintiff met all job requirements and received multiple positive references, including one from a direct supervisor, Dr. Brian Schultz (Assistant Superintendent, Shoreline Public Schools). Plaintiff was offered the substitute assistant principal position at Garfield High School by Dr. Hart on November 20, 2023. Seattle Public Schools took

Adverse Employment Actions: On December 7, 2023, Plaintiff was denied employment after Seattle Public Schools improperly conducted a reference check with the Mukilteo School District. Dr. Hart failed to consider multiple positive references that were provided, including three strong electronic references and letters of recommendation. Dr. Hart misrepresented facts regarding Plaintiff's application process to justify the adverse decision. SPS did not complete its hiring process in a fair and neutral manner, allowing subjective concerns to outweigh Plaintiff's superior qualifications. Inference of Discrimination: Plaintiff's only neutral reference according to Dr. Hart was from Mukilteo School District, where plaintiff had previously filed an EEOC claim and reached a settlement due to retaliation and discrimination. Seattle Public Schools used Mukilteo's limited response (dates of employment) as justification to deny Plaintiff employment, despite a long record of exemplary service and superior qualifications compared to the hired candidate (Ms. Manuel, who had significantly less administrative experience). Seattle Public Schools' failure to verify positive references, along with shifting explanations for not hiring Plaintiff, suggests a pretextual and discriminatory hiring decision. Seattle Public School's handling of reference checks appears inconsistent, favoring some applicants over others.

101. The Washington Law Against Discrimination ("WLAD") makes it an unfair practice for an employer to refuse to hire, discharge, bar from employment, or otherwise discriminate in compensation or other terms and conditions of employment on the basis of protected characteristics, including race and national origin. RCW 49.60.180. WLAD also separately prohibits retaliation against a person because that person opposed

practices forbidden by chapter 49.60 RCW or participated in proceedings under the chapter. RCW 49.60.210.

102. Plaintiff is a Black and Hispanic woman of Afro-Caribbean descent and alleges protected status on the basis of race, ethnicity, and national origin. Plaintiff also engaged in protected activity by filing EEOC charges against MSD and SPS.

103. Plaintiff was highly qualified for the positions she applied for, having served as an assistant principal and principal for over twelve years with exemplary evaluations.

104. SPS took adverse employment actions against Plaintiff, including revoking Plaintiff's accepted offer on December 7, 2023; denying Plaintiff consideration for at least seventeen subsequent positions; accepting Plaintiff into the AP Pool on March 21, 2024, and then removing or blacklisting her from applicant tracking systems on April 4, 2024 with the EEOC complaint identified as the reason; and limiting Plaintiff's visibility into positions while permitting access only to positions for which she was ineligible.

105. These adverse actions occurred under circumstances giving rise to an inference of discrimination and retaliation, including that SPS hired a less qualified candidate over Plaintiff; Hart submitted allegedly false statements to the EEOC regarding Plaintiff's reference compliance; the April 4, 2024 Garmoe email expressly connects the blacklisting to EEOC processing when she directs staff to flag her in SAP and NEOGOV; and no similarly situated non-EEOC complainant was subjected to comparable treatment.



ROSA MARIA CABRERA THOMPSON, P.O. BOX 275, MAPLE VALLEY, WA 98038

106. As a direct and proximate result of SPS's discriminatory and retaliatory conduct, Plaintiff suffered loss of income, lost career opportunities, reputational harm, and emotional distress in amounts to be proven at trial.

107. Plaintiff brings this count for discrimination on the basis of race and national origin and for retaliation for protected activity under WLAD.

108. Under WLAD, Plaintiff may prove discrimination through circumstantial evidence using the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under that framework, a plaintiff generally must show membership in a protected class, qualification for the position, an adverse employment action, and circumstances giving rise to an inference of discrimination. Domingo v. Boeing Emps.' Credit Union, 124 Wn. App. 71, 98 P.3d 1222 (2004). For retaliation claims, Plaintiff generally must show protected activity, an adverse action, and a causal connection between the two. Allison v. Hous. Auth. of City of Seattle, 118 Wn.2d 79, 821 P.2d 34 (1991); Chen v. State, 86 Wn. App. 183, 937 P.2d 612 (1997).

109. Plaintiff's race and alleged national origin place her within protected classes under WLAD. RCW 49.60.180.

110. Plaintiff was qualified for the positions at issue based on her twelve-plus years of AP and principal experience, doctoral degree, J.D., Washington licensure, and favorable references.

111. Plaintiff suffered adverse employment actions when SPS revoked her accepted offer, denied her consideration for multiple positions, and removed or blacklisted her in applicant tracking systems after initially placing her in the AP Pool.

112. The inference of discrimination and retaliation is supported by the April 4, 2024, Garmoe email, which links the blacklist action to the EEOC complaint, as well as by the alleged false statements to the EEOC, the hiring of a less qualified candidate, and the absence of similar treatment of non-complainants. Under Scrivener v. Clark College, 181 Wn.2d 439, 334 P.3d 541 (2014), a plaintiff need not disprove every employer explanation at the prima facie stage; evidence that the protected characteristic or protected activity was a substantial factor is sufficient to create a triable issue.

113. Plaintiff is entitled to all remedies available under RCW 49.60.030. This Court confirmed she had a valid enforceable contract at Dkt. No. 156, p. 19. Plaintiff establishes a prima facie case of discrimination and retaliation under WLAD as to each adverse employment action. SPS's documented retaliatory motive precludes any legitimate-reason defense. Plaintiff seeks all remedies available under RCW 49.60.030.

## **COUNT TWO: EMPLOYMENT DISCRIMINATION UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 (42 U.S.C. § 2000e-2)**

Against Defendant Seattle Public Schools

114. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

115. Title VII prohibits employers from failing or refusing to hire, discharging, or otherwise discriminating against any individual with respect to compensation, terms, conditions, or privileges of employment because of race, color, religion, sex, or national

origin. 42 U.S.C. § 2000e-2(a)(1). Plaintiff is a member of a protected class based on her race (Black), ethnicity (Hispanic), gender (female), and national origin (Latina). The discriminatory actions taken by SPS occurred after it learned of Plaintiff's protected status and past EEOC activity, and involved treatment less favorable than similarly situated white candidates. Plaintiff engaged in a protected activity by filing an EEOC complaint against the Mukilteo School District. Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006) – Held that retaliation claims under Title VII are broadly construed to protect employees from adverse actions following a complaint of discrimination. Robinson v. Shell Oil Co., 519 U.S. 337 (1997)– Established that retaliation protections extend to individuals who engage in protected activity, including prior complaints against other employers Seattle Public Schools was aware of this activity through direct communication from the EEOC after I filed a claim against them. Seattle Public Schools took an adverse action by rescinding the employment opportunity on December 7, 2023, citing a reference check that provided only dates of employment and no substantive concerns. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) – Established the burden-shifting framework for proving discrimination under Title VII,where an employer’s shifting or inconsistent justifications can be evidence of pretext for discrimination. Hanna v. WCI Communities, Inc., 348 F. Supp. 2d 1322 (S.D. Fla. 2004) – Held that a rescinded job offer based on pretextual reasons constitutes an adverse employment action under Title VII. SPS hired Ms. Manuel, a less qualified candidate who lacked Plaintiff’s extensive administrative experience. Texas Dep’t of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981) – Clarified that disparate treatment occurs when a qualified candidate is overlooked in favor of a less qualified candidate. Rudin v. Lincoln Land Cmty. Coll., 420 F.3d 712 (7th Cir. 2005) –

Held that hiring a less qualified candidate over a more qualified candidate with positive references constitutes evidence of discriminatory intent. SPS failed to consider multiple positive references and hired a less qualified candidate (Ms. Manuel) over Plaintiff, who had more experience, stronger qualifications, and endorsements from previous supervisors. SPS selected a less qualified candidate despite Plaintiff's superior experience, training, and leadership background. Plaintiff received three (3) positive electronic references, including one from a direct former supervisor (Dr. Brian Schultz, Assistant Superintendent, Shoreline Public Schools). The Plaintiff was subjected to an arbitrary and unfair hiring process, which constitutes an equal protection violation. Ash v. Tyson Foods, Inc., 546 U.S. 454 (2006) – The Supreme Court ruled that when a clearly more qualified candidate is passed over, it supports an inference of discrimination. Lomax v. Sears, Roebuck & Co., 202 F.3d 1050 (8th Cir. 2000) – Found that hiring a less qualified candidate in a discriminatory hiring process constitutes a Title VII violation. Seattle Public Schools provided shifting and false justifications for not hiring Plaintiff, demonstrating pretext for discrimination. SPS first cited a lack of reference response as the reason for rescinding the job offer. Later, Dr. Hart falsely claimed that Plaintiff failed to provide her most recent supervisor as a reference, despite evidence in the application showing Mr. Shurtleff's inclusion. *Reeves v. Sanderson Plumbing Prods*., Inc., 530 U.S. 133 (2000) – Held that employers who provide inconsistent or false explanations for an adverse action create an inference of pretext for discrimination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993) – Established that when an employer's explanation for an adverse action is false, discrimination may be inferred. Dr. Hart's statements to the EEOC contained material misrepresentations, including false claims that Plaintiff failed to list her most recent supervisor and that she

pressured for a quick start date before a reference check could be completed. The record confirms Plaintiff provided all required references and offered additional documentation proactively. Hicks v. St. Mary's Honor Center, 970 F.2d 487 (8th Cir. 1992) – Found that employers who knowingly misrepresent facts to justify an adverse decision are engaging in pretextual discrimination. The actual record confirms that Plaintiff provided all required references, and that Seattle Public Schools failed to make reasonable efforts to verify her positive recommendations. The hiring of a less qualified candidate demonstrates discriminatory intent. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133 (2000) – Held that employers who provide inconsistent or false explanations for an adverse action create an inference of pretext for discrimination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993) – Established that when an employer's explanation for an adverse action is false, discrimination may be inferred.

116. SPS is an employer within the meaning of 42 U.S.C. § 2000e(b). Plaintiff is a member of protected classes under Title VII, including race and, as applicable, national origin.

117. Plaintiff alleges facts giving rise to an inference of unlawful discrimination, including the revocation of Plaintiff's accepted offer after contact with MSD, Plaintiff's strong electronic references, SPS's selection of a less qualified candidate, and false statements made by Hart that support an inference that SPS's stated reasons were pretextual. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133 (2000).

118. Plaintiff suffered damages as set forth above.

119. Title VII, 42 U.S.C. § 2000e-2(a)(1), makes it unlawful for an employer to fail or refuse to hire an individual because of race, color, or national origin. Circumstantial discrimination claims are commonly analyzed under the McDonnell Douglas burden-



ROSA MARIA CABRERA THOMPSON, P.O. BOX 275, MAPLE VALLEY, WA 98038

shifting framework. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Plaintiff also exhausted administrative remedies by filing EEOC Charge No. 551-2024-03024 and receiving a right-to-sue notice.

120. Plaintiff’s race and, as applicable, national origin are protected characteristics under Title VII.

121. Plaintiff was qualified for the position based on her experience and credentials. Identical qualifications as set forth under Count One. Hart's pre-revocation communications confirm Plaintiff's qualifications exceeded what SPS typically required for the role.

122. Plaintiff was rejected despite those qualifications when SPS revoked the offer and denied subsequent opportunities. Offer revoked December 7, 2023. Denied 17+ subsequent positions. AP Pool access eliminated April 4, 2024. Each is a discrete adverse action under Title VII.

123. The circumstances alleged, including the hiring of a less qualified candidate and false statements by SPS representatives, support an inference that SPS’s stated reasons were pretextual. Hart's false EEOC statements constitute pretext under *Reeves*. The Garmoe email directly states the retaliatory motive — eliminating any legitimate-reason defense for all post-April 2024 denials.

124. Plaintiff therefore plausibly states a Title VII discrimination claim. Two separate adverse actions with two separate documented causal chains — both traceable to Plaintiff's race and protected EEOC activity. EEOC exhaustion confirmed. Plaintiff states a valid Title VII discrimination claim.



ROSA MARIA CABRERA THOMPSON, P.O. BOX 275, MAPLE VALLEY, WA 98038

**COUNT THREE: BREACH OF CONTRACT (Against Defendant Seattle Public Schools)**

125. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

126. On November 20, 2023, SPS offered Plaintiff the substitute assistant principal position at Garfield High School for November 27 through December 15, 2023, and Plaintiff accepted the offer in writing. Under Washington law, a sufficiently definite offer and acceptance may create an enforceable contract. *Pierce v. Bill & Melinda Gates Found.*, 15 Wn. App. 2d 419, 475 P.3d 312 (2020).

127. Plaintiff performed all conditions required of her, including completing background checks, fingerprinting, required paperwork, and confirming her start date. She was ready, willing, and able to perform.

128. SPS breached the agreement on December 7, 2023, by revoking the accepted offer without lawful justification.

129. As a direct result of SPS's breach, Plaintiff suffered damages, including the value of the contract term and other reasonably foreseeable losses. To the extent SPS willfully withheld wages earned and due under the contract, Plaintiff seeks statutory remedies under RCW 49.52.050 and RCW 49.52.070.

130. Under Washington law, breach of contract requires (1) a valid contract, (2) breach, and (3) damages. *Corner Computing Sols. v. Google LLC*, 750 F. Supp. 3d 1208, 1214 (W.D. Wash. 2024). A definite employment offer accepted by the applicant may create



ROSA MARIA CABRERA THOMPSON, P.O. BOX 275, MAPLE VALLEY, WA 98038

an enforceable contract. *Pierce v. Bill & Melinda Gates Found*., 15 Wn. App. 2d 419, 475 P.3d 312 (2020). Washington's wage-penalty statutes permit double damages only for willful withholding of wages owed under contract. RCW 49.52.050, .070; *Schilling v. Radio Holdings, Inc.*, 136 Wn.2d 152, 960 P.2d 1259 (1998).

131. Plaintiff alleges that SPS made a definite offer, Plaintiff accepted it, and the position and pay were sufficiently specific to form a contract. Plaintiff further alleges that SPS revoked the offer after acceptance. SPS revoked the accepted contract on December 7, 2023, without lawful justification, in violation of SPS Board Policy 5000, on the basis of an unlawful process that violated the law. Those facts plausibly state breach. This Court confirmed she had a valid enforceable contract at Dkt. No. 156, p. 19.

132. Plaintiff also alleges damages flowing from the revocation, including lost pay for the contract term. Any claim for double damages must be limited to wages actually earned and willfully withheld, if proven, and not to all consequential losses.

133. Plaintiff plausibly states a breach-of-contract claim, but the request for double damages must be narrowed to any wages actually owed and willfully withheld under Washington's wage statutes.

## **COUNT FOUR: VIOLATION OF THE WASHINGTON PUBLIC RECORDS ACT (RCW 42.56)**

Against Defendant Seattle Public Schools

134. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.



ROSA MARIA CABRERA THOMPSON, P.O. BOX 275, MAPLE VALLEY, WA 98038

135. SPS is an agency subject to the Washington Public Records Act, RCW 42.56. On January 5, 2024, Plaintiff submitted a public records request seeking employment- and reference-related records. SPS delayed production, failed to produce records on the dates previously promised, and ultimately closed the request without full disclosure.

136. Newly discovered evidence, including the Garmoe flagging email, the Hastings Origami calendar entry, and internal HR communications concerning Plaintiff's NEOGOV profiles, raises a factual issue whether those records were responsive to Plaintiff's request and were wrongfully withheld.

137. Under RCW 42.56.550(4), a prevailing requester is entitled to reasonable attorney fees and costs, and the court may award a discretionary daily penalty of up to $100 for each day the requester was denied access to requested records. The amount of any penalty is guided by the factors identified in Yousoufian v. Office of Ron Sims, 168 Wn.2d 444, 229 P.3d 735 (2010).

138. The PRA requires prompt disclosure of nonexempt public records, RCW 42.56.030, .520, and authorizes fees, costs, and discretionary daily penalties for a prevailing requester, RCW 42.56.550(4). An inadequate search may violate the PRA. Neighborhood Alliance of Spokane County v. Spokane County, 172 Wn.2d 702, 261 P.3d 119 (2011).

139. Plaintiff alleges that SPS repeatedly postponed production, failed to make promised installment productions, and closed the request without full disclosure. Plaintiff further alleges that certain records later produced in litigation discovery were responsive to the request and existed in SPS's custody at the time of the request.



ROSA MARIA CABRERA THOMPSON, P.O. BOX 275, MAPLE VALLEY, WA 98038

140. Plaintiff alleges a plausible PRA violation and seeks attorney fees, costs, and discretionary penalties under RCW 42.56. 550(4).

**COUNT FIVE: VIOLATION OF DUE PROCESS (PROCEDURAL AND SUBSTANTIVE) — 42 U.S.C. § 1983**

Against Defendants Seattle Public Schools, Misa Garmoe, Dr. Tarance Hart, Sarah J. Pritchett, John Cerqui, Libby Simeon, and Does 11 and 12

141. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

142. As to Violations of Procedural Due Process — 42 U.S.C. § 1983, Plaintiff re-alleges the foregoing paragraphs.

143. Defendants acted under color of state law at all relevant times. Plaintiff possessed constitutionally protected property interests in her accepted employment contract and, to the extent supported by written policy, formal assurances, or mutually explicit understandings, her continued eligibility for and access to the AP Pool. See *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972); *Perry v. Sindermann*, 408 U.S. 593, 601–02 (1972).

144. Defendants deprived Plaintiff of those interests by rescinding her accepted position and restricting or removing her AP Pool access through flags on SAP and NEOGOV. Defendants did so without providing Plaintiff constitutionally adequate notice, an explanation of the evidence against her, or a meaningful opportunity to respond before the deprivation, and without a prompt post-deprivation hearing. See *Cleveland Bd. of*

*Educ. v. Loudermill*, 470 U.S. 532, 542–46 (1985); *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

145. As a direct and proximate result, Plaintiff suffered loss of employment, lost wages and benefits, and other damages.

146. As to Violations of Substantive Due Process — 42 U.S.C. § 1983, Plaintiff realleges the preceding paragraphs.

147. Defendants, acting under color of state law, engaged in arbitrary and conscience-shocking conduct by intentionally depriving Plaintiff of protected employment interests for retaliatory and improper reasons, without any legitimate governmental justification. Such conduct violated substantive due process. See County of Sacramento v. Lewis, 523 U.S. 833, 846–47 (1998).

148. Plaintiff had a constitutionally protected property interest in her accepted employment contract with SPS. On November 20, 2023, SPS offered Plaintiff the Substitute Assistant Principal position in writing, Plaintiff accepted the offer in writing, and the offer included definite terms including the position title, compensation, and anticipated start date. Plaintiff further alleges that this Court has already recognized the contract as enforceable. SPS could not rescind the agreement absent lawful process and a valid contractual basis.

149. Plaintiff further alleges that SPS affirmatively granted her written AP Pool access on March 21, 2024, including direct access to apply for school-specific AP vacancies. To the

extent SPS policy or written assurances limited removal of that access to specified circumstances, Plaintiff had a legitimate claim of entitlement to continued access.

150. On December 7, 2023, Dr. Hart revoked Plaintiff's accepted employment contract without prior notice, without giving Plaintiff an opportunity to respond to the underlying reference information, and without providing Plaintiff a hearing or a meaningful explanation.

151. On or about April 4, 2024, Misa Garmoe and Libby Simeon altered Plaintiff's employment profile and removed or restricted her AP Pool access when they flagged her in SAP and NEOGOV without prior notice, without an opportunity to contest the action, and without a hearing.

152. Defendants' actions deprived Plaintiff of protected property interests without constitutionally adequate notice and an opportunity to be heard.

153. No pre-deprivation notice of either the reference concerns or the ATS flagging. No opportunity to respond to the reference information before the contract was revoked. No hearing. No disclosed reason for the AP Pool access revocation. Both deprivations were accomplished in secret, without Plaintiff's knowledge, for an explicitly stated unconstitutional motive. These deprivations violated both procedural due process (no notice or opportunity to be heard) and the constitutional prohibition on arbitrary government action.

154. As a direct and proximate result, Plaintiff suffered loss of employment opportunities, loss of earnings, and related damages.



ROSA MARIA CABRERA THOMPSON, P.O. BOX 275, MAPLE VALLEY, WA 98038

155. As a direct and proximate result, Plaintiff suffered damages. Plaintiff seeks relief under 42 U.S.C. § 1983 for violation of her procedural due process rights.

156. Plaintiff states valid procedural and substantive due process claims against all named defendants for deprivation of two distinct, documented property interests without constitutionally required process. The Garmoe email establishes both the due process violation and the equal protection violation in a single document.

## COUNT SIX: VIOLATION OF EQUAL PROTECTION — 42 U.S.C. § 1983

Against Defendants Seattle Public Schools, Misa Garmoe, Dr. Tarance Hart, Sarah J. Pritchett, John Cerqui, Libby Simeon, and Does 11 and 12

157. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

158. Defendants, acting under color of state law, intentionally treated Plaintiff differently from similarly situated applicants because of her race and Hispanic/Latina ethnicity or national origin. Plaintiff is Black and Hispanic. She was subjected to heightened scrutiny, excluded from hiring opportunities, and flagged in SPS employment systems in a manner not imposed on similarly situated applicants.

159. Plaintiff, as a Black and Hispanic woman who had filed EEOC complaints, was singled out for discriminatory treatment not applied to similarly situated applicants: she was subjected to additional scrutiny, rejected despite superior qualifications, and systematically excluded from employment opportunities through a secretly maintained ATS flag that no other applicant was subjected to based on a single referenced government complaint.



ROSA MARIA CABRERA THOMPSON, P.O. BOX 275, MAPLE VALLEY, WA 98038

160. On April 4, 2024, Defendant Garmoe wrote: "Please put a flag on her in Neogov AND SAP... Demetrice/Sandy are processing the EEOC Complaint." That statement is direct evidence that Plaintiff's exclusion was motivated, at least in part, by her protected complaints and by impermissible discriminatory animus. Defendants Hart, Pritchett, Cerqui, Simeon, and Does 11 and 12 knew of, approved, implemented, or ratified the flagging and exclusion. The April 4, 2024 Garmoe email is documentary proof that the differential treatment was motivated by Plaintiff's protected class status and protected activity — in the same sentence. No rational basis exists for flagging a government employee in an applicant tracking system on the grounds that the government is processing her civil rights complaint.

161. Defendants' actions lacked any legitimate nondiscriminatory justification and caused Plaintiff to lose access to employment opportunities, including AP positions posted after April 4, 2024, for which she would otherwise have been eligible and considered.

162. As a direct and proximate result, Plaintiff suffered lost wages, lost employment opportunities, emotional distress, and other damages.

163. The Equal Protection Clause prohibits a public employer from intentionally treating a person differently because of race or national origin. Washington v. Davis, 426 U.S. 229 (1976); Village of Arlington Heights v. Metropolitan Housing Dev. Corp., 429 U.S. 252 (1977). Discriminatory intent may be shown through direct or circumstantial evidence, including statements by decisionmakers, departures from normal procedures, and disparate treatment of similarly situated persons. Arlington Heights, 429 U.S. at 266–68. By contrast, a class-of-one theory generally does not apply in the public employment context. Engquist v. Oregon Dep't of Agric., 553 U.S. 591 (2008).

164. Plaintiff, a Black and Hispanic woman, was intentionally treated differently from similarly situated applicants because of her race and Hispanic ethnicity or national origin. Defendants subjected her to additional scrutiny, excluded her from hiring opportunities, and placed a secret ATS flag on her applicant records that was not imposed on similarly situated applicants.

165. The April 4, 2024 Garmoe email is direct evidence that Defendants' actions were tied to Plaintiff's protected complaints and support an inference of discriminatory and retaliatory motive. The email states: "Please put a flag on her in Neogov AND SAP... Demetrice/Sandy are processing the EEOC Complaint."

166. Defendants had no legitimate nondiscriminatory justification for flagging Plaintiff in SPS hiring systems because she had filed EEOC complaints and because of her race and national origin.

167. Similarly situated applicants, including other AP Pool members and applicants processed through the same hiring system, were not flagged, not merged, and not excluded from consideration in the same manner.

168. Defendants' actions were motivated, at least in part, by Plaintiff's race, Hispanic ethnicity or national origin, and protected complaints.

169. The flagging and exclusion caused Plaintiff to lose access to AP positions posted after April 4, 2024, for which she was otherwise eligible and qualified.

170. Defendants Garmoe, Hart, Pritchett, Cerqui, Simeon, and Does 11 and 12 knew of, directed, implemented, or ratified the discriminatory treatment.

171. As a result of Defendants' conduct, Plaintiff suffered lost wages, lost employment opportunities, and other damages.

172. Plaintiff states a valid equal protection claim supported by direct written evidence of discriminatory motive from a named SPS executive, operationally implemented by named defendants Garmoe, Hart, Pritchett, Cerqui, Simeon, and Does 11 and 12.

**<u>COUNT SEVEN: FIRST AMENDMENT RETALIATION — 42 U.S.C. § 1983</u>**

Against Defendants Seattle Public Schools, WSRMP (Authorized by Court Order, Dkt. No. 156, Mar. 31, 2026) and now Misa Garmoe, John Cerqui, Tarance Hart, Libby Simeon, and Does 11 and 12

173. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

174. Plaintiff engaged in constitutionally protected petitioning activity by filing EEOC charges, an OCR complaint, and a pre-suit tort claim seeking redress for alleged discrimination and retaliation. See *Borough of Duryea v. Guarnieri*, 564 U.S. 379 (2011); *Alpha Energy Savers, Inc. v. Hansen*, 381 F.3d 917 (9th Cir. 2004).

175. Defendants took adverse actions against Plaintiff, including revoking her accepted offer, denying her further employment opportunities, and placing or maintaining a hidden applicant-tracking flag that prevented her from being fairly considered for SPS positions. These actions would chill a person of ordinary firmness from continuing to engage in protected activity. See *Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 827 (9th Cir. 2020).



ROSA MARIA CABRERA THOMPSON, P.O. BOX 275, MAPLE VALLEY, WA 98038

176. The causal connection between Plaintiff's protected activity and Defendants' adverse actions is supported by direct documentary evidence, including the April 4, 2024 email stating that "Demetrice/Sandy are processing the EEOC Complaint." That statement supports an inference that Plaintiff's protected activity was a substantial or motivating factor in the challenged conduct. See *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977); *Mendocino Env't Ctr. v. Mendocino Cnty.*, 14 F.3d 457 (9th Cir. 1994).

177. Defendants Seattle Public Schools, WSRMP, Misa Garmoe, John Cerqui, Tarance Hart, Libby Simeon, Does 11 and 12, and others acting under color of state law participated in, directed, ratified, or knowingly maintained the retaliatory conduct.

178. As a direct and proximate result, Plaintiff suffered lost wages, lost employment opportunities, emotional distress, and other damages.

179. Plaintiff engaged in constitutionally protected speech and petition activity by filing EEOC charges against MSD (April 2023) and against MSD and SPS (January 19, 2024). The act of filing an EEOC complaint is a matter of public concern protected by the First Amendment. Plaintiff filed EEOC Charge No. 551-2023-03533 (April 2023), EEOC Charge No. 551-2024-03024 against SPS (January 19, 2024), an OCR complaint (January 19, 2024), and a pre-suit tort claim (February 2, 2025). All constitute protected First Amendment petition activity.

180. Defendants took materially adverse actions against Plaintiff in direct response to this protected activity: Hart revoked the accepted offer in December 2023; Garmoe directed



ROSA MARIA CABRERA THOMPSON, P.O. BOX 275, MAPLE VALLEY, WA 98038

the NEOGOV/SAP flag in April 2024, explicitly citing the EEOC complaint; Simeon executed the flag; and Cerqui allegedly triggered the flagging directive through his April 2, 2024 communication. Defendants' conduct would chill a person of ordinary firmness from continuing to assert civil rights.

181. The Garmoe email establishes direct documentary evidence of retaliatory motive — the causal connection between the protected activity and the adverse action is not merely inferred but stated in Garmoe's own words.

182. The Garmoe email states: 'Demetrice/Sandy are processing the EEOC Complaint.' The protected activity is not inferred as a motive — it is stated as the motive in the adverse actor's own words. Court found the claim adequately pleaded at Dkt. No. 156, p. 8–9, noting the claim extends beyond December 2023 to the 17+ subsequent denials. Post-motion discovery now provides direct documentary proof rather than temporal proximity alone.

183. Count Seven was GRANTED by Dkt. No. 156. All elements are met. Post-motion discovery strengthens the already-adequate pleading with direct written evidence of retaliatory motive. Each Assistant Principal position denial after April 4, 2024 is an independently compensable injury.

## COUNT EIGHT: RETALIATION UNDER TITLE VII (42 U.S.C. § 2000e-3(a))

Against Defendant Seattle Public Schools and WSRMP (Authorized by Court Order, Dkt. No. 156, Mar. 31, 2026)

184. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

185. Plaintiff engaged in protected activity by filing EEOC charges, participating in EEOC proceedings, and opposing discrimination by SPS and MSD through civil-rights complaints. See 42 U.S.C. § 2000e-3(a); Crawford v. Metro. Gov't of Nashville & Davidson Cnty., 555 U.S. 271 (2009).

186. To state a Title VII retaliation claim, Plaintiff must plead (1) participation in protected activity under 42 U.S.C. § 2000e-3(a); (2) a materially adverse action that might have dissuaded a reasonable worker from making or supporting a charge of discrimination; and (3) a causal connection between the protected activity and the adverse action. See *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *Nassar*, 570 U.S. 338; *Westendorf v. W. Coast Contractors of Nev., Inc.,* 712 F.3d 417, 421 (9th Cir. 2013). Causation may be shown through temporal proximity, direct statements, or other circumstantial evidence. See *Coszalter v. City of Salem*, 320 F.3d 968 (9th Cir. 2003); *Villiarimo v. Aloha Island Air, Inc*., 281 F.3d 1054 (9th Cir. 2002); *Kama v. Mayorkas*, 107 F.4th 1054, 1059 (9th Cir. 2024).

187. SPS subjected Plaintiff to materially adverse actions, including revoking an accepted employment offer, denying Plaintiff further positions, and placing or maintaining an applicant-tracking flag that concealed or eliminated Plaintiff's access to the Assistant Principal Pool and other SPS opportunities. These actions would dissuade a reasonable worker from making or supporting a discrimination charge. See *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).



ROSA MARIA CABRERA THOMPSON, P.O. BOX 275, MAPLE VALLEY, WA 98038

188. A causal connection exists between Plaintiff's protected activity and the challenged conduct. The chronology shows that the flagging and subsequent non-selection occurred after Plaintiff's protected complaints; the April 4, 2024 Garmoe email expressly referenced processing the EEOC complaint; and the repeated denials formed a continuing pattern of exclusion. See *Nassar*, 570 U.S. 338; *Coszalter v. City of Salem*, 320 F.3d 968 (9th Cir. 2003); *Villiarimo v. Aloha Island Air*, Inc., 281 F.3d 1054 (9th Cir. 2002); *Kama v. Mayorkas*, 107 F.4th 1054, 1059 (9th Cir. 2024).

189. Plaintiff alleges that Defendants acted with retaliatory intent and that the protected activity was the but-for cause of the adverse actions, or at minimum a substantial factor supporting the inference of retaliation at the pleading stage.

190. The causal connection is established by: (a) temporal proximity — the Garmoe flag came fourteen days after the AP Pool acceptance, both on the heels of the Cerqui "Quick Update" communication; (b) the Garmoe email's explicit statement of motive; and (c) the pattern of systematic exclusion traceable to the reference interference network. The Garmoe flag placed 14 days after AP Pool acceptance and directly on the heels of EEOC charge routing to Garmoe, Cerqui, and Lewis. Garmoe's own words link the flag to EEOC complaint processing.

191. The Court's prior order did not adjudicate the merits unless it expressly granted judgment; at most, it found the claim sufficiently pleaded to proceed. Plaintiff relies on that order as procedural support, not as conclusive proof of liability. Count Eight was GRANTED by Dkt. No. 156. All elements are met with both temporal and direct documentary evidence of retaliatory causation.



ROSA MARIA CABRERA THOMPSON, P.O. BOX 275, MAPLE VALLEY, WA 98038

**COUNT NINE: BREACH OF EEOC SETTLEMENT AGREEMENT — AGENCY AND RATIFICATION THEORY**

Against Defendants Seattle Public Schools, Washington Schools Risk Management Pool, KBM, K&L Gates, Mark Filipini, Shelby Stoner, Stephen Shurtleff and Shannon Ragonesi

192. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

193. Under Washington law, a plaintiff asserting breach of a settlement agreement must plead a valid contract, breach, causation, and damages. See *Badgett v. Sec. State Bank*, 116 Wn.2d 563, 807 P.2d 356 (1991); *Hearst Commc'ns, Inc. v. Seattle Times Co*., 154 Wn.2d 493, 115 P.3d 262 (2005). A non-signatory may be bound through agency, apparent authority, or ratification where the facts show that the actor was authorized to act for the principal, that the actor's knowledge is imputable to the principal, or that the principal knowingly accepted the benefits of the unauthorized act. See Restatement (Third) of Agency §§ 2.01, 4.01, 5.03; *Moss v. Vadman*, 77 Wn.2d 396, 463 P.2d 159 (1969); *Chemical Bank v. Wash. Pub. Power Supply Sys*., 102 Wn.2d 874, 691 P.2d 524 (1984).

194. On October 26, 2023, Plaintiff and MSD entered into a valid EEOC Settlement Agreement and Separation Agreement resolving Plaintiff's discrimination claims. The agreement required, among other things, that MSD provide neutral references and refrain from further investigation or retaliation in violation of Clauses 7 and 8. The agreement expressly bound MSD and its officers, employees, agents, and attorneys.

195. At all relevant times, Shannon Ragonesi at Keaton, Bucklin, & McCormack (KBM) acted as an agent and attorney for SPS and MSD-WSRMP in matters involving Plaintiff. Ragonesi was simultaneously SPS's outside counsel under a documented KBM-SPS engagement letter (September 2023 – August 2024) and WSRMP/MSD's attorney. Ragonesi's November 29, 2023 voicemail to MSD HR Executive Director Simone Neal — concerning a prospective SPS employee while she was SPS's outside counsel — was within the scope of her dual representation. Her knowledge of the settlement obligations in her MSD-counsel capacity is imputed to SPS under § 5.03. SPS cannot claim ignorance of its own counsel's knowledge. Because she had actual knowledge of the settlement obligations, that knowledge is imputable to the principal she was then serving. See Restatement (Third) of Agency §§ 2.01, 5.03; *Colacicco v. Cushing*, 88 Wn.2d 783, 567 P.2d 23 (1977).

196. WSRMP funded, directed, and supervised post-settlement investigative activity involving Plaintiff after the settlement date of October 17, 2023, including invoice approval and continued use of investigative infrastructure. Those acts aided and facilitated conduct prohibited by Clause 8 and support a reasonable inference that WSRMP acted through, or caused the actions of, its retained agents.

197. SPS later ratified the conduct by using the resulting record and applicant-tracking infrastructure to maintain or amplify adverse information about Plaintiff, including the April 4, 2024, flagging directive tied to Plaintiff’s EEOC activity. SPS did so with knowledge of the material facts and without repudiating the underlying conduct. See *Moss v. Vadman*, 77 Wn.2d 396, 463 P.2d 159 (1969); *Chemical Bank v. Wash. Pub.*

*Power Supply Sys*., 102 Wn.2d 874, 691 P.2d 524 (1984). SPS again ratified Ragonesi's conduct by: (a) re-engaging Ragonesi as SPS's litigation counsel on February 3, 2025 — with full knowledge of her November 2023 conduct as established by Dkt. No. 87-1 admissions — without repudiation; (b) using WSRMP's Origami Risk infrastructure via Hastings to entrench the adverse record Ragonesi's breach created; and (c) issuing the April 4, 2024, flagging directive citing the EEOC complaint Ragonesi's breach was designed to defeat. Under Restatement (Third) Agency § 4.01, a principal ratifies an agent's unauthorized act by accepting its benefits or failing to repudiate after knowledge. SPS cannot employ Ragonesi as its litigation counsel while simultaneously disclaiming her prior tortious conduct.

198. Separately, K&L Gates attorney Mark Filipini transmitted a scripted reference response to SPS HR-Demetrice Lewis that allegedly violated Clause 7 by exceeding neutral-reference obligations. To the extent the transmission occurred through an agent with actual knowledge of the settlement agreement language, the breach is attributable to the principal under ordinary agency principles.

199. Defendants’ breaches caused Plaintiff to lose employment opportunities, suffer lost wages and benefits, and incur reputational and professional harm.

200. Plaintiff therefore states a claim for breach of the settlement agreement, including liability through agency and ratification, against SPS, WSRMP, and the other involved defendants to the extent their conduct and authority are shown by the agreement and the surrounding facts.



ROSA MARIA CABRERA THOMPSON, P.O. BOX 275, MAPLE VALLEY, WA 98038

201. WSRMP funded, directed, and supervised Ragonesi as MSD's retained counsel and investigator. WSRMP approved invoices for post-settlement investigative activity after October 17, 2023 in violation of Clause 8. WSRMP never informed its claims consultant (Morgenthaler) of the settlement, allowing the investigation to continue unchecked. WSRMP approved invoices for post-settlement investigative activity after October 17, 2023, without any conflict protocols in place, as confirmed by Morgenthaler's deposition. Under Restatement (Third) Agency § 2.01, WSRMP directed the very agents who violated Clauses 7 and 8.

202. SPS ratified Ragonesi's breach by thereafter using WSRMP's infrastructure (Origami Risk, via Hastings) to entrench Plaintiff's adverse record and by informing Cerqui who issued the April 4, 2024, flagging directive tied to the EEOC complaint. Ratification of an agent's breach creates direct liability for the breach.

203. Separately, K&L Gates attorney Filipini's scripted reference response, transmitted to SPS HR, violated Clause 7 through an agent of MSD with actual knowledge of the settlement. Shurtleff's transmission of that scripted response was the direct mechanism of the Clause 7 violation.

204. On or about January 19, 2024, a reference check concerning Plaintiff for a prospective SPS employment opportunity was forwarded to Shelby Stoner. Stoner received the request while acting within the scope of her responsibilities for SPS and/or WSRMP and with knowledge of Plaintiff’s settlement agreement, including the neutral-reference obligation in Clause 7.

205. Instead of ensuring that only a neutral reference was provided, Stoner participated in, approved, transmitted, or facilitated a response that departed from the settlement's requirements. Her conduct included forwarding, endorsing, or allowing reference information to be conveyed in a manner that interfered with Plaintiff's prospective employment opportunity.

206. Stoner's actions were a substantial factor in the decision not to hire Plaintiff, because they contributed to the adverse reference response and the resulting loss of the job opportunity.

207. Defendants' breaches directly and proximately caused Plaintiff's loss of employment and subsequent professional harm. With supporting authority under Restatement (Third) Agency §§ 2.01, 4.01, and 5.03, and specific factual application to documented engagements and acts, Plaintiff states a valid breach of settlement claim against SPS and WSRMP through agency and ratification.

## COUNT TEN: TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY

Against Defendants WSRMP, all third party defendants including Does 1-25

208. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

209. Under Washington law, tortious interference with a business expectancy requires proof of: (1) a valid business expectancy; (2) the defendant's knowledge of that expectancy; (3) an intentional interference causing termination of the expectancy; (4) interference by improper purpose or improper means; and (5) resulting damage. *Leingang*

*v. Pierce County Med. Bureau, Inc.*, 131 Wn.2d 133, 157, 930 P.2d 288 (1997). A defendant cannot tortiously interfere with its own contract or expectancy. *Reninger v. State Dep't of Corr.*, 134 Wn.2d 437, 449, 951 P.2d 782 (1998). Washington recognizes that unlawful conduct may qualify as improper means. *Calbom v. Knudtzon*, 65 Wn.2d 157, 162-63, 396 P.2d 148 (1964). In Washington, the expectancy must be of pecuniary value and sufficiently concrete; vague hopes or speculative future opportunities are not enough. *Tamosaitis v. Bechtel Nat'l, Inc.*, No. 31451-1-III, slip op. at 8-9 (Wash. Ct. App. Apr. 10, 2014).

210. Plaintiff had the following valid business expectancies: (a) her confirmed employment contract with SPS at Garfield High School (November 20–December 7, 2023); (b) her SPS AP Pool membership and the right to apply for school-specific AP positions (March 21, 2024 through present); (c) her anticipated employment as interim assistant principal in January 2024; and (d) her anticipated continuous contract employment as assistant principal for 2024-2025 and beyond school years.. Plaintiff also had a protected expectancy in continued access to SPS's AP Pool and school-specific AP vacancies, to the extent that access was a concrete gateway to employment opportunities rather than a mere hope of future work.

211. Plaintiff had specific business expectancies in identifiable employment opportunities, including finalist consideration for assistant principal positions with Tahoma School District, Franklin Pierce School District, Chehalis School District, and Clover Park School District, each involving active hiring consideration and reference checking. Plaintiff also had a protected expectancy in continued access to SPS's AP Pool



ROSA MARIA CABRERA THOMPSON, P.O. BOX 275, MAPLE VALLEY, WA 98038

and school-specific AP vacancies, to the extent that access was a concrete gateway to employment opportunities rather than a mere hope of future work.

212. Each Defendant knew or had reason to know of one or more of these expectancies through the settlement agreement, reference requests, direct communications, or their role in SPS/WSRMP hiring and claims-related processes.

213. Defendants intentionally interfered with these expectancies by transmitting or facilitating adverse references, coordinating reference responses, directing or implementing flagging of Plaintiff in hiring systems, and using shared claims or HR infrastructure to disseminate information that frustrated Plaintiff’s employment opportunities.

214. Defendants’ conduct constituted improper means because it was contrary to the EEOC settlement agreement and, in relevant respects, violated federal and state anti-retaliation law and other legal duties governing reference and hiring practices.

215. As a direct result, Plaintiff lost the Garfield High School position, was excluded from AP opportunities, lost the cited external finalist opportunities, and suffered substantial wage loss and diminution of future earnings.

216. Each Defendant knew or had reason to know of one or more of these expectancies through the settlement agreement, reference requests, direct communications, or their role in SPS/MSD/WSRMP hiring and claims-related processes. Each defendant intentionally interfered with these expectancies through improper means: (a) Ragonesi's November 29, 2023 voicemail in violation of the EEOC settlement; (b) Neal's reference call and



ROSA MARIA CABRERA THOMPSON, P.O. BOX 275, MAPLE VALLEY, WA 98038

Willingham coordination in violation of Clause 7; (c) Filipini's scripted adverse reference, transmitted by Shurtleff to SPS HR-Demetrice Lewis, in violation of Clause 7; (d) Cerqui/Garmoe/ Simeon April 4, 2024 NEOGOV/SAP flagging directive in violation of Title VII and RCW 49.60.210; (e) WSRMP's, KBM and K&L Gates's facilitation of cross-district adverse information sharing using shared infrastructure.

217. Defendants intentionally interfered with these expectancies by transmitting or facilitating adverse references, coordinating reference responses, directing or implementing flagging of Plaintiff in hiring systems, and using shared claims or HR infrastructure to disseminate information that frustrated Plaintiff’s employment opportunities.

218. Defendants’ conduct constituted improper means because it was contrary to the EEOC settlement agreement and, in relevant respects, violated federal and state anti-retaliation law and other legal duties governing reference and hiring practices.

219. Each defendant intentionally interfered with these expectancies through improper means: (a) Ragonesi's November 29, 2023 voicemail in violation of the EEOC settlement; (b) Neal's reference call and Willingham coordination in violation of Clause 7; (c) Filipini's scripted adverse reference, transmitted by Shurtleff to SPS HR-Demetrice Lewis, in violation of Clause 7; (d) Cerqui/Garmoe/ Simeon April 4, 2024 NEOGOV/SAP flagging directive in violation of Title VII and RCW 49.60.210; (e) WSRMP's, KBM and K&L Gates's facilitation of cross-district adverse information sharing using shared infrastructure.



ROSA MARIA CABRERA THOMPSON, P.O. BOX 275, MAPLE VALLEY, WA 98038

220. Ragonesi held dual knowledge as both MSD and SPS counsel. Neal knew from the reference request. Filipini knew through K&L Gates's SPS billing relationship.

221. Willingham knew as an SPS insider. WSRMP knew through Origami Risk infrastructure. All named defendants had knowledge of Plaintiff's SPS employment relationship or AP Pool candidacy.

222. Ragonesi: November 29, 2023 voicemail in violation of settlement. Neal: December 1, 2023 adverse reference call to Hart in violation of Clause 7. Willingham: November 29–December 1, 2023 advance coordination calls. Filipini: scripted 'advice of counsel' reference response transmitted via Shurtleff. Garmoe/Cerqui: April 4, 2024 NEOGOV and SAP flagging. WSRMP: maintaining Origami Risk as shared adverse-information infrastructure.

223. Each interference was accomplished through means independently illegal: (a) violation of the binding EEOC settlement; (b) violation of Title VII and WLAD anti-retaliation provisions; (c) violation of RCW 49.60.210; (d) fraudulent coded adverse communications; (e) use of shared claims infrastructure to impose extralegal employment consequences. Illegal means are per se improper under Calbom. No additional improper-purpose showing is required.

224. Loss of Garfield HS position; elimination of AP Pool access; 17+ SPS position denials; four named external finalist processes disrupted; 140+ statewide rejections; total economic damages in excess of $8,000,000.

225. Plaintiff states a valid tortious interference claim with specifically named districts, documented causal mechanisms, identified defendants, and per se improper means established by multiple independent violations of law.

**COUNT ELEVEN: CIVIL RIGHTS CONSPIRACY — 42 U.S.C. § 1985(3)**

Against All Named Defendants and Does 1 through 25

226. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

227. A claim under 42 U.S.C. § 1985(3) requires allegations of (1) a conspiracy; (2) for the purpose of depriving a person or class of persons of equal protection of the laws or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) resulting injury. The conspiracy must be motivated by class-based, invidiously discriminatory animus, and race is a cognizable protected class under the statute. *United Bhd. of Carpenters & Joiners of Am. v. Scott*, 463 U.S. 825, 829–30 (1983); *Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (197 1); *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992). A plaintiff must plead specific facts showing agreement, scope, role, and implementation; conclusory allegations of conspiracy are insufficient. Burns v. Cnty. of King, 883 F.2d 819, 821–22 (9th Cir. 1989); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 937–38 (9th Cir. 2012) (en banc); *Gaetz v. City of Riverside*, 722 F. Supp. 3d 1054, 1069 (C.D. Cal. 2024); *Steshenko v. Albee*, 70 F. Supp. 3d 1002, 1015 (N.D. Cal. 2014).

228. Defendants conspired to deprive Plaintiff of the equal protection of the laws, motivated by class-based animus — specifically, racial animus against a Black and

Hispanic woman and animus against a member of a class that asserts civil rights protections against government entities.

229. The conspiracy is established by a documented five-node coordination chain: (1) Ragonesi (KBM/MSD-SPS dual counsel) called Neal (MSD) on November 29, 2023; (2) Neal called Willingham (SPS principal, Interagency HS) for 37 minutes the same day — a call made between two women with a years-long personal friendship, a shared employment history at Baltimore County Public Schools, and a history of shared residences in D.C. and Washington State, whose positions in adjacent districts made Willingham a uniquely positioned SPS insider; (3) Filipini/Stoner (K&L Gates/MSD, SPS billing) drafted Shurtleff's scripted adverse reference, transmitted to SPS HR November–December 2023; (4) Neal called Hart, completing the reference sabotage, then called Ragonesi 53 seconds later on December 1, 2023; (5) Cerqui (SPS outside counsel) emailed Garmoe on April 2, 2024; Garmoe directed the NEOGOV/SAP flag on April 4, 2024, explicitly tying it to the EEOC complaint.

230. Defendants reached an agreement, evidenced by the sequence and content of their communications, to use reference checks, internal HR flags, and shared claims-handling systems to deny Plaintiff employment opportunities because of her race and protected civil-rights complaints.

231. The agreement is supported by the following alleged communications and acts: Ragonesi’s November 29, 2023 call to Neal; Neal’s same-day call to Willingham; the scripted adverse reference prepared by Filipini and transmitted through Shurtleff to SPS HR; Neal’s reference call to Hart on December 1, 2023 and immediate callback to

Ragonesi; Cerqui's April 2, 2024 email to Garmoe; and Garmoe's April 4, 2024 flagging directive expressly tied to Plaintiff's EEOC complaint.

232. These acts were taken in furtherance of the conspiracy and were intended to frustrate Plaintiff's employment opportunities at SPS and other school districts.

233. Plaintiff is a Black and Hispanic woman. The timing and content of the communications, including the express reference to Plaintiff's EEOC complaint and race-discrimination allegations, support an inference that the coordinated conduct was motivated by racial animus and animus toward Plaintiff as a civil-rights complainant.

234. As a result, Plaintiff lost the Garfield High School position, was excluded from further employment opportunities, and suffered substantial economic and reputational injury.

235. The probability that two law firms (KBM and K&L Gates), both with SPS billing or engagement relationships and both representing MSD through WSRMP, independently and coincidentally violated the same settlement agreement provisions in ways that converged to destroy Plaintiff's employment at SPS is effectively zero. The coordination is structural and documented.

236. Overt acts in furtherance of the conspiracy include all of the acts described above, including the Ragonesi voicemail, the Neal-Willingham calls, the scripted reference transmission, the Neal-Hart reference call, the 53-second Ragonesi callback, the Cerqui email, the Garmoe flagging directive, the Simeon profile merger, and the Hastings Origami Risk entry.

237. As a direct result, Plaintiff suffered the injuries described herein.

238. Element 1 (Meeting of Minds — Specific Facts): The conspiracy is established through five documented nodes. Node 1: On November 29, 2023 at 2:37 P.M., Ragonesi, serving as dual counsel for both MSD and SPS, called Neal — using her privileged institutional access to both districts as the channel of interference. Node 2: On November 29, 2023 at approximately 3:00 P.M., Neal called Willingham for 37 minutes. This is not a call between professional acquaintances — it is a call between longtime personal friends and former housemates (Baltimore County Public Schools colleagues; D.C. co-residents; Washington State co-residents) who now hold complementary positions in adjacent school districts. The documented personal relationship transforms the call from a professional contact into a trust-channel coordination call. The personal history — shared employment, shared housing, shared relocation — is the mechanism through which the conspiracy crosses institutional lines. Node 3: On December 1, 2023 at 10:12 A.M., Willingham called Neal 21 minutes before Hart initiated the formal reference sequence — establishing that SPS insider coordination preceded the official reference request. Node 4: On December 1, 2023 at 3:52–3:55 P.M., Neal conducted the adverse reference call with Hart and called Ragonesi 53 seconds later, completing the enterprise feedback loop. Node 5: On April 2–4, 2024, Cerqui emailed Garmoe a privileged 'update'; two days later, Garmoe directed the NEOGOV and SAP flag citing the EEOC complaint; Simeon executed; Kartchner, Fraleigh, and Montejo-Thompson implemented. The statistical probability that seven actors at three organizations independently violated the same settlement in ways that converged on the same victim in the same sequence is effectively zero.

239. Element 2 (Invidiously Discriminatory Class-Based Animus): This conspiracy was not merely retaliatory — it was racially motivated. The enterprise specifically targeted a Black



ROSA MARIA CABRERA THOMPSON, P.O. BOX 275, MAPLE VALLEY, WA 98038

and Hispanic female administrator who had exercised civil rights against majority-white institutional defendants. The racial dimension is established on three grounds. First, the April 4, 2024 Garmoe directive — issued days after the EEOC notified SPS of a race-based charge — uses the existence of a race discrimination complaint as the reason to exclude the complainant from employment, thereby penalizing membership in the protected class that asserts civil rights. Second, the enterprise deployed shared institutional infrastructure (WSRMP, Origami Risk, NEOGOV, SAP) typically insulated from accountability to permanently foreclose employment for a woman of color who challenged institutional racism. Third, courts have held that animus against a class that asserts civil rights protections can constitute § 1985(3) class-based animus. Sever, 978 F.2d at 1536.

240. Element 3 (Overt Acts — Fourteen Documented): The following fourteen overt acts in furtherance of the conspiracy are documented: (1) Ragonesi voicemail to Neal, November 29, 2023, 2:37 P.M.; (2) Neal's 37-minute call to Willingham, November 29, 2023; (3) Willingham's advance-coordination call to Neal, December 1, 2023, 10:12 A.M.; (4) Filipini's scripted 'advice of counsel' reference, December 1, 2023; (5) Shurtleff's transmission of scripted reference to SPS HR, December 1, 2023; (6) Neal's adverse reference call to Hart, December 1, 2023, 3:52 P.M.; (7) Neal's 53-second callback to Ragonesi, December 1, 2023, 3:55 P.M.; (8) Hart's revocation email, December 7, 2023; (9) K&L Gates post-settlement EEOC report, February 23, 2024; (10) Cerqui's 'Quick Update' email to Garmoe, April 2, 2024; (11) Garmoe's flagging directive citing EEOC complaint, April 4, 2024; (12) Simeon's execution of profile merger, April 4, 2024; (13) Hart's false sworn affidavit, July 17, 2025; and (14) Hastings's Origami Risk entry, February 3, 2025.



ROSA MARIA CABRERA THOMPSON, P.O. BOX 275, MAPLE VALLEY, WA 98038

241. Element 4 (Injury): Loss of confirmed employment; elimination of AP Pool access; 17+ SPS position denials; 140+ statewide rejections; career destruction; reputational harm.

242. With the specific factual allegations required by *Gaetz*, *Burns*, and *Lacey* — documented communications, identified roles, specified personal relationships, and the racial/class-based animus dimension — Plaintiff states a valid § 1985(3) civil rights conspiracy claim. The Court's two identified deficiencies are both addressed.

**COUNT TWELVE: WRONGFUL RESCISSION IN VIOLATION OF PUBLIC POLICY**

Against Defendants Seattle Public Schools, WSRMP, Mark Filipini and Shannon Ragonesi

243. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

244. This claim does not allege termination of an at-will relationship. Plaintiff had an accepted fixed-term employment contract for the period November 27 through December 15, 2023. SPS rescinded that contract on December 7, 2023, after receiving adverse reference information that Plaintiff alleges was introduced in violation of the parties' EEOC settlement agreement. The rescission violated the clear public policy of Washington and federal law prohibiting retaliation against persons who file or pursue civil-rights complaints, including RCW 49.60.210 and 42 U.S.C. § 2000e-3(a).

245. The public policy violated is Washington's and federal policy prohibiting retaliation for filing and pursuing civil-rights complaints. SPS's rescission was caused by adverse reference information allegedly transmitted in violation of the EEOC settlement agreement, and was undertaken without any legitimate, non-retaliatory justification.

**COUNT THIRTEEN: CIVIL RICO — 18 U.S.C. § 1962(c)**

Against All Named Defendants and Does 1 through 25

246. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

247. The defendants identified herein constitute an association-in-fact enterprise within the meaning of 18 U.S.C. § 1961(4) and Boyle v. United States, 556 U.S. 938 (2009). The enterprise consists of SPS, WSRMP, MSD (acting through its employees and agents), KBM (acting through Ragonesi), and K&L Gates (acting through Filipini and Stoner), together with the individual defendants, operating through shared infrastructure — Origami Risk, NEOGOV, SAP — with the common purpose of eliminating Plaintiff from public school employment in Washington State in retaliation for her EEOC protected activity.

248. Defendants SPS, WSRMP, MSD, KBM, K&L Gates, Krista Slosburg, Stokes Lawrence, Patty Dowd, and the individual defendants formed an association-in-fact enterprise within the meaning of 18 U.S.C. § 1961(4) and Boyle v. United States, 556 U.S. 938 (2009). The enterprise operated through shared legal, investigative, and recordkeeping infrastructure, including Origami Risk, NEOGOV, SAP, and related email and invoice systems, with the common purpose of preventing Plaintiff from obtaining or retaining public-school employment after her protected EEOC activity.

249. The enterprise functioned through a coordinated division of labor. WSRMP, MSD, SPS, KBM, K&L Gates, Stokes Lawrence, and their agents controlled the flow of investigation materials, reference communications, adverse employment records, and invoice payments. Slosburg and Stokes Lawrence were retained and paid through WSRMP funds to prepare two investigation reports after October 17, 2023, notwithstanding the settlement requirement that all investigations cease immediately. Dowd approved invoices and later

authorized payment from Mukilteo School District funds after WSRMP claim funds were exhausted in November 2023. Upon information and belief, invoices dated from October 18, 2023 through July 2024 were paid primarily through MSD funds and, in part, through KBM funds approved by Ragonesi.

250. Each defendant knowingly participated in the conduct of the enterprise's affairs through a pattern of racketeering activity, including the following predicate acts:

251. Predicate Act 1 — Wire Fraud (18 U.S.C. § 1343): On November 29, 2023 at 2:37 p.m., Shannon Ragonesi used a telephone wire to transmit a 40-second voicemail to Simone Neal concerning Plaintiff's pending SPS employment. Ragonesi was acting while simultaneously representing MSD and SPS in matters affecting Plaintiff. The communication was made in furtherance of the enterprise's scheme to use dual-representation access to influence Plaintiff's employment prospects and adverse file.

252. Predicate Act 2 — Wire Fraud (18 U.S.C. § 1343): On November 29, 2023, Simone Neal used a telephone wire to place a 37-minute call to Sharonda Willingham, SPS's principal at Interagency High School. Neal and Willingham had a longstanding personal relationship and worked together previously in Baltimore County Public Schools before relocating to Washington. The timing and content of the call, made the same day Ragonesi contacted Neal, show that it was used to recruit SPS insider participation in the reference-interference effort.

253. Predicate Act 3 — Wire Fraud (18 U.S.C. § 1343): On December 1, 2023 at 11:34 a.m. and again at 3:52 p.m., Neal used electronic and telephonic communications to contact Dr. Hart regarding Plaintiff's reference. Neal's communications inserted an MSD official into the reference process and were made to induce Hart to communicate adverse information



ROSA MARIA CABRERA THOMPSON, P.O. BOX 275, MAPLE VALLEY, WA 98038

or refrain from providing neutral information, in violation of the settlement's neutral-reference provisions.

254. Predicate Act 4 — Wire Fraud (18 U.S.C. § 1343): On December 1, 2023 at 3:55 p.m., Neal used a telephone wire to call Ragonesi and report the outcome of the Hart reference communications. This was a scheme-furthering communication within the enterprise's feedback loop, used to coordinate continuing adverse action against Plaintiff.

255. Predicate Act 5 — Wire Fraud (18 U.S.C. § 1343): On December 1, 2023, Mark Filipini electronically transmitted a scripted reference response for Shurtleff to send to SPS Human Resources. The response was crafted to appear neutral while conveying coded adverse meaning concerning Plaintiff. Shurtleff then transmitted the response electronically to SPS HR. The communication was materially misleading because it concealed the adverse purpose and was used to influence Plaintiff's employment prospects.

256. Predicate Act 6 — Wire Fraud (18 U.S.C. § 1343): On April 2, 2024, John Cerqui electronically transmitted a "Quick Update on Cabrera Thompson" email to Misa Garmoe under an attorney-client privilege designation. The communication was used to trigger and conceal retaliatory action, including the later flagging of Plaintiff's profiles in NEOGOV and SAP. The privilege label was used to shield the communication from scrutiny while advancing the enterprise's adverse employment objective.

257. Predicate Act 7 — Wire Fraud (18 U.S.C. § 1343): On April 4, 2024 at 9:49 a.m., Garmoe electronically transmitted an email to Libby Simeon directing that Plaintiff's profiles be flagged in NEOGOV and SAP and expressly tying the action to Plaintiff's EEOC complaint. On April 4, 2024 at 5:11 p.m., Simeon confirmed execution by electronic



ROSA MARIA CABRERA THOMPSON, P.O. BOX 275, MAPLE VALLEY, WA 98038

communication. These communications were made to implement the enterprise's retaliatory blacklist.

258. Predicate Act 8 — Wire Fraud and Scheme-Furthering Concealment: On or about February 23, 2024, Filipini and Stoner electronically submitted a post-settlement investigation report to the EEOC, notwithstanding the settlement term requiring investigations to cease immediately. The report was part of the enterprise's effort to preserve, legitimize, and circulate adverse information about Plaintiff in federal proceedings.

259. Predicate Act 9 — Wire Fraud and Concealment: A joint investigation report bearing the date January 11, 2023 was created after Ragonesi's retention on February 2, 2023 and, upon information and belief, was actually created on or about January 11, 2024. The report was transmitted after the settlement-required cessation date and was used to memorialize and perpetuate adverse claims against Plaintiff while concealing the true date of creation.

260. Predicate Act 10 — Wire Fraud and False Statement: On or about July 17, 2025, Hart submitted a sworn Private Device Affidavit in federal court proceedings stating that he had not used personal devices for employment-related communications. That statement was false, because call logs reflect personal-phone communications on November 29 and December 1, 2023 concerning Plaintiff's reference and employment status. The affidavit was submitted to impede discovery and conceal the enterprise's communications.

261. Predicate Act 11 — Wire Fraud: On February 3, 2025, Ayrian Hastings electronically created or transmitted a calendar entry directing that Plaintiff's claim be added to Origami Risk and that the litigation log be updated. The entry used WSRMP's shared system to

entrench Plaintiff's adverse record and maintain the enterprise's coordinated handling of Plaintiff's claims.

262. Predicate Act 12 — Wire Fraud and Concealment: Krista Slosburg and Stokes Lawrence used electronic communications and document transmissions to prepare and finalize two investigation reports after October 17, 2023, while WSRMP and MSD continued funding the work. Those post-settlement communications were materially misleading because they proceeded as though investigative activity remained authorized after the settlement required it to cease, and they were used to preserve adverse records against Plaintiff.

263. Predicate Act 13 — Wire Fraud and Concealment: Patty Dowd approved invoices and authorized payment of invoices from WSRMP funds, MSD funds, and, upon information and belief, KBM funds, for work performed from October 18, 2023 through July 2024. Those invoice approvals and payments facilitated continuation of the post-settlement investigative and record-building effort after claim funds were exhausted in November 2023.

264. The pattern of racketeering activity spans at least November 29, 2023 through July 2024, with continuing effects into 2025, and reflects repeated, related acts with the same victim, the same common purpose, overlapping participants, and shared infrastructure. The acts are therefore related and amount to closed- and open-ended continuity under H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229 (1989).

265. Plaintiff's confirmed SPS employment, associated compensation, and related employment opportunities constitute property for purposes of 18 U.S.C. § 1964(c). Defendants' racketeering activity proximately caused Plaintiff's economic losses.

266. By reason of the foregoing, Plaintiff is entitled to recover treble damages, attorneys' fees, and costs under 18 U.S.C. § 1964(c).

267. The pattern of racketeering spans October 18, 2023 through February 3, 2025 — over fifteen months — with eleven documented predicate acts, multiple participants, and a single victim. The acts are related by common purpose, common participants, common infrastructure, and common victim, satisfying both the relationship and continuity prongs of H.J. Inc. v. Northwestern Bell, 492 U.S. 229 (1989).

268. Plaintiff's confirmed job offer, AP Pool access rights, and career prospects constituted property within the meaning of 18 U.S.C. § 1964(c). The enterprise's racketeering activity directly and proximately caused Plaintiff's injuries, entitling her to treble damages.

269. Civil RICO: (1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity; (5) causing injury to plaintiff's business or property. *United Bhd. of Carpenters*, 770 F.3d at 837. Fraud predicate acts must be pleaded under Rule 9(b) with the 'who, what, when, where, and how.' *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065 (9th Cir. 2004). Pattern requires relationship and continuity. *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229 (1989). This Court's prior denial at Dkt. No. 156, pp. 9–11 found predicate acts insufficiently specific. Each predicate act is now pleaded to full Rule 9(b) specificity.

270. The association-in-fact enterprise alleged herein had a common purpose, relationships among the participants, and sufficient longevity to pursue its objective. See Boyle v. United States, 556 U.S. 938 (2009). Its shared objective was to prevent Plaintiff from obtaining, retaining, or benefiting from public-school employment in Washington after her protected EEOC activity by coordinating references, investigations, adverse records, and internal



ROSA MARIA CABRERA THOMPSON, P.O. BOX 275, MAPLE VALLEY, WA 98038

case management across SPS, WSRMP, MSD, KBM, K&L Gates, and related individual actors.

271. The enterprise operated through a division of labor. WSRMP funded and coordinated the response; MSD, SPS, KBM, and K&L Gates communicated through their attorneys and employees; and the individual defendants executed the communications, reports, and system entries that preserved adverse information concerning Plaintiff. The enterprise used shared systems including Origami Risk, NEOGOV, SAP, email, voicemail, and electronic calendar entries to memorialize, transmit, and reinforce the adverse employment record.

272. On November 29, 2023 at 2:37 p.m., Shannon Ragonesi transmitted a voicemail to Simone Neal concerning Plaintiff while serving as counsel in a posture that allowed her to access and influence the employment and investigation channels of both MSD and SPS. That communication was one of the first coordinated acts in the scheme and was followed the same day by Neal's 37-minute telephone call with Sharonda Willingham, a longtime personal friend and former coworker with SPS access, who was positioned to participate in the reference-interference effort.

273. On December 1, 2023, Simone Neal emailed and telephoned Dr. Hart at 11:34 a.m., 11:25 a.m., and 3:52 p.m., inserting herself into the reference process in violation of the settlement's neutral-reference requirement. At 3:55 p.m. the same day, Neal called Ragonesi to report the outcome, thereby completing a coordinated feedback loop among SPS, MSD, and their counsel concerning Plaintiff's employment prospects.

274. Mark Filipini electronically transmitted a scripted reference response for Shurtleff to send to SPS Human Resources. The response was crafted to appear neutral while conveying a

coded adverse meaning about Plaintiff and to mask the underlying purpose of discouraging Plaintiff's continued employment opportunities.

275. On April 2, 2024, John Cerqui transmitted a "Quick Update on Cabrera Thompson" email to Misa Garmoe under an attorney-client privilege designation. The communication was made in the course of the same coordinated effort to trigger and conceal adverse action against Plaintiff, and it preceded Garmoe's April 4, 2024 directive to flag Plaintiff's profiles in NEOGOV and SAP in express response to Plaintiff's EEOC complaint.

276. On April 4, 2024 at 9:49 a.m., Garmoe electronically directed the flagging of Plaintiff's profiles, and at 5:11 p.m. Simeon confirmed execution. Those communications were not isolated recordkeeping events; they were the implementation step of a retaliatory blacklist designed to interfere with Plaintiff's future hiring prospects across the school-district network.

277. On or about February 23, 2024, Filipini and Stoner electronically submitted a post-settlement investigation report to the EEOC, notwithstanding the settlement provision requiring investigations to cease. A separate report bearing the date January 11, 2023 was, upon information and belief, created after Ragonesi's February 2, 2023 retention and was actually generated on or about January 11, 2024, after the cessation date. These reports were used to preserve, legitimize, and circulate adverse information about Plaintiff after the parties had agreed to stop the investigation process.

288. On or about July 17, 2025, Dr. Hart submitted a sworn Private Device Affidavit in federal proceedings denying personal-device use for employment communications, despite call logs reflecting personal-phone communications on November 29 and December 1, 2023



ROSA MARIA CABRERA THOMPSON, P.O. BOX 275, MAPLE VALLEY, WA 98038

concerning Plaintiff. The affidavit was designed to impede discovery and conceal the communications through which the enterprise coordinated its conduct.

289. On February 3, 2025, Ayrian Hastings created or transmitted an electronic calendar entry directing that Plaintiff's claim be added to Origami Risk and that the litigation log be updated. That entry used WSRMP's shared system to entrench Plaintiff's adverse record and to maintain the enterprise's coordinated handling of Plaintiff's claims.

290. Krista Slosburg and Stokes Lawrence were retained and paid with WSRMP funds for investigation reports created after October 17, 2023. Patty Dowd approved and caused payment of invoices from Mukilteo School District funds, and upon information and belief KBM funds, between October 2023 and July 2024. Those payments and approvals supported the continuing enterprise by funding and ratifying the post-settlement investigative and record-building work.

291. The foregoing acts were related in purpose, participants, victim, and method. They were undertaken to suppress Plaintiff's employment prospects, preserve adverse institutional records, and retaliate against her protected activity. The conduct extended over more than fourteen months and reflected both closed-ended continuity and a threat of ongoing repetition through the continued use of enterprise systems.

292. As a direct and proximate result of the enterprise's conduct, Plaintiff lost or was deprived of employment opportunities, compensation, and related career benefits, including the confirmed SPS job offer, access rights, and associated economic value. These injuries constitute injury to business or property within the meaning of 18 U.S.C. § 1964(c).

293. Element 1 (Enterprise): SPS, WSRMP, Simone Neal, Stephen Shurtleff, Patty Dowd, Alison Brynelson, KBM via Ragonesi, Stokes Lawrence via Slosburg, and K&L Gates via

Filipini and Stoner constitute an association-in-fact enterprise operating through shared infrastructure: Origami Risk, NEOGOV, SAP, and dual-representation attorney networks. Common purpose: eliminate Plaintiff from Washington State public school employment. Under Boyle v. United States, 556 U.S. 938 (2009), an association-in-fact enterprise requires only a common purpose — no hierarchical structure or formal rules. Satisfied.

294. Element 2 (Predicate Acts, Rule 9(b) Compliant): Predicate Act 1 (Wire Fraud): WHO — Ragonesi. WHAT — 40-second voicemail to Neal about Plaintiff's pending SPS offer. WHEN — November 29, 2023, 2:37 P.M. WHERE — Neal's MSD office telephone line. HOW — telephone wire. SCHEME — misuse of dual-counsel access to deprive Plaintiff of accepted employment. Predicate Act 2 (Wire Fraud): WHO — Neal. WHAT — 37-minute call to Willingham (SPS insider, personal friend and former housemate). WHEN — November 29, 2023. WHERE — Willingham's SPS line. HOW — telephone wire. SCHEME — recruit SPS insider using personal trust relationship as channel. Predicate Act 3 (Wire Fraud): WHO — Neal. WHAT — email to Hart confirming reference role; telephone call with Hart. WHEN — December 1, 2023, 11:34 A.M. and 3:52 P.M. WHERE — Hart's SPS email and telephone. HOW — electronic wire. SCHEME — insert MSD HR Director as adverse reference in violation of Clause 7. Predicate Act 4 (Wire Fraud): WHO — Neal. WHAT — called Ragonesi to report result of Hart reference call. WHEN — December 1, 2023, 3:55 P.M. — 53 seconds after Hart call ended. WHERE — Ragonesi's KBM line. HOW — telephone wire. SCHEME — complete enterprise feedback loop. Predicate Act 5 (Wire Fraud): WHO — Filipini (drafter) and Shurtleff (transmitter). WHAT — scripted 'advice of counsel' response to SPS HR reference survey. WHEN — December 1, 2023. WHERE — SPS HR electronic reference system. HOW — electronic

wire. WHAT IS FALSE — response purports to comply with Clause 7 while transmitting a professional signal of legal liability. Predicate Act 6 (Wire Fraud): WHO — Cerqui. WHAT — 'Quick Update on Cabrera Thompson' email to Garmoe under privilege designation. WHEN — April 2, 2024, 4:10 P.M. WHERE — Garmoe's SPS email. HOW — electronic wire. SCHEME — trigger retaliatory directive under attorney-client privilege shield. Predicate Act 7a (Wire Fraud): WHO — Garmoe. WHAT — email directing NEOGOV and SAP flag, citing EEOC complaint. WHEN — April 4, 2024, 9:49 A.M. HOW — electronic wire. Predicate Act 7b (Wire Fraud): WHO — Simeon. WHAT — confirming execution email, profile merger. WHEN — April 4, 2024, 5:11 P.M. HOW — electronic wire. Predicate Act 8 (Wire Fraud): WHO — Filipini and Stoner. WHAT — post-settlement investigation report submitted to EEOC on MSD's behalf. WHEN — February 23, 2024 — four-plus months after Clause 8 required cessation. WHERE — EEOC Seattle Field Office. HOW — electronic and/or mail transmission. Predicate Act 9 (Fraud): WHO — Filipini and Stoner. WHAT — report bears impossible date of January 11, 2023 (Ragonesi not retained until February 2, 2023). ACTUAL DATE — likely January 11, 2024. SCHEME — backdating constitutes fraud in a federal proceeding. Predicate Act 10 (Obstruction / 18 U.S.C. § 1512): WHO — Hart. WHAT — sworn Private Device Affidavit declaring no personal device communications. WHEN — July 17, 2025. WHERE — federal district court proceedings. WHY FALSE — call logs show Hart's personal phone used for November 29 and December 1, 2023 reference-related calls. SCHEME — impede discovery of key evidence. Predicate Act 11 (Wire Fraud): WHO — Hastings, directed by Cerqui. WHAT — calendar entry directing addition of Plaintiff's claim to Origami Risk and litigation log update. WHEN — February 3, 2025, 3:30–4:00



ROSA MARIA CABRERA THOMPSON, P.O. BOX 275, MAPLE VALLEY, WA 98038

P.M. WHERE — WSRMP's Origami Risk cloud system accessed from SPS. HOW — electronic calendar system and cloud write access. SCHEME — use WSRMP's shared enterprise infrastructure to entrench adverse litigation record across the member-district network.

295. Element 3 (Pattern — Relationship and Continuity): All eleven predicate acts share the same victim (Plaintiff), the same purpose (eliminate from Washington public school employment), the same infrastructure (shared WSRMP/SPS legal and IT systems), and the same enterprise participants. Duration: November 29, 2023 through February 3, 2025 — fourteen-plus months of sustained, coordinated conduct. Closed-period continuity is established; open-ended repetition is also threatened given Origami Risk's persistent infrastructure. H.J. Inc., 492 U.S. at 229, 240–41. Satisfied.

296. Elements 4–5 (Racketeering Activity / Injury to Property): Each predicate act constitutes racketeering activity under 18 U.S.C. § 1961(1) (wire fraud, obstruction, witness tampering). Plaintiff's confirmed employment contract, AP Pool access right, and career prospects constitute 'property' under 18 U.S.C. § 1964(c). Economic damages exceed $8,000,000. Treble damages of $24,000,000+ available. Satisfied.

297. Thirteen predicate acts are pleaded to full Rule 9(b) specificity with who, what, when, where, how, and falsity identified for each. The enterprise, pattern, continuity, and property injury elements are all established. Plaintiff seeks treble damages under 18 U.S.C. § 1964(c).

298. Plaintiff is therefore entitled to treble damages, costs, and attorneys' fees under 18 U.S.C. § 1964(c).

**COUNT FOURTEEN: RETALIATORY BLACKLISTING VIA APPLICANT TRACKING SYSTEMS (42 U.S.C. § 1983; 42 U.S.C. § 2000e-3; RCW 49.60.210)**

Against Defendants Seattle Public Schools, Misa Garmoe, John Cerqui, Libby Simeon, and Does 1 through 5

299. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

300. This count addresses the April 4, 2024 systematic blacklisting as a discrete, independently actionable retaliatory adverse employment action separate from the December 2023 offer revocation.

301. Plaintiff engaged in protected EEOC activity (January 19, 2024 charges against SPS). Fourteen days after formally accepting Plaintiff into the AP Pool, SPS Executive Director Garmoe directed that Plaintiff's profiles be flagged in NEOGOV and SAP — in writing, explicitly stating the EEOC complaint as the motive. Simeon executed the directive. Cerqui's April 2, 2024 communication triggered it.

302. The NEOGOV/SAP flag constitutes a permanent adverse employment action that caused each subsequent SPS application rejection. Each position posted after April 4, 2024 for which Plaintiff could not apply or be considered due to the flag is a discrete injury. This is not general blacklisting — it is a documented, named-executive directive with a timestamp and a stated motive.

303. An adverse employment action is 'materially adverse' if it 'might have dissuaded a reasonable worker from making or supporting a charge of discrimination.' *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). Permanent ATS blacklisting eliminating all positions from an applicant's portal plainly meets this standard. Under §



ROSA MARIA CABRERA THOMPSON, P.O. BOX 275, MAPLE VALLEY, WA 98038

1983, named defendants acted under color of state law. Under Title VII and RCW 49.60.210, the same conduct is independently actionable as retaliation.

304. Element 1 (Protected Activity): Plaintiff filed EEOC Charge No. 551-2024-03024 against SPS on January 19, 2024 — the specific charge identified in Garmoe's April 4 email as the reason for the flag. Satisfied.

305. Element 2 (Materially Adverse Action): Garmoe directs the flag; Simeon executes the profile merger and places flags in NEOGOV and SAP; Kartchner, Fraleigh, and Montejo-Thompson implement operationally. Result: all AP positions disappear from Plaintiff's NEOGOV portal. This is not a single denial — it is a permanent, self-executing exclusion mechanism that produces a new injury with each AP position posted. Satisfied.

306. Element 3 (Direct Causal Link): Garmoe's email: 'Please put a flag on her in Neogov AND SAP... Demetrice/Sandy are processing the EEOC Complaint.' The adverse action and the stated EEOC motive appear in the same sentence, authored by a named executive, with a timestamp. No inference is required. Satisfied.

307.Element 4 (Discrete Injury Per Position): Each AP position posted by SPS after April 4, 2024 for which Plaintiff was qualified but could not access due to the flag is a discrete compensable injury under Burlington Northern. SPS itself determined Plaintiff was qualified for AP positions 14 days before the flag. Satisfied.

308. Each AP position denied after April 4, 2024 is an independently compensable injury supported by direct, written, timestamped evidence of retaliatory motive from a named SPS executive.

**COUNT FIFTEEN: RETALIATORY SUPPRESSION OF AP POOL ACCESS (42 U.S.C. § 1983; 42 U.S.C. § 2000e-3)**

Against Defendants Seattle Public Schools, WSRMP, Misa Garmoe, John Cerqui, Libby Simeon, and Does 11 and 12

309. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

310. To establish retaliation under Title VII, a plaintiff must show that she engaged in protected activity, that the employer took a materially adverse action, and that the protected activity was the but-for cause of the adverse action. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006); *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013). Under Washington's Law Against Discrimination, it is an unfair practice for an employer or other covered actor to discriminate against a person because she opposed practices forbidden by WLAD or participated in a WLAD proceeding. RCW 49.60.210. A retaliatory blacklisting claim may be supported by allegations that the defendant placed or maintained a negative flag, hold, or blacklist notation in an applicant-tracking system that materially impaired later employment opportunities because of the plaintiff's protected activity. A § 1983 claim requires that the challenged conduct was taken under color of state law and deprived the plaintiff of a separate federal right, typically a constitutional right such as the First Amendment.

311. Plaintiff engaged in protected activity when she filed EEOC Charge No. 551-2024-03024 against Seattle Public Schools on January 19, 2024.

312. On April 4, 2024, SPS Executive Director Misa Garmoe sent an email directing that Plaintiff be flagged in NEOGOV and SAP, and expressly tied that directive to Plaintiff's EEOC complaint. Libby Simeon executed the directive by placing or maintaining the flag

in SPS’s applicant systems. The directive was made by SPS officials acting under color of state law and within the scope of their employment.

313. On March 21, 2024, SPS created and conferred upon Plaintiff a specific property interest: acceptance into the 2024-25 AP Pool with "direct access to apply for school-specific openings." This government-conferred access right is a protected property interest under Board of Regents v. Roth, 408 U.S. 564 (1972).

314. Fourteen days later, acting on the EEOC complaint as the stated reason, Garmoe and Simeon secretly extinguished this right by merging and flagging Plaintiff's profiles, rendering all AP positions invisible to Plaintiff. No AP positions appeared in Plaintiff's portal. The only visible positions were principal positions — for which SPS had told her she was ineligible for the 2024-25 year.

315. The flagging directive materially altered Plaintiff’s employment prospects by preventing her from being fairly viewed, routed, or considered for AP positions within SPS’s applicant-tracking systems.

316. The April 4, 2024, flagging was materially adverse because it was the kind of action that would dissuade a reasonable worker from making or supporting a charge of discrimination. See Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006).

317. The temporal proximity between Plaintiff’s January 19, 2024 EEOC charge and the April 4, 2024 flagging, together with Garmoe’s express reference to the EEOC complaint



ROSA MARIA CABRERA THOMPSON, P.O. BOX 275, MAPLE VALLEY, WA 98038

as the reason for the flag, establishes a direct causal link between Plaintiff's protected activity and the adverse action.

318. As a result of the flagging, Plaintiff was excluded from AP openings posted after April 4, 2024 and was denied a fair opportunity to apply for and be considered for those positions. Each time the flag caused Plaintiff to be screened out or excluded from a posted AP opportunity, Plaintiff suffered additional lost employment opportunity and additional damages.

319. Defendants Seattle Public Schools, WSRMP, Misa Garmoe, John Cerqui, Libby Simeon, and Does 11 through 12 acted intentionally, maliciously, and in retaliation for Plaintiff's protected activity, and are liable under 42 U.S.C. § 2000e-3(a), RCW 49.60.210, and 42 U.S.C. § 1983.

320. This deprivation was accomplished without notice, without hearing, and without any disclosed reason. Plaintiff was entitled to procedural due process before the government-conferred access right was revoked. The revocation also constitutes independent First Amendment and Title VII retaliation.

321. Every AP position posted by SPS after April 4, 2024, for which Plaintiff was qualified but could not access, represents a discrete compensable injury under this count.

## COUNT SIXTEEN: FRAUD AND FRAUDULENT CONCEALMENT

Against Defendants Seattle Public Schools, WSRMP, Dr. Tarance Hart, Misa Garmoe, John Cerqui, Mark Filipini, Simone Neal, Stephen Shurtleff, Shelby Stoner, Does 11 and 12, and any other responsible Doe Defendants



ROSA MARIA CABRERA THOMPSON, P.O. BOX 275, MAPLE VALLEY, WA 98038

322. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

323. Under Washington law, fraud requires a representation of an existing fact that is material, false, known to be false, made with intent that it be acted upon, relied upon by the plaintiff, and causing damages. *Martini v. Post*, 178 Wn. App. 153, 307 P.3d 1004 (2013). Fraud-based allegations must be pleaded with particularity under Fed. R. Civ. P. 9(b), identifying the speaker, the specific statement, when and where it was made, and why it was false. Where a party invokes privilege to withhold a communication suspected to further wrongdoing, a court may conduct in camera review if the requesting party makes a sufficient showing under United States v. Zolin, 491 U.S. 554 (1989).

324. On or about July 17, 2025, Defendant Dr. Tarance Hart executed a sworn Private Device Affidavit under penalty of perjury stating, in substance, that he possessed no responsive communications on personal devices. That statement was false.

325. Hart's statement was material because it concerned the existence and location of communications relating to Plaintiff's reference interference and the circumstances surrounding Defendants' actions concerning Plaintiff's employment opportunity.

326. Hart knew the statement was false when he made it. Discovery-produced call logs show that Hart's personal phone was used to place calls to Neal and Shurtleff on November 29 and December 1, 2023, the dates corresponding to communications relevant to the reference interference at issue in this case.

327. Hart made the false sworn statement with the intent to prevent Plaintiff from discovering, or timely discovering, responsive communications stored on his personal



ROSA MARIA CABRERA THOMPSON, P.O. BOX 275, MAPLE VALLEY, WA 98038

device and to hinder Plaintiff's ability to obtain evidence concerning Defendants' interference with Plaintiff's employment opportunity.

328. Plaintiff relied on Hart's sworn denial in shaping her discovery efforts and was damaged because the false denial delayed and obstructed Plaintiff's ability to identify, obtain, and use material evidence concerning the reference interference and related retaliatory conduct. Defendant Hart executed a sworn Private Device Affidavit under penalty of perjury representing that he possessed no responsive communications on personal devices. This representation was false — call logs produced in discovery show Hart's personal phone was used to call Neal and Shurtleff on November 29 and December 1, 2023, the exact calls relevant to the reference interference. Hart knew this was false when he made it, intending to prevent discovery of his personal device contents. Plaintiff relied on this representation in connection with her discovery efforts and was damaged by the concealment.

329. On or about April 2, 2024, Defendants Misa Garmoe and John Cerqui caused an email chain to be labeled "Attorney-Client Privilege; Attorney Work Product" and withheld or redacted the substantive content of that communication in discovery.

330. On or about April 4, 2024, Defendant Misa Garmoe transmitted an email directing the NEOGOV and SAP flagging of Plaintiff's profiles, explicitly tying that action to Plaintiff's EEOC complaint.

331. Upon information and belief, the substance of that communication concerned an operational directive relating to Plaintiff's employment and reference handling, including retaliatory conduct directed at Plaintiff, rather than a communication made for the purpose of obtaining or providing legal advice.



ROSA MARIA CABRERA THOMPSON, P.O. BOX 275, MAPLE VALLEY, WA 98038

332. Defendants Garmoe and Cerqui knew, or were reckless in not knowing, that the communication was not privileged to the extent it memorialized or implemented a retaliatory HR directive, and they used the privilege designation to prevent Plaintiff from discovering evidence material to her claims.

333. Defendant Seattle Public Schools received, maintained, relied upon, or ratified the April 2, 2024 communication and the privilege designation, and thereby participated in the concealment of material evidence concerning the retaliatory flagging and reference interference at issue in this case.

334. Defendant WSRMP, acting through its employees, agents, or shared claims and risk-management systems, received, recorded, maintained, or directed the inclusion of Plaintiff's claim and related adverse information in Origami Risk or other shared systems, including the February 3, 2025 entry directing that Plaintiff's claim be added to the litigation log.

335. WSRMP knew, or was reckless in not knowing, that the adverse record and related entries were being used to entrench a retaliatory narrative and to impede Plaintiff's access to the truth concerning Defendants' actions.

336. Does 11 and 12 participated in the concealment and misrepresentation of material facts by authoring, approving, transmitting, maintaining, or redacting communications and records relating to Plaintiff's employment, reference handling, EEOC-related flagging, and litigation tracking, while concealing the substance of those communications from Plaintiff.

337. On or about January 19, 2023, Defendant Mark Filipini authored or directed a reference response intended to appear facially neutral while conveying adverse information about Plaintiff to SPS HR-Demetrice Lewis through Shurtleff and Simone Neal.

338. The reference response was materially misleading because it communicated, expressly or by implication, negative information about Plaintiff while appearing to comply with a neutral-reference obligation.

339. Filipini knew or should have known the response would be understood by SPS HR as adverse or disqualifying and intended that it be so understood.

340. Seattle Public Schools received and relied on the misleading reference response in deciding to revoke or rescind Plaintiff's employment opportunity, and Plaintiff suffered damages as a direct result.

341. Defendant Seattle Public Schools, through its personnel and systems, received, implemented, or ratified the flagging of Plaintiff's profiles in NEOGOV and SAP.

342. Defendant WSRMP, through its shared risk-management and litigation infrastructure, received, recorded, or used the flagging information in connection with Plaintiff's claim and related adverse records.

343. Does 11, 12, and any other Doe Defendants were involved in authorizing, carrying out, or preserving the flagging, merger, or maintenance of Plaintiff's records across the relevant systems.

344. Defendants' false sworn statement, improper concealment of the April 2, 2024, communication, misleading reference response, and concealment and maintenance of



ROSA MARIA CABRERA THOMPSON, P.O. BOX 275, MAPLE VALLEY, WA 98038

adverse records in NEOGOV, SAP, and Origami Risk were part of a coordinated course of conduct designed to conceal material facts, impede Plaintiff’s discovery of the truth, and cause injury to Plaintiff’s employment prospects.

345. As a direct and proximate result of Defendants’ fraudulent misrepresentations and concealment, Plaintiff suffered damages including loss of employment opportunity, delay and expense in discovery, emotional distress, and related economic losses.

346. Plaintiff requests compensatory damages, all other appropriate legal and equitable relief, and such further relief as the Court deems just and proper.

347. Defendants Garmoe and Cerqui used the label "Attorney-Client Privilege; Attorney Work Product" on the April 2, 2024 email chain to shield what was, in operation, a retaliatory HR directive from discovery. The use of a privilege designation to conceal an unlawful retaliatory directive constitutes fraudulent concealment. The crime-fraud exception applies, and Plaintiff seeks in camera review of the redacted email body pursuant to United States v. Zolin, 491 U.S. 554 (1989).

348. Defendant Filipini drafted a reference response designed to communicate adverse information about Plaintiff while appearing to comply with the neutral reference obligation — a form of fraud upon SPS HR that caused Plaintiff's employment to be revoked.

349. Hart's False Sworn Affidavit (Rule 9(b) Compliant): WHO: Dr. Tarance Hart. WHAT: sworn Private Device Affidavit under penalty of perjury declaring no responsive communications on any personal devices. WHEN: July 17, 2025. WHERE: Federal district court proceedings, Western District of Washington. WHY FALSE: Call logs

produced in discovery show Hart's personal phone was used for November 29 and December 1, 2023 calls with Neal and Shurtleff — the exact reference communications Hart's affidavit was designed to conceal. INTENT: Prevent discovery of personal device contents and obstruct Plaintiff's evidence gathering. INJURY: Plaintiff relied on the sworn affidavit in crafting discovery strategy; the false statement delayed identification of key evidence and constitutes obstruction under 18 U.S.C. § 1512.

350. Garmoe/Cerqui Fraudulent Privilege Designation: WHO: Garmoe and Cerqui. WHAT: April 2, 2024 email labeled 'Attorney/Client and Work Product Privileged' covering what was operationally a retaliatory HR directive. WHEN: April 2, 2024 and continuing throughout production. WHY FALSE: Attorney-client privilege does not protect communications made in furtherance of a crime or fraud. Using a privilege designation to shield a retaliatory employment directive from discovery triggers the crime-fraud exception under United States v. Zolin, 491 U.S. 554 (1989). INJURY: Plaintiff cannot access the communication that directly triggered the retaliatory flag. Plaintiff seeks in camera review.

351. Filipini Fraudulent Reference Communication: WHO: Filipini. WHAT: scripted 'advice of counsel' reference response. WHEN: Approximately January 19, 2024. WHERE: transmitted to SPS HR-Demetrice Lewis via Shurtleff through SPS's electronic reference survey system. WHY FALSE: purported to comply with neutral-reference obligation while actually transmitting a professionally devastating adverse signal. Filipini knew the effect of 'advice of counsel' in HR contexts; the communication was designed to deceive SPS HR into believing Plaintiff presented legal risk while appearing facially compliant with Clause 7. INJURY: SPS HR's receipt of the coded adverse signal caused

Hart to revoke Plaintiff's accepted employment contract, directly causing all downstream damages.

352. Each fraudulent act is pleaded to full Rule 9(b) who/what/when/where/how/falsity specificity. Hart's affidavit fraud is a sworn statement directly contradicted by documentary evidence.

**COUNT SEVENTEEN: DEFAMATION PER SE**

Against Defendants Simone Neal, Sharonda Willingham, Mark Filipini, Stephen Shurtleff, and Does 13 through 16

353. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

354. A statement is defamatory per se under Washington law when, in context, it imputes unfitness for a profession, trade, or office. To plead defamation, the plaintiff must allege falsity, unprivileged publication to a third party, fault, and resulting damages. If the defendant asserts a qualified privilege, the plaintiff must further plead facts showing abuse of the privilege, including actual malice.

355. On December 1, 2023, Simone Neal communicated with SPS Principal Hart in the context of a reference check regarding Plaintiff. Within days of that call, Hart revoked Plaintiff’s accepted offer, stating in writing that after reaching out to the prior district he had decided not to move forward. From those facts, and Neal’s deposition testimony that she allegedly gave only neutral employment information, a reasonable inference arises that Neal conveyed adverse information beyond dates, title, or other neutral reference data required by the settlement agreement.

356. Mark Filipini drafted, and Stephen Shurtleff transmitted, a scripted response to SPS HR-Demetrice Lewis using "advice of counsel" language in response to Plaintiff's reference inquiry. In context, and when communicated to school-district HR personnel evaluating whether to hire Plaintiff, the response conveyed that Plaintiff's employment history or conduct was associated with legal concern, adverse counsel involvement, or professional risk, and therefore conveyed unfitness for the position.]

357. Each publication was made to a third party in the employment-reference context. Neal's statements were published to Hart, and the Filipini-Shurtleff response was published through SPS's HR reference process to SPS personnel involved in the hiring decision.

358. Defendants acted at least with reckless disregard for the truth. Neal had signed the EEOC settlement and was aware of the neutral-reference obligation. Filipini drafted the scripted response with knowledge of the settlement's restrictions and the likely adverse effect of the language on HR recipients. Shurtleff transmitted the response with knowledge of the same restrictions and the function of the message in the hiring process.

359. Upon information and belief, additional MSD employees, including Does 13 through 16, made unauthorized reference communications to other school districts concerning Plaintiff, in violation of the settlement agreement and in a manner that further published adverse information about Plaintiff's professional fitness.



ROSA MARIA CABRERA THOMPSON, P.O. BOX 275, MAPLE VALLEY, WA 98038

360. Defendants' publications were false and unprivileged. They were made in violation of the settlement's neutral-reference requirement and exceeded the permissible scope of reference information.

361. The publications were defamatory per se because they imputed unfitness for Plaintiff's profession and injured her ability to obtain public-school employment.

362. Defendants' publications were a substantial factor in the revocation of Plaintiff's accepted employment offer. Hart's December 7, 2023 email confirming that he decided not to move forward after reaching out to Plaintiff's previous district is contemporaneous evidence of causation.

363. As a result, Plaintiff suffered loss of employment, lost wages, and other economic damages.

364. All defendants acted with actual malice: Neal signed the EEOC settlement and knew the neutral reference obligation in the separation agreement; Filipini drafted the scripted response knowing its effect on HR professionals; Shurtleff transmitted it knowing the settlement's requirements.

365. Element 1 (Defamatory Statement — Neal's Reference Call): On December 1, 2023 at 3:52 P.M., Neal and Hart spoke by telephone for 1 minute 56 seconds. Hart's December 7 email states this call caused his decision to revoke the offer. Neal's deposition testimony claims she provided only neutral employment information. A reference confirming only dates of employment and job title would not cause the immediate revocation of an accepted offer from a candidate with four strong positive



ROSA MARIA CABRERA THOMPSON, P.O. BOX 275, MAPLE VALLEY, WA 98038

electronic references. The gap between Neal's claimed testimony and Hart's contemporaneous reaction — which he attributed directly to the reference call — establishes that Neal communicated materially adverse professional information. The defamatory statement is per se harmful because it imputed professional unfitness and caused the loss of confirmed employment.

366. Element 2 (Defamation Per Se — Filipini/Shurtleff Scripted Response): Filipini drafted and Shurtleff transmitted the scripted 'advice of counsel' reference response to SPS HR. 'Advice of counsel' in a professional reference context imputes to the former employee ongoing legal dispute, liability, or risk — directly imputing unfitness for professional employment. This is per se defamatory under *Momah*. The statement was false: Clause 7 required only neutral reference information; 'advice of counsel' conveyed legally coded adverse information.

367. Element 3 (Publication): Hart’s (SPS Principal, third party) about conversation with Neal was published to Plaintiff. The Filipini scripted response conveyed by Shurtleff was published via SPS's electronic HR reference survey system to Demetrice Lewis and SPS HR — third-party recipients who used it in the hiring decision.

368. Element 4 (Actual Malice): Dowd signed the settlement agreement requiring neutral reference and had actual knowledge of Clause 7 at the time of the December 1 call — she acted with knowledge of falsity in allowing and representing Shurtleff’s communication as neutral. Filipini drafted the scripted response with knowledge of Clause 7's requirements and full awareness of the professional effect of 'advice of counsel' language on HR professionals — actual malice established. Shurtleff transmitted the scripted

response knowing the settlement's neutral-reference requirement — reckless disregard at minimum.

369. Element 5 (Causation and Injury): Hart's December 7 email is dispositive: 'After reaching out for a reference check with your previous district, I was able to speak to someone. We have decided not to move forward.' This is a named actor's contemporaneous admission of direct causation. The injury (loss of confirmed employment contract worth $10,961.54 direct plus $95,000+ consequential) flows directly from the defamatory communications.

370. Plaintiff states valid defamation per se claims against all named defendants with actual malice established by documentary record and direct causation established by Hart's own contemporaneous email.

## COUNT EIGHTEEN: NEGLIGENT SUPERVISION

Against Defendants Washington Schools Risk Management Pool, Patty Dowd, Alison Brynelson, Seattle Public Schools, Keating Bucklin & McCormack, Stokes Lawrence, K&L Gates

371. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

372. Under Washington law, negligent supervision generally requires a duty arising from the defendant's ability to supervise the actor whose conduct created the risk of harm. The claim should not overstate that WSRMP "supervised" outside law firms in the same way



ROSA MARIA CABRERA THOMPSON, P.O. BOX 275, MAPLE VALLEY, WA 98038

it would supervise employees unless you have facts showing actual retained-control authority.

373. At all relevant times, Washington Schools Risk Management Pool ("WSRMP") served as the insurer and claims administrator for Seattle Public Schools ("SPS") and Mukilteo School District (MSD) and retained, funded, and coordinated the work of attorneys and investigators acting for SPS and related school-district interests, including Shannon Ragonesi of Keating Bucklin & McCormack ("KBM") and Mark Filipini of K&L Gates.

378. Defendants owed a duty of care to Plaintiff as a foreseeable third-party victim of its retained investigator's post-settlement conduct. WSRMP retained Ragonesi from KBM and Mark Filipini from K&L Gates, funded their activity, and controlled the Origami Risk system that stored and disseminated adverse information about Plaintiff.

379. During the same period in which Ragonesi and Filipini were performing services for SPS under service contracts, they also represented MSD pursuant to WSRMP's retainer and claims-related direction. Those overlapping representations created a foreseeable risk of conflicting loyalties, divided obligations, and the misuse or transmission of adverse information concerning Plaintiff.

380. Morgenthaler (dedicated claims adjuster) in her deposition admitted that WSRMP did not conduct conflict checks and did not receive conflict-check disclosures from KBM or K&L Gates. MSD's responses to requests for admission further stated that each attorney or law firm was responsible for its own conflict checks. Despite that known risk,

WSRMP, KBM, and K&L Gates allegedly failed to implement, require, verify, or enforce any conflict-check protocol for the law firms and lawyers it retained or funded.

381. According to Morgenthaler in her deposition she testified that WSRMP also failed to communicate the existence and effect of Plaintiff's EEOC settlement to its retained attorneys and claims personnel because the retained attorneys did not communicate information about the EEOC settlement or separation agreement or provide the actual documents, failed to stop or limit post-settlement investigative activity, and continued to approve or pay invoices for work that continued after the settlement had been executed.

382. WSRMP further failed to control access to and use of shared claims and litigation systems, including Origami Risk, allegedly allowing adverse information concerning Plaintiff to be stored, circulated, or used by SPS-affiliated personnel and retained counsel after the settlement had been executed.

383. SPS, KBM, and K&L Gates each knew or should have known of the conflict risk created by concurrent or overlapping representations involving Plaintiff's matters, and each failed to take reasonable steps to identify, disclose, avoid, or remediate those conflicts.

384. As a result of these failures, the post-settlement investigative and reference-related communications continued, adverse information about Plaintiff was preserved and disseminated, and Plaintiff's SPS employment opportunity was revoked or impaired.

385. But for Defendants' failure to implement and enforce reasonable supervision and conflict-control measures, the post-settlement activity would have ceased, the challenged

communications would not have occurred in the same manner, and Plaintiff would not have suffered the resulting employment and reputational harm.

386. Plaintiff suffered damages including loss of confirmed employment, lost wages and benefits, reputational harm, emotional distress, and related consequential losses.

387. Defendants' negligent failure to supervise, control, and monitor the retained attorneys and claims-related activity was a proximate cause of Plaintiff's damages.

388. WSRMP breached this duty by: (a) failing to inform Ragonesi that the EEOC settlement and separation agreement had been executed; (b) failing to inform Morgenthaler of the settlement; (c) continuing to approve and pay invoices for post-settlement investigative activity; (d) failing to control access to Origami Risk, allowing SPS employees to enter litigation data; and (e) retaining K&L Gates in a capacity that placed that firm astride the information channel between MSD and SPS.

389. But for WSRMP's failures, Morgenthaler testified she would have told defense counsel and the district there was no reason to continue the investigation. The post-settlement investigation, the Ragonesi voicemail, and the chain of events leading to Plaintiff's offer revocation would not have occurred.

390. Element 1 (Duty): WSRMP retained and supervised Ragonesi (KBM) and Filipini (K&L Gates) as MSD's legal counsel, funded their activities, and controlled Origami Risk, the shared infrastructure through which adverse information was stored and disseminated. Plaintiff — as the subject of the investigation and a prospective employee



ROSA MARIA CABRERA THOMPSON, P.O. BOX 275, MAPLE VALLEY, WA 98038

at a WSRMP member district's legal network — was a foreseeable victim of negligent supervision of dual-representation attorneys.

391. Element 2a (Breach — No Conflict Protocols): WSRMP had no internal protocol for conflict checks applicable to its retained law firms, as established by Morgenthaler's deposition on January 29, 2026. WSRMP never required KBM to disclose or resolve the conflict created by Ragonesi's simultaneous representation of MSD (through WSRMP) and SPS. WSRMP never required K&L Gates to disclose or resolve its concurrent billing relationship with SPS. This is not a lapse in a conflict protocol — it is the total absence of any such protocol. The absence of conflict protocols is the structural deficiency that made the reference interference possible.

392. Element 2b (Breach — Failure to Notify of Settlement): WSRMP allegedly didn’t informed its own claims consultant Morgenthaler that the settlement had been executed. Morgenthaler testified that had she known, she would have directed cessation of all investigation activity immediately. WSRMP, KBM, and MSD continued to approve and pay invoices for post-settlement investigation through at least April 2024 — more than six months of unauthorized conduct caused entirely by WSRMP's failure to communicate the settlement's existence to its own personnel.

393. Element 2c (Breach — Origami Risk Access Control): WSRMP failed to control access to Origami Risk, allowing SPS employees such as Ayrian to enter data and litigation information about Plaintiff into the shared member-district claims system — contradicting Morgenthaler's testimony and revealing a systemic access-control failure in the shared enterprise infrastructure.



ROSA MARIA CABRERA THOMPSON, P.O. BOX 275, MAPLE VALLEY, WA 98038

394. Element 3 (But-For Causation — Morgenthaler Testimony): Morgenthaler testified directly: had she known of the settlement, she would have directed Ragonesi of KBM, MSD and Filipini and Stoner of K&L Gates to cease all activity immediately. But for WSRMP's failures, the post-settlement investigation would have stopped on October 17, 2023. Filipini and Stoner would have not fraudulently submitted a barred investigation report to the EEOC on April 22, 2024. Ragonesi would not have placed her November 29, 2023, voicemail to Simone Neal, MSD HR Executive Director. Ragonesi would have not ordered Krista Slosburg of Stokes Lawrence to continue editing and drafting additional versions of the investigation report dated February 23, 2024. Ragonesi would have not bragged about weaponizing the investigation report created by Slosburg in furtherance of a crime (email evidence of that is in the sealed documents in the docket for both the SPS and MSD cases). The Neal-Willingham-Hart-Ragonesi coordination call would not have followed. The reference interference chain would not have been initiated. Plaintiff would not have lost the Garfield High School position. Causation is established by WSRMP's own designated witness.

395. Element 4 (Damages): Loss of confirmed employment; AP Pool access elimination; 17+ SPS position denials; 175+ statewide rejections; career and reputational destruction — all proximately caused by WSRMP's, KBM, and K&L Gates supervisory failures.

396. Plaintiff states a valid negligent supervision claim against WSRMP, with but-for causation established by WSRMP's own deponent and the absence of conflict protocols established by the same deponent's sworn testimony.

## COUNT NINETEEN: AIDING AND ABETTING

Against Defendants K&L Gates LLP, Mark Filipini, Shelby Stoner, John Cerqui, and Washington Schools Risk Management Pool, KBM, Shannon Ragonesi, Krista Slosburg, Stokes Lawrence, Simone Neal, Misa Garmoe, Patty Dowd, Alison Brynelson and Stephen Shurtleff

397. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

398. Washington recognizes aiding and abetting liability where a defendant, with actual knowledge of another's tortious conduct, substantially assists or encourages that conduct. *Jankelson v. Cisel*, 3 Wn. App. 2d 606, 421 P.3d 1035 (2018). Plaintiff alleges that the underlying torts were committed by Ragonesi, Neal, Filipini, Shurtleff, Garmoe, and Simeon, and that K&L Gates, Filipini, Stoner, Cerqui, and WSRMP knowingly and materially assisted those torts by drafting the scripted reference response, transmitting the April 2, 2024 "Quick Update," directing or causing the flags in SAP and NEOGOV, Origami Risk entry, funding post-settlement investigation activity, and preserving the shared claims infrastructure used to carry out the retaliatory scheme.

399. Washington law recognizes aiding and abetting liability for intentional torts. Jankelson v. Cisel, 3 Wn. App. 2d 606 (2018). Each named defendant in this count had actual knowledge of the tortious scheme targeting Plaintiff and provided substantial assistance.

400. K&L Gates, through Filipini and Stoner, provided substantial assistance to the tortious interference and civil rights violations by: drafting the scripted reference response; co-submitting the post-settlement EEOC investigation report; and



ROSA MARIA CABRERA THOMPSON, P.O. BOX 275, MAPLE VALLEY, WA 98038

maintaining a billing relationship with SPS that created the channel through which adverse MSD information reached SPS.

401. Cerqui provided substantial assistance by transmitting the April 2, 2024 "Quick Update" communication that triggered the Garmoe flagging directive, and by directing the Origami Risk entry referenced in Hastings's February 3, 2025 calendar task.

402. Washington recognizes aiding-and-abetting liability where a defendant has actual knowledge of another's tortious conduct and provides substantial assistance or encouragement to that conduct. *Jankelson v. Cisel*, 3 Wn. App. 2d 606, 421 P.3d 1035 (2018). Plaintiff alleges the underlying torts were committed by one or more of the other defendants, including reference interference, defamatory reference communications, and retaliatory blacklisting through employment-related systems and records.

403. On November 29, 2023, Shannon Ragonesi, while acting in a dual-representation capacity, used telephonic communications to speak with Simone Neal regarding Plaintiff's pending employment prospects. The same day, Neal used a 37-minute call to contact Sharonda Willingham, and the sequence of communications reflected coordinated efforts to influence how Plaintiff would be treated in the employment process.

404. On December 1, 2023, Neal used electronic and telephonic communications to contact Dr. Hart regarding Plaintiff's reference. On the same day, Neal reported back to Ragonesi regarding the outcome of those communications. Plaintiff alleges these communications were used to facilitate or reinforce adverse reference activity concerning Plaintiff.



ROSA MARIA CABRERA THOMPSON, P.O. BOX 275, MAPLE VALLEY, WA 98038

405. On approximately January 19, 2024, Mark Filipini electronically transmitted a scripted reference response that was later used in communications to SPS Human Resources-Demetrice Lewis. Plaintiff alleges that the scripted response was designed to appear neutral while allowing adverse information or adverse implication to be conveyed in a controlled format.

406. On or about February 23, 2024, Filipini and Stoner electronically submitted a post-settlement EEOC investigation report after the parties' settlement required investigations to cease. Plaintiff alleges that this report was submitted despite the settlement restriction and served to preserve, formalize, and circulate adverse information about Plaintiff.

407. On April 2, 2024, John Cerqui electronically transmitted a "Quick Update on Cabrera Thompson" communication to Misa Garmoe. Plaintiff alleges that this communication was used to prompt or support retaliatory action concerning Plaintiff's employment records and profile status.

408. On April 4, 2024, Garmoe electronically directed that Plaintiff's profiles be flagged in NEOGOV and SAP, and later that day Libby Simeon confirmed execution of that directive. Plaintiff alleges these actions constituted retaliatory employment blacklisting and were undertaken with knowledge of Plaintiff's protected EEOC activity.

409. On February 3, 2025, an Origami Risk calendar task directed that Plaintiff's claim be added to the system and that the litigation log be updated. Plaintiff alleges that this entry reflected continued maintenance of adverse claims information within a shared claims-management system used by WSRMP and related defense participants.

410. K&L Gates, through Filipini and Stoner, materially assisted the challenged conduct by drafting the scripted reference response, participating in the post-settlement EEOC report, and maintaining the defense-side communications and billing channel through which Plaintiff's adverse information was transmitted and preserved.

411. WSRMP materially assisted the challenged conduct by funding post-settlement investigation activity, maintaining the Origami Risk claims environment, and continuing to administer claims-related communications and records after the settlement date alleged in the preceding counts.

412. KBM materially assisted the challenged conduct by participating in the handling of Plaintiff-related defense activity and related invoice processing, including the approvals and payments referenced in the preceding allegations.

413. Each moving defendant knew, or at minimum was alleged to have contemporaneous actual knowledge from the face of the communications and related conduct, that Plaintiff had engaged in protected activity and that the challenged communications and recordkeeping were being used to affect Plaintiff's employment prospects and preserve adverse information about her.

414. The assistance provided by the moving defendants was substantial because it enabled the creation, transmission, preservation, and implementation of the challenged reference communications, retaliatory record entries, and post-settlement investigative materials.

415. Plaintiff was harmed as a direct and proximate result of the foregoing conduct, including loss of employment opportunity, loss of wages and benefits, and related economic damages.

416. By reason of the foregoing, Plaintiff states a claim for aiding and abetting against each named defendant who knowingly and substantially assisted the underlying torts.

417. WSRMP provided substantial assistance by funding post-settlement investigation activity, maintaining Origami Risk as the shared claims infrastructure of the enterprise, and retaining dual-representation attorneys.

418. Element 1 (Underlying Torts): Alleged reference interference by Ragonesi (Count Nine); allegedly defamatory reference by Neal, Filipini, and Shurtleff (Count Fifteen); retaliatory ATS blacklisting by Garmoe and Simeon (Count Fourteen). All underlying torts are established in preceding counts.

419. Element 2 (K&L Gates / Filipini / Stoner — Knowledge and Assistance): K&L Gates had full knowledge of the settlement through its MSD representation. Filipini and Stoner: drafted the scripted adverse reference knowing it violated Clause 7; co-submitted the post-settlement EEOC investigation report knowing it violated Clause 8; maintained a billing relationship with SPS that provided the cross-district information channel. The scripted reference is the mechanism that allowed Neal's adverse communication to appear facially compliant with the settlement while transmitting professional harm.

420. Element 3 (Cerqui — Knowledge and Assistance): Cerqui had contemporaneous knowledge of Plaintiff's EEOC charge (routed March 27–28, 2024); transmitted the April 2, 2024 'Quick Update' email that triggered Garmoe's directive; directed the Origami Risk entry via Hastings; and re-engaged Ragonesi as SPS's litigation counsel knowing her prior conduct. Cerqui is the institutional architect of the post-EEOC institutional response.

421. Element 4 (WSRMP — Knowledge and Assistance): WSRMP funded post-settlement investigation activity with no conflict protocols in place; maintained Origami Risk as the shared adverse-information infrastructure accessible to SPS employees; and retained dual-representation attorneys without requiring any conflict disclosure — providing the financial and institutional backbone of the scheme.

422. Plaintiff states valid aiding and abetting claims against each named defendant based on documented actual knowledge and specific, identified substantial assistance that was functionally essential to the scheme's execution.

## COUNT TWENTY: INVASION OF PRIVACY — UNLAWFUL DISCLOSURE OF PROTECTED INFORMATION

Against Defendants Shannon Ragonesi, SPS, Washington Schools Risk Management Pool, Simone Neal, Mark Filipini, Patty Dowd, Alison Brynelson and Stephen Shurtleff

423. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

424. Defendants publicly disclosed specific nonpublic facts from Plaintiff's protected EEOC process and related investigation, including the existence and substance of the charge, investigative materials, and settlement-related information, to persons who had no lawful need to know, and the disclosures were highly offensive and caused harm.

425. Washington recognizes the tort of invasion of privacy by public disclosure of private facts. A plaintiff states this claim by alleging that defendants gave publicity to a matter concerning the plaintiff's private life, the matter publicized would be



ROSA MARIA CABRERA THOMPSON, P.O. BOX 275, MAPLE VALLEY, WA 98038

highly offensive to a reasonable person, and the matter was not of legitimate public concern.

426. Plaintiff's EEOC charge, the existence and substance of the pending administrative dispute, related investigative materials, and any settlement-related restrictions on communications were nonpublic and confidential. Those materials were not matters of legitimate public concern and were known to Defendants only because of their roles in the employment, claims-handling, and defense process.

427. On November 29, 2023, Shannon Ragonesi used a voicemail communication to transmit Plaintiff's confidential EEOC-related information and/or other nonpublic employment-dispute information to Seattle Public Schools human resources personnel, a third party outside the confidential EEOC process and without Plaintiff's consent.

428. On December 1, 2023, Simone Neal used a reference call to disclose Plaintiff's nonpublic EEOC-related and employment-dispute information to a person outside the confidential process, further disseminating private information concerning Plaintiff's employment status and protected charge.

429. On or about December 1, 2023, Stephen Shurtleff and Mark Filipini caused or authored a scripted reference response that communicated adverse, nonpublic information about Plaintiff under the guise of a neutral reference, and that response was transmitted to Seattle Public Schools or its agents.

430. Upon information and belief, WSRMP funded, directed, and/or coordinated the disclosures described above, and Patty Dowd and Alison Brynelson participated in the handling, approval, or dissemination of related records and communications.

431. The disclosures were made without Plaintiff's consent, were highly offensive to a reasonable person because they exposed confidential dispute-related information concerning Plaintiff's employment and protected administrative proceedings, and were not of legitimate public concern.

432. As a direct and proximate result of Defendants' unlawful disclosures, Plaintiff suffered loss of employment opportunity, reputational harm, emotional distress, and economic damages.

433. Plaintiff is entitled to compensatory damages and all other relief allowed by law.

## VI. DAMAGES

434. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered the following categories of harm. All damages are supported by the factual record and claimed to the full extent permitted under each applicable statute and doctrine.

435. Back Pay — Substitute AP Position: Plaintiff seeks back pay for the 15 contracted workdays from November 27 through December 15, 2023, at the annualized totaling $10,961.54.

436. Back Pay — Lost Interim AP Position: Plaintiff seeks back pay for the six-month interim AP position at Garfield High School from January through June 2024, totaling $95,000.00.

437. Back Pay — 17+ SPS AP Positions Denied: Plaintiff seeks back pay for the at least 17 SPS AP positions denied from 2024 through the present, calculated at the average AP salary of $190,000 per year over three years, totaling $2,850,000.00.



ROSA MARIA CABRERA THOMPSON, P.O. BOX 275, MAPLE VALLEY, WA 98038

438. Front Pay — Future Lost SPS Earnings: Plaintiff seeks front pay for five future years of lost SPS earnings at $190,000 per year, appropriately discounted to present value, totaling $950,000.00 plus every year thereafter that plaintiff would have worked until retirement.

439. Back Pay — Statewide Employment Denial: Plaintiff seeks back pay for the systematic denial of employment across 140+ statewide applications over three years, calculated at an average annual salary of $150,000, totaling $450,000.00.

440. Front Pay — Future Career Earnings (Reduced Capacity): Plaintiff seeks front pay for ten years of reduced earning capacity resulting from the enterprise's reputational destruction of Plaintiff's career, totaling $1,900,000.00.

441. Non-Economic Damages — Reputational Harm and Career Destruction: Plaintiff seeks non-economic damages for the permanent reputational harm, professional identity destruction, and stigmatic injury caused by the enterprise's coordinated blacklisting campaign, totaling no less than $2,500,000.00.

442. Non-Economic Damages — Emotional Distress and Mental Anguish: Plaintiff seeks non-economic damages for the emotional distress, mental anguish, loss of professional identity, and suffering caused by the systematic destruction of her career through coordinated institutional retaliation, totaling no less than $1,500,000.00.

443. PRA Statutory Penalties: Plaintiff seeks statutory penalties under RCW 42.56.550(4) at the rate of up to $100 per day per withheld record from the date of non-compliance, calculated across all responsive records withheld from PRR 2324-239, with *Yousoufian* enhancement for bad-faith withholding, totaling no less than $250,000.00.



ROSA MARIA CABRERA THOMPSON, P.O. BOX 275, MAPLE VALLEY, WA 98038

444. Punitive Damages — Federal Civil Rights Claims: Plaintiff seeks punitive damages against individual defendants and SPS under 42 U.S.C. § 1983 and Title VII. Under *Kolstad v. American Dental Ass'n*, 527 U.S. 526 (1999), malice or reckless indifference is established where an employer acts in the face of a perceived risk that its actions will violate federal law. The April 4, 2024 Garmoe email — an executive-level directive explicitly connecting retaliatory blacklisting to an EEOC complaint — is not merely evidence of recklessness; it is direct, written, timestamped evidence of intentional executive-level retaliation. Plaintiff seeks punitive damages of no less than $7,500,000.00.

445. Punitive Damages — State Tort Claims: Plaintiff seeks punitive damages under the WLAD, the Washington defamation per se doctrine, and Washington fraud law for the willful and malicious conduct of named defendants, totaling no less than $5,000,000.00.

446. Attorney's Fees and Costs: Plaintiff seeks attorney's fees and costs under 42 U.S.C. §§ 1988(b) and 2000e-5(k), RCW 49.60.030(2), RCW 42.56.550(4), and 18 U.S.C. § 1964(c), estimated at no less than $750,000.00.

447. RICO Treble Damages: In addition to all damages set forth above, Plaintiff seeks treble damages under 18 U.S.C. § 1964(c) as to all RICO-compensable economic losses. The estimated pre-treble economic losses subject to trebling exceed $6,000,000.00, yielding treble RICO damages in excess of $18,000,000.00.

448. Total Damages Sought: Plaintiff's total damages, inclusive of back pay, front pay, non-economic damages, statutory penalties, and punitive damages, but exclusive of RICO treble damages and attorney's fees, exceed $23,217,884.62. Including RICO treble

damages, Plaintiff's total damages sought exceed $41,000,000.00. All figures are in addition to pre- and post-judgment interest at the maximum rate permitted by law.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Dr. Rosa Maria Cabrera Thompson respectfully requests that this Court and a jury of twelve enter judgment in her favor and against all Defendants, jointly and severally where applicable, and award the following relief:

449. Compensatory damages for lost wages, back pay, front pay, benefits, and all economic losses, in amounts to be proven at trial but no less than $6,467,884.62, inclusive of double damages under RCW 49.52.050 for the willful withholding of wages due under the November 20, 2023 employment contract and the lost interim AP position;

450. Non-economic damages for reputational harm, emotional distress, and career destruction, no less than $4,000,000.00;

451. Punitive damages against individual defendants and SPS under 42 U.S.C. § 1983, Title VII (Kolstad), the WLAD, and Washington common law, no less than $12,500,000.00, reflecting the exceptional, documented, executive-level nature of the retaliatory misconduct;

452. Statutory penalties under the Washington Public Records Act, RCW 42.56.550(4), of no less than $250,000.00, subject to this Court's calculation and Yousoufian enhancement for bad-faith withholding;

453. Treble damages under the civil RICO statute, 18 U.S.C. § 1964(c), as to all RICO-compensable economic property losses, in an amount to be calculated at trial;



ROSA MARIA CABRERA THOMPSON, P.O. BOX 275, MAPLE VALLEY, WA 98038

454. In camera review of the April 2, 2024 Cerqui-to-Garmoe email pursuant to United States v. Zolin, 491 U.S. 554 (1989), to determine applicability of the crime-fraud exception to Defendants' attorney-client privilege claim;

455. Injunctive relief ordering SPS to: (a) immediately remove all flags from Plaintiff's NEOGOV and SAP profiles; (b) restore Plaintiff's AP Pool access status in full; (c) provide written notice to all SPS hiring personnel that Plaintiff is eligible for all positions for which she is qualified and that her profiles have been cleared; and (d) identify and destroy all adverse reference materials transmitted in violation of the EEOC settlement agreement;

456. Injunctive relief ordering WSRMP to: (a) remove all adverse entries regarding Plaintiff from Origami Risk and all associated claims management systems; (b) cease all sharing of adverse information about Plaintiff through its member-district network; and (c) implement written conflict-check protocols applicable to all retained law firms with simultaneous multi-district representations;

457. Attorney's fees and costs under 42 U.S.C. §§ 1988(b) and 2000e-5(k), RCW 49.60.030(2), RCW 42.56.550(4), and 18 U.S.C. § 1964(c), no less than $750,000.00;

458. Pre- and post-judgment interest at the maximum rate permitted by applicable law;

459. All other and further relief as this Court deems just and equitable.

Declaratory Relief, including declarations that:

460. Defendants violated Title VII, the Washington Law Against Discrimination, and the First and Fourteenth Amendments;



ROSA MARIA CABRERA THOMPSON, P.O. BOX 275, MAPLE VALLEY, WA 98038

461. Defendants engaged in a coordinated civil rights conspiracy under 42 U.S.C. § 1985(3);

462. Defendants participated in a RICO enterprise through a pattern of racketeering activity;

463. The April 4, 2024 NEOGOV/SAP flagging directive was a retaliatory adverse employment action in violation of Title VII and the First Amendment;

464. The Filipini-scripted reference response constituted a breach of the EEOC settlement agreement, duty owed to plaintiff to not cause harm and tortious interference;

Injunctive Relief, including:

465. An order immediately removing all flags from Plaintiff's NEOGOV and SAP profiles, `de-merging any profile consolidation implemented on or after April 4, 2024, and restoring Plaintiff's pre-April 4, 2024 application status;

466. An order requiring SPS to affirmatively consider Plaintiff for any assistant principal or principal vacancy for which she is otherwise qualified, with court-supervised monitoring;

467. An order compelling production of all outstanding public records responsive to Plaintiff's January 2024 PRA request;

468. An order requiring in camera review of the redacted body of John Cerqui's April 2, 2024 email to Misa Garmoe under the crime-fraud exception, pursuant to United States v. Zolin, 491 U.S. 554 (1989);

469. An order requiring in camera review of K&L Gates communications with Neal, Shurtleff, and WSRMP regarding Plaintiff's reference check under the crime-fraud exception;

470. A forensic examination order for Dr. Hart's private device(s) under FRCP 34 and 37;

471. Sanctions or adverse inference instructions under FRCP 37(e) for spoliation of evidence on Hart's private device;

472. An order requiring WSRMP to produce all Origami Risk entries referencing Plaintiff, all member districts with read access to those entries, and all personnel who accessed those records;

473. An order requiring SPS, WSRMP, and K&L Gates to implement conflict-of-interest protocols prohibiting dual representation of adverse-interest school districts and prohibiting attorneys who investigated an employee's EEOC complaint from simultaneously or subsequently representing any district that employs or is considering employing that individual;

474. An order recommending legislative or Attorney General oversight of WSRMP and similar school risk pools to ensure compliance with civil rights protections for employees;

475. All other relief this Court deems just, proper, and equitable, including leave to amend to conform to evidence obtained through discovery. Plaintiff expressly reserves the right to amend this prayer for relief to include additional damages, parties, and remedies as discovery reveals further facts supporting liability.

**JURY DEMAND**

Plaintiff demands a trial by jury of twelve on all claims and issues so triable.

**VERIFICATION**

I, Rosa Maria Cabrera Thompson, declare under penalty of perjury under the laws of the United States of America and the State of Washington that the foregoing is true and correct to the best of my knowledge, information, and belief.

DATED: April 30, 2026

/s/ Rosa Maria Cabrera Thompson
Rosa Maria Cabrera Thompson
Plaintiff Pro Se
P.O. Box 275
Maple Valley, WA 98038
rosathompson09@hotmail.com
(832) 238-1534

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on April 30, 2026, I electronically filed the foregoing Third Amended Complaint with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record, including:

Shannon M. Ragonesi
Keating, Bucklin & McCormack, P.C.
Attorney for Defendant Seattle Public Schools
1201 Third Avenue, Suite 1580
Seattle, Washington 98101

<u>/s/ Rosa Maria Cabrera Thompson</u>
Rosa Maria Cabrera Thompson
Plaintiff Pro Se
P.O. Box 275
Maple Valley, WA 98038
rosathompson09@hotmail.com
(832) 238-1534